MICHAEL P. O'DAY (*pro hac vice* pending)
michael.oday@us.dlapiper.com
ELLEN E. DEW (*pro hac vice* pending)
ellen.dew@us.dlapiper.com
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Tel:    215.656.2431
Fax:    215.606.2046

AMANDA L. MORGAN (Bar No. 246277)
amanda.morgan@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:    415.836.2500
Fax:    415.836.2501

Attorneys for Defendant
Marriott International, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| J.C., AN INDIVIDUAL,<br><br>                Plaintiff,<br><br>     v.<br><br>CHOICE HOTELS INTERNATIONAL, INC.;<br>HILTON WORLDWIDE HOLDINGS, INC;<br>MARRIOTT INTERNATIONAL, INC;<br><br>                Defendants. | CASE NO. 3:20-CV-00155-WHO<br><br>**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    May 27, 2020<br>Time:    2:00 p.m.<br>Ctrm.:   2 - 17th Floor<br>Judge:   Hon. William H. Orrick<br><br>Action Filed: January 7, 2020<br>FAC Filed:   March 19, 2020<br>Trial Date:    TBD |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on May 27, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above entitled court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William H. Orrick, Defendant Marriott International, Inc., will and hereby does move this Court for an order dismissing Plaintiff J.C.'s First Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant requests the Court dismiss Plaintiff's First Amended Complaint with prejudice on the ground that Plaintiff fails to state a claim upon which relief can be granted. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Proposed Order, the Court's files in this action, the oral argument of counsel at the hearing and on such materials and evidence as may be presented to the Court.

Dated: April 2, 2020           DLA PIPER LLP (US)

By: _____
MICHAEL P. O'DAY (*pro hac vice* pending)
ELLEN E. DEW (*pro hac vice* pending)
AMANDA L. MORGAN
Attorneys for Defendant
Marriott International, Inc.

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

III. LEGAL STANDARD ..................................................................................................... 4

IV. ARGUMENT .................................................................................................................. 4

    A. PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM ................. 4

        1. Plaintiff Failed to Allege That Marriott International "Knew or Should Have Known" About the Sex Trafficking of J.C. ......................... 5

        2. Plaintiff Failed to Allege That Marriott International "Knowingly" Benefited from A Sex Trafficking Venture ............................................... 6

        3. Plaintiff Failed to Allege Marriott International's "Participation" In A Sex "Trafficking Venture" ......................................................................... 7

        4. Plaintiff's Amended Complaint Relies on Impermissible "Cookie-Cutter" Allegations, Transplanted from The Pleadings of Other, Unrelated Litigants .................................................................................. 10

    B. PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE FREMONT HOTEL ........................................................................... 11

    C. PLAINTIFF FAILS TO STATE A CLAIM UNDER CAL. CIV. CODE § 52.5 ...................................................................................................................... 12

V. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Hilton Worldwide Holdings, Inc., et al.*,
   No. 3:19-cv-1992 (D. Or. 2019) ............................................................................................. 10

*A.B. v. Marriott International, Inc.*,
   No. 1:19-cv-5770 (E.D. Pa. 2019) .......................................................................................... 10

*Acedo v. DMAX, Ltd.*,
   No. CV 15-02443MMMASX, 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) ...................... 12

*Afewerki v. Anaya Law Grp.*,
   868 F.3d 771 (9th Cir. 2017) .................................................................................................. 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 4, 10

*Associated Creditors' Agency v. Davis*,
   13 Cal. 3d 374 (1975) ............................................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 4, 10

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019) .................................................................................................. 9

*Canosa v. Ziff*,
   No. 18 CIV. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ................................... 6

*Cha v. Hooters of Am., LLC*,
   No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) .......................... 12

*Cirino v. Bank of Am., N.A.*,
   CV 13-8829 PSG MRWX, 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) .................... 9

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
   801 F. Supp. 2d 211 (S.D.N.Y. 2011) .................................................................................... 10

*Florida Abolitionist v. Backpage.com LLC*,
   No. 617CV218ORL28TBS, 2018 WL 1587477 (M.D. Fla. Mar. 31, 2018) ........................... 5

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...................................................................................... 8

*H.G. v. Inter-Continental Hotels Corp., et al.*,
   No. 19-13622 (E.D. Mich. 2019) ........................................................................................... 10

*In re Hotel Industry Sex Trafficking Litig.*,
   MDL No. 2928 (J.P.M.L. Feb. 5, 2020) .................................................................................. 3

*K.B. v. Int'l Hotels Corp., et al.*,
   No. 1:19-cv-1213 (D.N.H. 2019) ......................................................................................... 10

*K.R. v. G6 Hospitality, LLC, et al.*,
   No. 3:19-cv-08252 (N.D. Ca. 2019) .................................................................................... 10

*Lawson v. Rubin*,
   No. 17-CV-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ................................ 6

*Lofthus v. Long Beach Veterans Hosp.*,
   214 F. Supp. 3d 908 (C.D. Cal. 2016) .................................................................................. 13

*Muhammad v. Bethel-Muhammad*,
   No. CIV.A. 11-0690, 2012 WL 1854315 (S.D. Ala. May 21, 2012) .................................... 11

*N.T. v. Taco Bell Corp.*,
   411 F. Supp. 3d 1192 (D. Kan. 2019) .................................................................................. 12

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) .................................................................................... 8

*Northcross v. Bd. of Ed. of Memphis City Sch.*,
   412 U.S. 427 (1973) ............................................................................................................... 9

*Owino v. CoreCivic, Inc.*,
   No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) ........................ 13

*Patterson v. Domino's Pizza, LLC*,
   333 P.3d 723 (Cal. 2014) ..................................................................................................... 11

*People v. Halim*,
   14 Cal. App. 5th 632 (2017) ................................................................................................ 13

*Peters v. Aetna, Inc.*,
   1:15-CV-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016) .................................... 9

*Ratha v. Phatthana Seafood Co., Ltd.*,
   No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) .................. 5, 7

*Rosner v. Bank of China*,
   528 F. Supp. 2d 419 (S.D.N.Y. 2007) .................................................................................... 9

*Shabazz v. Bank of Am.*,
   No. 1:10-cv-0813, 2010 WL 11647333 (N.D. Ga. Oct. 26, 2010) ....................................... 10

*Shuvalova v. Cunningham*,
   No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) ............................................ 8

*Talib v. Guerrero*,
  No. CV1503825JAKDFM, 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) ............................ 14

*Temple v. McDonald's Corp.*,
  No. CIV.A. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) ..................................... 12

*United States v. Afyare*,
  632 F. App'x 272 (6th Cir. 2016) ................................................................................. 7, 8, 9

*United States v. Coppin*,
  1 F. App'x 283 (6th Cir. 2001) ............................................................................................. 7

*United States v. Longoria*,
  569 F.2d 422 (5th Cir. 1978) ................................................................................................ 7

*United States v. Turkette*,
  452 U.S. 576 (1981) .............................................................................................................. 9

**Statutes**

18 U.S.C. § 1591 ........................................................................................................................... 4

18 U.S.C. § 1591(e)(6) .................................................................................................................. 9

18 U.S.C. § 1595(a) .............................................................................................................. 4, 6, 7

18 U.S.C. § 1961(4) ...................................................................................................................... 9

Cal. Civ. Code § 52.5 ............................................................................................................ *passim*

Cal. Civ Code § 52.5(a) .............................................................................................................. 13

Penal Code § 236.1 ..................................................................................................................... 13

Penal Code § 236.1(a) ................................................................................................................. 13

Penal Code § 236.1(b) ................................................................................................................. 13

Penal Code § 236.1(c) ................................................................................................................. 13

**Other Authorities**

Fed R. Civ. P. 12(b)(6) ................................................................................................................. 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In its Motion to Dismiss Plaintiff's original Complaint (ECF No. 1), Marriott International, Inc. ("Marriott International") demonstrated that Plaintiff failed to plead plausible factual allegations showing that she can state a claim for relief. The changes in Plaintiff's First Amended Complaint (ECF No. 34, hereinafter, the "Amended Complaint" or "Am. Compl.") are immaterial and fail to cure the fatal defects with Plaintiff's pleading. Adding unsupported and improper legal argument (Am. Compl. ¶ 71) and conclusory assertions about what Marriott International should have known based on alleged generalized knowledge of sex trafficking *that had nothing to do with J.C.* (Am. Compl. ¶ 26-89) only underscore how Plaintiff's case rests on an untenable construction of the Trafficking Victims Protection and Reauthorization Act ("TVPRA") that erases key words and phrases from the statute (*e.g.*, "knowingly benefits" and "participation in a venture") while appending a host of imagined affirmative duties onto it. And nothing that allegedly transpired at the Marriott Fremont Silicon Valley hotel (the "Fremont Hotel") (Am. Compl. ¶ 121) changes the fact that no alleged events that should have "alerted" the hotel staff can be imputed to Marriott International under settled California law. For these same reasons, the Amended Complaint fails to plead the requisite intent required by California Civil Code Section 52.5.

Specifically, Plaintiff's Amended Complaint against Marriott International should be dismissed for at least two principal reasons. *First*, the Amended Complaint fails to plead facts sufficient to state a TVPRA claim that Marriott International knowingly benefited from and participated in the trafficking of J.C. The thrust of the Amended Complaint is that the hospitality industry has turned a blind eye to trafficking and Marriott International is part of that industry. But other than alleging that Marriott International owns the Marriott Hotels brand, which was licensed to the independent owner of the Fremont Hotel, the Amended Complaint lacks any factual allegations that Marriott International knew, should have known, or even plausibly could have known that J.C. was trafficked there. Importantly, there are no allegations that J.C. had any interactions with Marriott International employees which could plausibly have put Marriott International on notice of alleged crimes against her. The Amended Complaint also lacks factual

allegations that Marriott International "participated" in the trafficking.

Relatedly, Plaintiff's second claim against Marriott International, under California Civil Code Section 52.5, is even more deficient. The scope of civil liability under Section 52.5 is narrower than the TVPRA and requires pleading and proving *intent*—not merely knowledge. The Amended Complaint does not—and cannot—plead that Marriott International had "intent to obtain forced labor or services" from J.C., as required to state a Section 52.5 claim.

*Second*, the Amended Complaint fails to allege adequate facts to support the conclusion that Marriott International is vicariously liable for acts or omissions by the Fremont Hotel covering the relevant time period (2008-2019). The Fremont Hotel is independently owned by a non-party to this action. In conclusory fashion, the Amended Complaint alleges that Marriott International is vicariously liable for its acts or omissions because Marriott International had the right to enforce uniform standards under a franchise agreement. As a matter of California law, however, this does not create an agency relationship sufficient to establish vicarious liability because the Complaint fails to allege facts showing that Marriott International controlled the day-to-day operations of the Fremont Hotel.

Thus, Marriott International respectfully requests that this Court dismiss Plaintiff's claims against it with prejudice.

## II. FACTUAL BACKGROUND

This lawsuit is part of a nationwide wave of dozens of cases filed in late 2019 and early 2020 using a boiler-plate form complaint seeking to hold hospitality industry participants liable under the TVPRA for sex trafficking. While the plaintiffs and defendants vary in each case, the complaints are virtually identical in their conclusory allegations: they allege the hospitality industry has turned a blind eye to sex trafficking; they assert that various defendant franchisors "control" the hospitality industry and therefore "participate" in sex trafficking at hotels; they list reports of sex trafficking at different hotels throughout the country; and they conclude with brief allegations about the criminal

trafficker's acts against the plaintiff in each case.[1] Although the allegations regarding each plaintiff's victimization by her traffickers are typically horrifying, the allegations against Marriott International in the Amended Complaint are no different than the original complaint: vague and conclusory.

The Amended Complaint here again follows this form. It focuses on sex trafficking generally, but includes just a few, conclusory allegations against Marriott International in relation to J.C. For example, the Amended Complaint cites statistics, news articles, general statements and policy reports on human sex trafficking (Am. Compl. ¶¶ 26-89), generalities concerning franchisors' alleged "control" over their "local hotels" (Am. Compl. ¶¶ 90-104), and reports of alleged sex trafficking and prostitution crimes involving different Marriott hotels in other states. (Am. Compl. ¶ 107.j.) None of this relates to the alleged criminal acts carried out against J.C. by her traffickers.

When it comes to telling J.C.'s story, the Amended Complaint tells a disturbing tale of her kidnapping and victimization by unnamed criminal sex traffickers. Without being detected by law enforcement, these traffickers forced J.C. to engage in commercial sex acts against her will in various hotels in California and Virginia, including allegedly the Fremont Hotel, at different points between 2008-2019. (Am. Compl. ¶¶ 7, 11, 109, 118.) The traffickers concealed their crimes through physical and psychological violence, and J.C. had virtually no contact with hotel staff. (Am. Compl. ¶¶ 109-124.)

The Amended Complaint then asserts the bare legal conclusion that Marriott International somehow knew or should have known about the criminal acts by the traffickers, but asserts no facts to support that conclusion. (Am. Compl. ¶ 130.) And without stating any facts to suggest how Marriott International could have known about these crimes, the Amended Complaint asserts the conclusion that Marriott International failed to take "reasonable measures" that somehow would have revealed the criminal activity and prevented the traffickers' crimes. (Am. Compl. ¶ 145.) Nowhere does the Amended Complaint allege facts suggesting that Marriott International was aware of the criminal incidents, knowingly benefited from the trafficking or participated in the sex

---

[1] The attempt to hold the hospitality industry parties liable generally through consolidated proceedings has been denied. *In re Hotel Industry Sex Trafficking Litig.*, MDL No. 2928, ECF No. 235 (J.P.M.L. Feb. 5, 2020).

trafficking of J.C.

## III. LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although factual allegations are accepted as true, "labels and conclusions" are given no deference. *Twombly*, 550 U.S. at 545 (internal citations omitted).

## IV. ARGUMENT

### A. PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM

In enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion. 18 U.S.C. § 1591. Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in and benefit from sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* § 1595(a) (emphasis added). The Amended Complaint does not allege that Marriott International was a "perpetrator" of the trafficking of J.C. Rather, it alleges in a conclusory manner that Marriott International knowingly benefited from and participated in a venture by unnamed sex traffickers. (Am. Compl. ¶ 6.) The Amended Complaint is fatally defective, however, because it does not (and cannot in good faith) allege any facts suggesting that Marriott International plausibly knew or should have known about J.C.'s tormentors or knowingly benefited from their crimes, let alone "participated" in those crimes.

### 1. Plaintiff Failed to Allege That Marriott International "Knew or Should Have Known" About the Sex Trafficking of J.C.

The crux of the Amended Complaint is that Marriott International "knew, or should have known" (Am. Compl. ¶ 130) that J.C. was being victimized by criminal sex traffickers because "the hospitality industry" is complicit in sex trafficking. (Am. Compl. ¶¶ 26, 28-34, 45-47, 67, 69-73, 75-78, 89.) These allegations are like other complaints filed throughout the country against many different franchisors, and have very little to do with Marriott International or J.C. For example: allegations (as well as sources cited in the footnotes) refer to other hotel companies who are not even parties to this case. (*See*, *e.g.*, Am. Compl. ¶ 73 (Accor, Best Western, Hyatt, Intercontinental Hotels Group, Wyndham.)) As a matter of law, these allegations cannot support any plausible inference that Marriott International knew or should have known about the specific instances of J.C.'s sex trafficking. *See*, *e.g.*, *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5-6 (C.D. Cal. Dec. 21, 2017) ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana [] engaged in [human trafficking] based on general reports about human trafficking in Thailand and reports and letters by advocacy groups … [but] Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory."); *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (dismissing TVPRA claim where complaint did "not include a plausible allegation that Defendants saw the ad concerning Plaintiff Doe and knew it related to illegal sex trafficking").

The Amended Complaint also attempts to establish notice of J.C.'s trafficking based on alleged criminal incidents at other Marriott brand hotels that had nothing to do with J.C. (Am. Compl. ¶ 107.j.) These reports could not have put Marriott International on notice of J.C.'s victimization and are irrelevant because they related to crimes reported at hotels in Texas and Massachusetts, involved different crimes (prostitution and murder), and different victims. Even if the Amended Complaint had alleged an arrest for sex trafficking at the Fremont Hotel, this would still not be enough to establish notice. Allegations of infrequent arrests and crimes occurring elsewhere (including after J.C.'s injury) are immaterial to establish that Marriott International knew

or should have known that J.C. was being victimized by criminal sex traffickers. *See Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 29, 2018) ("[P]laintiffs have not cited any caselaw to support their argument that one visit by the police department and one ambulance sent to the residence over six years is sufficient to put the owner of the premises on notice of illegal activity.").

The brief allegations about J.C. likewise lack any content related to Marriott International. To the extent the allegations say anything about hotels, they either refer to hotels not associated with the Marriott brand (*e.g.*, Am. Compl. ¶¶ 111-112, 120, 122), repeat the same conclusory allegation against each hotel defendant in successive paragraphs (*e.g.*, Am. Compl. ¶¶ 131-133, 134-136), or vaguely lump Marriott International together with other unspecified hotels (*e.g.*, Am. Compl. ¶¶ 109, 119, 124.) There is no suggestion that J.C. had contact with the hotel staff at the Fremont Hotel, much less any employees of Marriott International. Simply put, the Amended Complaint alleges no facts to suggest that Marriott International knew or should have known that J.C. was being trafficked at the Fremont Hotel.

### 2. Plaintiff Failed to Allege That Marriott International "Knowingly" Benefited from A Sex Trafficking Venture

For the same reasons, Plaintiff's claim must be dismissed because the Amended Complaint does not allege that Marriott International "knowingly" benefited from a sex trafficking venture. 18 U.S.C. § 1595(a). Apart from reciting conclusory labels (Am. Compl. ¶ 6), the Amended Complaint alleges that Marriott International "directly benefitted from the trafficking of J.C. on each occasion it received payment for rooms that she was being kept in at [its] hotels." (Am. Compl. ¶ 173.) But Plaintiff alleges no facts to suggest that Marriott International had any reason to suspect that the rooms at a franchised hotel were being used illicitly by criminals for trafficking. *See supra* Part A.1. As a franchisor, Marriott International receives a royalty from the overall revenues from the business of the independently owned and managed hotel. (Am. Compl. ¶ 90.) The collection of rent by a hotel manager from guests in the ordinary course of business cannot support a reasonable inference that the franchisor, Marriott International, "knowingly" benefited from crimes committed in those rooms. *See, e.g.*, *Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan.

28, 2019) (internal citations omitted) (noting that a defendant cannot be held liable under the TVPRA where the defendant is "ignorant" of the alleged trafficking at issue).

### 3. Plaintiff Failed to Allege Marriott International's "Participation" In A Sex "Trafficking Venture"

The Amended Complaint also falls short of alleging any facts to support the conclusion that Marriott International (1) "participated" in (2) a "sex trafficking venture." 18 U.S.C. §1595(a). The United States Court of Appeals for the Sixth Circuit recently held that liability under the TVPRA requires (1) an *overt act* of participation in (2) a *sex trafficking* venture (not merely *any* "venture"). *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016). The Amended Complaint fails to allege facts supporting either (let alone both) of these elements.

First, a lawful relationship unrelated to sex trafficking (*e.g.*, a franchisor-franchisee relationship) is not a "venture" within the meaning of the statute. Rather, the party must have participated in a *sex trafficking* venture. *Id.* at 286. In *Afyare*, the prosecution argued that, under the TVPRA, "a 'venture' is *any* two or more people associating *for any reason*, even legal or innocuous reasons and, importantly, even reasons wholly unrelated to sex trafficking." *Id.* at 279 (emphasis in original). The Sixth Circuit rejected that reading of the statute, finding instead that the term "venture," as used in the TVPRA, means a "sex-trafficking venture," and exists only where "[t]wo or more people [] engage in sex trafficking together." *Id.* at 286. People who associate for purposes other than trafficking, even if some subset of those people may separately commit sex trafficking crimes, cannot constitute a "venture" within the meaning of the statute. *Id.* at 286; *cf. United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) (explaining that "mere association with conspirators is not enough to establish participation in a conspiracy") (citations omitted).

Second, "participation" in a sex trafficking venture requires an overt act; nonfeasance or a failure to prevent a crime is insufficient. *See Afyare*, 632 F. App'x at 286 ("mere negative acquiescence" is not enough); *Ratha, Ltd.*, 2017 WL 8293174, at *4; *cf. United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that defendant committed an overt act designed to aid in the success of the venture."). Construing the TVPRA

-7-

otherwise "would create 'a vehicle to ensnare conduct that the statute never contemplated.'" *Afyare*, 632 F. App'x at 286.

District courts have recently confirmed that these same principles apply to civil liability under the TVPRA:

> Because guilt, or in this case liability, cannot be established by association alone, *Plaintiff must allege specific conduct that furthered the sex trafficking venture*. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture. *In other words, some participation in the sex trafficking act itself must be shown*.

*Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (citing *Afyare*, 632 F. App'x at 285 (emphasis added)); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities ….") (internal citation omitted, emphasis in original).

These principles are in accord with how this Court has applied the TVPRA. In *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010), plaintiffs filed TVPRA claims, alleging that a man named Joe and his son, Dan, forced them into involuntary servitude. *Id.* at *1-3. Even though the plaintiffs adequately stated a claim against Joe, this Court dismissed the claim against Dan, finding that the allegations that Joe had Dan's "help" in trafficking the plaintiffs because Dan was a "very large man" and his "physical presence" in the room served as a conspicuous reminder to the victims "that they could not escape," was *not* enough to state a claim. *Id.* at *3. It was not an overt act.

Here, the Amended Complaint altogether fails to allege that Marriott International "participated" in any "sex trafficking venture." First, there is no allegation that Marriott International had any association with a "sex trafficking venture." The only "venture" that Marriott International is alleged to have is a lawful franchise relationship with the Fremont Hotel. Yet the only "venture" relevant for purposes of the TVPRA is the "sex trafficking venture" committed by unnamed criminals—with whom the Amended Complaint does not suggest that Marriott International had *any* association. Second, and more fundamentally, there is no allegation that Marriott International

committed any overt act in furtherance of that sex trafficking venture. Alleged nonfeasance is insufficient. *Afyare*, 632 F. App'x at 286. Indeed, if Marriott International did not even know and could not have known about the sex trafficking venture (*see supra* Section IV.A.1.), *a fortiori* it did not and could not have "participated" in that venture. The Amended Complaint asserts merely the legal conclusion that "Marriott actively participated in this illegal endeavor [of trafficking J.C.]." (Am. Compl. ¶ 136.) Yet it fails to assert any factual allegations to support that conclusion.

Lastly, there are no allegations that Marriott International participated in the unnamed criminal sex trafficking "venture" which exploited J.C. The TVPRA defines "venture" as "any group of two or more individuals *associated in fact*…" *See Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019). That definition closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act; both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) *with* 18 U.S.C. § 1961(4); *cf. Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [two statutes] is, of course, a strong indication that the two statutes should be interpreted pari passu."). To be "associated in fact" requires persons to be "associated together *for a common purpose*." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). The Amended Complaint does not (and cannot in good faith) allege that Marriott International shared any such purpose with J.C.'s traffickers. It is well-settled that business transactions in the ordinary course (*e.g.*, sales and rentals), cannot give rise to an inference of a person's participation in a "common purpose" within the meaning of these statutes.[2]

---

[2] *Peters v. Aetna, Inc.*, 1:15-CV-00109-MR, 2016 WL 4547151, at *9 (W.D.N.C. Aug. 31, 2016) (where cooperation was no more than "that inherent in every commercial transaction, the Complaint provides no basis for inferring that the Defendants were conducting the enterprise's affairs") (internal quotations and alterations omitted)); *Cirino v. Bank of Am., N.A.*, CV 13-8829 PSG MRWX, 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) (allegations that vendors were "instrumentalities" to carry out RICO enterprise insufficient to show that they shared a common purpose with the enterprise); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose.").

### 4. Plaintiff's Amended Complaint Relies on Impermissible "Cookie-Cutter" Allegations, Transplanted from The Pleadings of Other, Unrelated Litigants

The implausibility of this Amended Complaint is further demonstrated by the fact that the Plaintiff has merely copied and pasted "cookie-cutter" or boiler-plate allegations from the pleadings of other, unrelated TVPRA litigants, filed in different states around the same date, as part of a failed effort to consolidate claims against the hotel industry generally. *See*, *e.g.*, *A.B. v. Marriott International, Inc.*, No. 1:19-cv-5770 (E.D. Pa. 2019) (ECF No. 1); *H.G. v. Inter-Continental Hotels Corp., et al.*, No. 19-13622 (E.D. Mich. 2019) (ECF No. 1); *A.B. v. Hilton Worldwide Holdings, Inc., et al.*, No. 3:19-cv-1992 (D. Or. 2019) (ECF No. 1); *K.B. v. Int'l Hotels Corp., et al.*, No. 1:19-cv-1213 (D.N.H. 2019) (ECF No. 1); *K.R. v. G6 Hospitality, LLC, et al*., No. 3:19-cv-08252 (N.D. Ca. 2019) (ECF No. 1). Even though each case involved different plaintiffs, different sex traffickers, and different hotel owners and operators, plaintiffs' counsel in each case pled similar boiler-plate and conclusory allegations against Marriott International (and other franchisors). The amendments there (*see, e.g., A.B*., 1:19-cv-5770 (ECF No. 21); *H.G*., 19-13622 (ECF No. 15); *K.R*., 3:19-cv-08252 (ECF No. 24)) and here do not correct this pleading defect – franchisors are not interchangeable and merely inserting the name "Marriott" to conclusory allegations does not provide facts specific to Marriott International, the Fremont Hotel, or J.C. (*e.g*., Am. Compl. ¶¶ 131-133, 134-136.)

Following *Twombly* and *Iqbal*, federal courts throughout the country have condemned the practice of using such "form complaints" as a badge of inadequate pleading. In dismissing one such complaint, the court explained:

> Plaintiff's complaint is a form complaint that "makes generalized allegations regarding practices of the mortgage lending industry" and is "devoid of particularized factual allegations against Defendant." … *[O]ther courts both within and outside of this district have had almost identical complaints on their dockets. … Plaintiff has apparently simply copied and pasted the form complaint to create her own complaint*, and her complaint contains no allegations specific to her mortgage transaction.

*Shabazz v. Bank of Am.*, No. 1:10-cv-0813, 2010 WL 11647333, at *2 and n.1 (N.D. Ga. Oct. 26, 2010) (internal citations omitted, emphasis added); *cf. Constellation Energy Commodities Grp. Inc.*

*v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) (internal citations omitted) (condemning a litigant's attempt to "adopt allegations from another lawsuit as its own" and "[s]tripping away [the litigant's] transplanted allegations"); *Muhammad v. Bethel-Muhammad*, No. CIV.A. 11-0690, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012) ("The plaintiff's sweeping reference to his 100–page complaint represents precisely the boiler plate safety valve … that other courts—and this one—condemn.") (internal quotations and citations omitted).

This case represents a paradigmatic example of improper "form" pleading. The Amended Complaint here alleges the vague legal conclusions that Marriott International knew or should have known about criminal conspiracies committed against different victims and failed to take reasonable measures to discover and prevent those crimes. It makes the same conclusory allegations against the other franchisors in this case, consistent with the pattern of allegations in other TVPRA complaints against hotel franchisors. While the use of form complaints (as here) is always a clear sign of inadequate pleading, it is particularly inappropriate in the context of TVPRA claims, which cabin civil liability upon specific proof of criminal acts by those who actively and knowingly participate in sex trafficking ventures. *See supra* Part A.1-3.

### B. PLAINTIFF FAILS TO ALLEGE THAT MARRIOTT INTERNATIONAL IS VICARIOUSLY LIABLE FOR THE ACTS OR OMISSIONS OF THE STAFF AT THE FREMONT HOTEL

The Amended Complaint alleges a franchisor-franchisee relationship at the Fremont Hotel. (Am. Compl. ¶¶ 14.f., 103, 107.) To the extent that the Amended Complaint assumes this relationship renders Marriott International vicariously liable for J.C.'s trafficking based on Marriott International's "agency relationship" with the Fremont Hotel (Am. Compl. ¶ 107.g), that assumption is wrong as a matter of California law.

The Supreme Court of California has made clear that a franchisor is vicariously liable for the actions of its franchisee "only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, *and relevant day-to-day aspects of the workplace behavior of the franchisee's employees*." *Patterson v. Domino's Pizza, LLC*, 333 P.3d 723, 739 (Cal. 2014) (emphasis added). In *Patterson*, the plaintiff filed sexual harassment-related claims, including assault and battery, against Domino's Pizza and its franchisee. *Id.* at 726–27.

1   Following a thorough discussion of agency principles in the franchisor-franchisee context, the Court
2   held that Domino's Pizza was not vicariously liable as a matter of law. *Id.* at 743. The Court held
3   that "standards, procedures, and requirements that regulate each" franchisee was not enough; rather,
4   a showing of day-to-day control was required; indeed, "*[a]ny other guiding principle would disrupt*
5   *the franchise relationship.*" *Id.* at 738-39 (emphasis added, internal citations omitted).

6   Federal courts, applying substantially similar legal principles, have found complaints
7   alleging a franchisor-franchisee relationship deficient. *See, e.g., N.T. v. Taco Bell Corp.,* 411 F.
8   Supp. 3d 1192 (D. Kan. 2019) (dismissing vicarious liability claim against franchisor under Kansas
9   law); *Acedo v. DMAX, Ltd.*, No. CV 15-02443MMMASX, 2015 WL 12696176, at *29 (C.D. Cal.
10  Nov. 13, 2015) (Michigan law); *Cha v. Hooters of Am., LLC*, No. 12-CV-4523 DLI JMA, 2013 WL
11  5532745 (E.D.N.Y. Sept. 30, 2013) (New York law); *Temple v. McDonald's Corp.*, No. CIV.A. 11-
12  7516, 2012 WL 848284 (E.D. Pa. March 13, 2012) (Maryland law).

13  These principles compel the same result under California law. The Amended Complaint
14  alleges that Marriott International "can exercise control" over the Fremont Hotel. (Am. Compl.
15  ¶ 107.f.) But it does not allege facts showing that Marriott International had the right to control
16  relevant day-to-day operations covering the relevant time period when J.C. was trafficked. The
17  Amended Complaint states that "[p]er the contract or franchise agreement," Marriott International
18  "may enforce [its] standards through periodic inspections and *even termination of the franchise*
19  *agreement if the operating hotel…is found to be inadequate.*" (Am. Compl. ¶ 98 (emphasis added).)
20  But this is insufficient to establish vicarious liability under California law.[3]

21  **C.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CAL. CIV. CODE § 52.5**

22  Other than inserting Marriott International's name, the allegations pertaining to Plaintiff's
23  claim under California Civil Code Section 52.5 remain unchanged from the original complaint and

---

25  [3] The Amended Complaint also fails to state any claim based on vicarious liability under an
26  ostensible agency theory, for which a plaintiff must establish (1) reasonable belief in the ostensible
    agent's authority, (2) generated by the principal's act or neglect, and (3) reasonable reliance on the
27  agent's apparent authority. *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975)
    (internal citations omitted). Among other things, the factual core of the whole Amended
28  Complaint—that criminals trafficked J.C. in various hotels *against her will*—is wholly incompatible
    with the notion that J.C. somehow "relied" (let alone reasonably relied) on any apparent authority.

thus remain even more defective than the TVPRA claim. (Am. Compl. ¶¶ 187-192.) The Amended Complaint does not, and cannot, allege the required statutory elements because this claim requires pleading "*intent* to obtain forced labor or services." *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D. Cal. 2016) (emphasis added). Section 52.5(a) provides in pertinent part: "A victim of human trafficking, *as defined in Section 236.1 of the Penal Code*, may bring a civil action for actual damages …" (emphasis added). Section 236.1 of the Penal Code, in turn, provides:

(a) A person who deprives or violates the personal liberty of another *with the intent* to obtain forced labor or services, is guilty of human trafficking . . .

(b) A person who deprives or violates the personal liberty of another *with the intent* to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking . . .

(c) A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, *with the intent* to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking . . .

(Emphasis added). The statute's meaning is plain and must be enforced. *See Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 778 (9th Cir. 2017) ("When the statutory 'language is unambiguous, the plain meaning controls.'") (citing *Voices of the Wetlands v. State Water Res. Control Bd.*, 52 Cal.4th 499, 519 (2011)). The elements of a Penal Code § 236.1(a) violation are that: "(1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person."[4] *People v. Halim*, 14 Cal. App. 5th 632, 643 (2017) (internal citations omitted). Because Civil Code Section 52.5 incorporates Penal Code Section 236.1, civil claims under Section 52.5 must allege both these elements. *See Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *15 (S.D. Cal. May 14, 2018) (applying the *Halim* elements to a Section 52.5 claim); *see also Lofthus*, 214 F. Supp. 3d at 916 (dismissing Section 52.5 claim because "[p]laintiff fails to allege

---

[4] Plaintiff does not allege that Marriott International committed or intended to commit any violation of the Penal Code provisions referenced in subsection (b) or (c).

any intent to obtain forced labor or services"); *Talib v. Guerrero*, No. CV1503825JAKDFM, 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) (recommending dismissal with prejudice of Section 52.5 claim where plaintiffs "did not allege that Defendants acted with the intent to obtain forced labor or services").

The Amended Complaint fails to allege *either* element here. Instead, its Section 52.5 allegations merely parrot the conclusory TVPRA allegations that Defendants facilitated her trafficking and financially benefited as a result. (*See* Am. Compl. ¶¶ 127, 148, 190.) This is insufficient; if the factual allegations fall short of suggesting that Marriott International even *knew* about the crimes committed against J.C. (*see supra* Part A.1), *a fortiori* they do not state a claim that Marriott International *intended* to obtain forced labor or services or benefit from those crimes.[5]

## V. CONCLUSION

For the foregoing reasons, Marriott International respectfully requests that this Court dismiss the Plaintiff's claims against Marriott International with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: April 2, 2020

DLA PIPER LLP (US)

By: _____
MICHAEL P. O'DAY (*pro hac vice* pending)
ELLEN E. DEW (*pro hac vice* pending)
AMANDA L. MORGAN
Attorneys for Defendant
Marriott International, Inc.

---

[5] The plain language of Section 52.5 makes clear that its scope of civil liability is narrower than that of the TVPRA. But even assuming (*arguendo*) that this Court construes Section 52.5 and the TVPRA *in pari materia*, the Section 52.5 claim should be dismissed for the same reasons that the Complaint's TVPRA claim is deficient. *See supra* Parts A.1-3.