1   Lori E. Andrus, Bar No. 205816
    lori@andrusanderson.com
2   Jennie Lee Anderson, Bar No. 203586
    jennie@andrusanderson.com
3   Audrey Siegel, Bar No. 286771
    audrey.siegel@andrusanderson.com
4   **ANDRUS ANDERSON LLP**
    155 Montgomery Street, Suite 900
5   San Francisco, CA 94104
    Telephone: (415) 986-1400
6   Facsimile: (415) 986-1474

7

8   Melinda Davis Nokes, Bar No. 167787
    mnokes@weitzlux.com
9   **WEITZ & LUXENBERG, P.C.**
    1880 Century Park East, Suite 700
10  Los Angeles, CA 90067
    Telephone: (310) 247-0921
11  Facsimile: (310) 786-9927

12  *Attorneys for Plaintiff J.C., proceeding under pseudonym*

13                **UNITED STATES DISTRICT COURT**
14              **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
15

16   J.C., an individual,                    Case No.: 3:20-cv-00155-WHO

17                          Plaintiff,

18            vs.                            **PLAINTIFF'S OPPOSITION TO
                                            DEFENDANT MARRIOTT
                                            INTERNATIONAL, INC.'S
19   CHOICE HOTELS INTERNATIONAL, INC.;      MOTION TO DISMISS PLAINTIFF'S
     HILTON WORLDWIDE HOLDINGS, INC;         FIRST AMENDED COMPLAINT**
20   MARRIOTT INTERNATIONAL, INC.
                                            Date:   June 3, 2020
21                          Defendants.      Time:   2:00 p.m.
                                            Ctrm.:  2
22                                          Judge:  Hon. William H. Orrick

23                                          Action Filed:  January 7, 2020
                                            Trial Date:    TBD
24

25

26

27

28

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND STATEMENT OF RELEVANT FACTS ............................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD ............ 2

   A.   Rule 12(b)(6) – Motion to Dismiss ........................................................................ 2

III.   ARGUMENT ............................................................................................................................ 3

   A.   Plaintiff's Complaint Sufficiently And Plausibly Pleads A Claim Against Marriott Under 18 U.S.C. § 1595(a). ...................................................... 3

      i.   Marriott Knowingly Benefitted.................................................................. 4

      ii.   Marriott Participated in a Venture. ........................................................... 5

      iii.   Marriott Knew or Should Have Known that the Venture Was Engaged in Sex Trafficking. ........................................................................................... 8

   B.   Plaintiff's Complaint Sufficiently And Plausibly Pleads Marriott Is Vicariously Liable. ..... 10

   C.   Plaintiff's Complaint Sufficiently And Plausibly Pleads A State Law Claim Under California Civil Code Section 52.5. ........................................................ 15

   D.   Plaintiff's Amended Complaint Relies On Case-Specific Facts And Is Not An Impermissible "Shotgun" Pleading. ......................................................... 16

IV.   CONCLUSION............................................................................................................. 16

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

1

## <u>TABLE OF AUTHORITIES</u>

2

**State Cases**

*Cislaw v. Southland Corp.*
3  4 Cal. App. 4th 1284 (1992) ....................................................................... 11

*Kuchta v. Allied Builders Corp.*
4  21 Cal. App. 3d 541 (1971) ........................................................................ 10

*McCollum v. Friendly Hills Travel Center*
5  172 Cal. App. 3d 83 (1985) ........................................................................ 11

*Patterson v. Domino's Pizza, LLC*
6  60 Cal. 4th 474 (2014) ............................................................................... 13

*Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*
7  220 Cal. App. 3d 864 (1990) ...................................................................... 11
8

**Federal Cases**

*A.B. v. Marriott Int'l Inc.*
9  No. 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020) ........................... 5, 7, 10, 12
10
*Acedo v. DMAX, Ltd.*
  No. CV 15-02443 MMM (ASx), 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) ..................... 14
11
*Andrade v. Arbys Rest. Group, Inc.*
  No. 15-cv-03175 NC, 2015 WL 6689475 (N.D. Cal. Nov. 3, 2015)................................ 14
12
*Ashcroft v. Iqbal*
13  129 S. Ct. 1937 (2009) .............................................................................. 3
14
*Atlantic Cleaners & Dyers, Inc. v. United States*
  286 U.S. 427 (1932) .................................................................................. 7
15
*Bistline v. Parker*
  918 F.3d 849 (10th Cir. 2019) ...................................................................... 6, 8
16
*Brown v. Corr. Corp. of Am.*
17  603 F. Supp. 2d 73 (D.D.C. 2009) ................................................................ 8

*Browning-Ferris Indus. of Cal., Inc. v. Nat'l Labor Rel. Bd.*
18  911 F.3d 1195 (D.C. Cir. 2018) .................................................................... 14

*Canosa v. Ziff*
19  No. 18 CIV 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ........................... 5

*Cha v. Hooters of Am., LLC*
20  No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013)......................... 14

*Cirino v. Bank of America, N.A..*
21  No. CV 13-8829 PSG (MRWx), 2015 WL 3669078 (C.D. Cal. Feb. 10, 2015)....................... 8
22
*Doe 1 v. Red Roof Inns*
  No. 1:19-cv-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ........................... 10
23
*Doe S.W. v. Lorain-Elyria Motel, Inc.*
  No. 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020)................................ 5
24
*Florida Abolitionist v. Backpage.com LLC*
25  No. 6:17-cv-218-Orl-28TBS, 2018 WL 1587477 (M.D. Fla. Mar. 31, 2018)....................... 10

*Galvan v. Walt Disney Park & Resorts, U.S., Inc.*
26  No. CV 18-01721-AB (FFM), 2019 WL 8017806 (C.D. Cal. Dec. 20, 2019)........................ 16

*Geiss v. The Weinstein Co. Holdings LLC*
27  383 F. Supp. 3d 156 (S.D.N.Y. 2019)............................................................. 7

*Gilbert v. United States Olympic Comm.*
28  423 F. Supp. 3d 1112 (D. Colo. 2019)........................................................... 5, 6

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

*H.H. v. G6 Hospitality, LLC*
   No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019)............................................ 5, 6, 12

*In re Coupon Clearing Serv., Inc.*
   113 F.3d 1091 (9th Cir. 1997) ..................................................................................................... 10

*Jean-Charles v. Perlitz*
   937 F. Supp. 2d 276 (D. Conn. 2013)............................................................................................ 6

*Lawson v. Rubin*
   No. 17-cv-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ........................................ 10

*Lesnik v. Eisenmann SE*
   374 F. Supp. 3d 923 (N.D. Cal. 2019) ................................................................................ 3, 5, 15

*Livewirecyber, Inc., v. Lee*
   No. 17-00645-AB(ASx), 2017 WL 4786087 (C.D. Cal. Aug. 3, 2017).................................... 15

*Lofthus v. Long Beach Veterans Hosp.*
   214 F. Supp. 3d 908 (C.D. Cal. 2016) .................................................................................. 15, 16

*Lomeli v. Jackson Hewitt, Inc.*
   No. 217CV02899-ODW (KSx), 2018 WL 1010268 (C.D. Cal. Feb. 20, 2018) ........................... 13

*M.A. v. Wyndham Hotels & Resorts, Inc.*
   No. 2:19-cv-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) ......................................... passim

*Mendiondo v. Centinela Hosp. Med. Ctr.*
   521 F.3d 1097 (9th Cir. 2008) ....................................................................................................... 2

*Muhammad v. Muhammad*
   No. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012).............................................. 16

*N.T. v. Taco Bell Corp.*
   411 F. Supp. 3d 1192 (D. Kan. 2019)......................................................................................... 13

*Noble v. Weinstein*
   335 F. Supp. 3d 504 (S.D.N.Y. 2018).......................................................................................... 7

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*
   380 F.3d 1226 (9th Cir. 2004) ..................................................................................................... 16

*Peters v. Aetna, Inc.*
   No. 1:15-cv-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016).......................................... 8

*Ratha v. Phattana Seafood Co., Ltd.*
   No. CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017)................................... 9

*Ricchio v. Bijal*
   386 F. Supp. 3d 126 (D. Mass. 2019) ........................................................................................... 5

*Rosner v. Bank of China*
   528 F. Supp. 2d 419 (S.D.N.Y. 2007)............................................................................................ 8

*Sedima, S.P.R.L. v. Imrex Co., Inc.*
   473 U.S. 479 (1985).................................................................................................................... 8

*Shabazz v. Bank of America*
   No. 1:10-CV-0813-RWS-AJB, 2010 WL 11647333 (N.D. Ga. Oct. 26, 2010)........................... 16

*Shuvalova v. Cunningham*
   No. C 10-02159 RS, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) .............................................. 7

*Shwarz v. United States*
   234 F.3d 428 (9th Cir. 2000) ......................................................................................................... 3

*Sinatra v. National Enquirer, Inc.*
   854 F.2d 1191 (9th Cir. 1988) ....................................................................................................... 9

*Sloan v. General Motors, LLC*
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ......................................................................................... 11

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

*Sloan v. General Motors, LLC*
   No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018)........................................ 11
*Stewart v. Chick-Fil-A*
   No. 19-cv-1780, 2020 WL 264578 (S.D. Cal. Jan. 17, 2020) ....................................... 14
*Temple v. McDonald's Corp.*
   No. 11- 7516, 2012 WL 848284 (E.D. Pa. Mar. 13, 2012) ......................................... 14
*United States v. Afyare*
   632 F. App'x 272 (6th Cir. 2016) ..................................................................... 7, 8
*United States v. Coppin*
   1 F. App'x 283 (6th Cir. 2001) ......................................................................... 8
*United States v. Longoria*
   569 F.2d 422 (5th Cir. 1978) ........................................................................... 7
*United States v. Turkette*
   452 U.S. 576 (1981)....................................................................................... 8
*Williams v. Taylor*
   529 U.S. 362 (2000) ....................................................................................... 8

**State Statutes**
Cal. Civ. Code § 2295................................................................................... 10
Cal. Civ. Code § 2332................................................................................... 9
Cal. Penal Code § 236.1................................................................................ 15
California Trafficking Victims Protection Act
   Cal. Civ. Code § 52.5......................................................................... 2, 15, 17

**Federal Statutes**
18 U.S.C. § 1589..................................................................................... 5, 7
18 U.S.C. § 1591................................................................................. passim
18 U.S.C. § 1595................................................................................. passim
Fed. R. Civ. Proc. 12(b)(6) .......................................................................... 2
Trafficking Victims Protection Reauthorization Act of 2008
   18 U.S.C. § 1591 *et seq*...................................................................... passim
Trafficking Victims Protection Reauthorization Act of 2008
   Amended Pub. L. No. 110-457, § 221(2), 122 Stat. 5067. ....................................... 3

**State Bills**
Bill Analysis of A.B. 22, 2005 Assemb. Comm. On Judiciary, Reg. Sess. (Cal. 2005).................... 15

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

## I.   INTRODUCTION AND STATEMENT OF RELEVANT FACTS

This case, like several others on file around the country, is about holding brand hotels accountable for their actions, and their inaction, when it comes to sex trafficking.  But this case is also about a young woman, J.C., who was trotted in and out of the Fremont Marriott Silicon Valley (a Marriott brand property) in sexual servitude for the financial benefit of others.  First Amended Complaint ("FAC"), ¶¶ 118, 121.  For *eleven years*, hotel workers at the Fremont Marriott Silicon Valley watched as these young women, including J.C., were escorted by their traffickers, along a stable of other trafficked women, to hotel rooms paid for.  *Id.* ¶¶ 109, 118, 121.  In those rooms, J.C. was forced to perform sex acts multiple times per day.  FAC, ¶¶ 109-124.  This was not legal prostitution; it was a girl being repeatedly raped, tortured, verbally abused, and forced to terminate two resulting pregnancies.  *Id.* ¶¶ 5, 7, 113.

J.C. and her trafficker routinely had direct contact with hotel staff.  J.C.'s trafficker would rent rooms at the Freemont Marriott Silicon Valley frequently for 3-4 days a week every two weeks.  *Id.* ¶ 121.  J.C. visited the hotel repeatedly, often with different guests, without any luggage, avoiding all eye contact, and displaying prominent bruising.  *Id.* ¶ 139.  J.C.'s traffickers would often help check her in and then not proceed to the room.  *Id.* ¶ 133.  In addition, she was often the victim of loud altercations and seemingly was never allowed to be alone.  *Id.*  The hotel staff witnessed a steady stream of men, who were not registered guests entering and exiting the hotels, but never questioned the unannounced guests or reported them to authorities.  *Id.* ¶¶ 121, 133.  On at least one occasion, there were altercations between victims in public areas of the hotel that should have alerted hotel staff to the nature of their activity.  *Id.* ¶ 121.  No authorities were called.  It simply would have been impossible for hotel staff not to notice J.C.'s victimization.

Given the open and obvious danger J.C. was in, the employees knew, or, at the very least, should have known, she was being trafficked.  *Id.* ¶ 130.  Marriott had the opportunity to stop J.C.'s traffickers and offenders like them from victimizing J.C. and others like her but instead failed to take reasonable measures to stop sex trafficking from occurring in their hotels.  *Id.* ¶¶ 63, 66-71, 145. By failing to act, and by failing to train hotel staff how to respond when someone is being trafficked, Marriott became a participant in J.C.'s exploitation.  *Id.* ¶¶ 136, 142.  Particularly given the

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

frequency and longevity of J.C.'s forced stays at the Marriott brand hotel central to this case,
Marriott benefitted financially from her exploitation through the rental of rooms where her
trafficking occurred. *Id.* ¶¶ 121, 127, 139, 148. To this day, Marriott enjoys the steady stream of
income that sex traffickers bring to its brand hotels, including the Fremont Marriott Silicon Valley
where J.C. was trafficked. *Id.* ¶ 151. Turning a blind eye has proven to be a very lucrative business.

Just as Marriott knew exactly what was going on in J.C.'s hotel rooms, they know exactly
what this lawsuit is about. Plaintiff's causes of action are sufficiently and plausibly pled, with
gruesome accuracy of the facts supporting those causes of action, and with a thorough recitation of
Marriott's egregious conduct in the venture to exploit J.C. for the benefit of her trafficker and
Marriott.

The FAC thus adequately alleges Marriott knowingly benefited from participation in a
venture it knew or should have known engaged in trafficking, which constitutes a valid, stand-alone
claim for relief under Section 1595 of the Trafficking Victims Protection Reauthorization Act of
2008 ("TVPRA"), 18 U.S.C. § 1591 *et seq.*, and pursuant to the California Trafficking Victims
Protection Act ("CTVPA"), Cal. Civ. Code § 52.5. Further, the existence of a
"franchisor/franchisee" agreement between Marriott and Fremont Marriott Silicon Valley does not
preclude the existence of a principal-agent or joint employer relationship between them, nor does it
relinquish Marriott from liability. Plaintiff's allegations that Marriott retained extensive control over
the day-to-day operations of Fremont Marriott Silicon Valley sufficiently and plausibly plead an
agency relationship and consequent liability therefor. Any challenge to the facts establishing
vicarious liability should be raised after discovery. Accordingly, Marriott's Motion should be
denied in full.

## II.  STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD

### A.  Rule 12(b)(6) – Motion to Dismiss

The Court must decide whether Plaintiff's FAC adequately states a claim for relief under
Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where
the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal
theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

considering the motion, the Court must accept the factual allegations in the complaint as true, and must construe the pleadings in the light most favorable to the non-moving party. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

### III. ARGUMENT

**A.      Plaintiff's Complaint Sufficiently And Plausibly Pleads A Claim Against Marriott Under 18 U.S.C. § 1595(a).[1]**

The TVPRA serves two primary purposes. First, it criminalizes sex trafficking by force, fraud, or coercion. *See* 18 U.S.C. § 1591.[2] Separately, since 2008, section 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking *and* against the beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a).[3] To help eradicate the scourge of sex trafficking, in 2008, Congress included in the scope of potential defendants "*whoever* knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *Id.* (Trafficking Victims Protection Reauthorization Act of 2008, Amended Pub. L. No. 110–457, title II, § 221(2), 122 Stat. 5067)[4] (emphasis supplied). The 2008 amendment evinced a broad Congressional intent to impose liability on businesses, such as Marriott, that facilitate and financially benefit from sex trafficking.

Civil liability under section 1595(a) can be brought as a "standalone" claim; a defendant can be found to have violated section 1595 (for benefitting from and participating in a venture where he knew of should have known that the venture was involved in sex trafficking) *without* having violated section 1591. *See, e.g., M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 963

---

[1] Claims brought under the TVPRA are not subject to a heightened pleading standard. *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 951 (N.D. Cal. 2019).

[2] One who benefits financially from a sex trafficking venture can also be held criminally liable under section 1591(a)(2).

[3] Plaintiff J.C. is a victim of sex trafficking in violation of section 1591(a). FAC, ¶¶ 11, 166.

[4] Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457 (Dec. 23, 2008), https://www.congress.gov/110/plaws/publ457/PLAW-110publ457.pdf.

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

(S.D. Ohio 2019).  It is important not to conflate the distinct elements set forth in the statute's

criminal liability section, and its civil liability section.  Though the standard for **beneficiary** liability

(under section 1595) differs from the standard for **perpetrator** liability (under section 1591),

throughout its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), Marriott merges

the two, in an attempt to hold J.C. to a higher standard than the law requires.  A plain reading of the

statute, and application of the rules of statutory construction, supports the claims brought against

Marriott.

Accepting J.C.'s factual allegations and construing the FAC in the light most favorable to

her, the non-moving party, it is clear that Plaintiff has stated a cognizable legal claim for relief

supported by sufficient facts.  This is especially so given the context of the hotel industry's

(including Marriott's) widespread recognition of the prevalence of sex trafficking in its brand hotels.

FAC, ¶¶ 47, 53, 57, 60, 71-76, 79, 82, 88, 89.

### i.   Marriott Knowingly Benefitted.

J.C. plausibly alleges that Marriott knowingly benefitted from the venture that trafficked her.

FAC, ¶¶ 109-124, 127, 130, 133, 139, 148, 151, 154, 171-74.  "Fremont Marriott Silicon Valley

pays around 10% of their total revenue back to Marriott…"  *Id.* ¶ 97.  Plaintiff also alleges that

Marriott directly benefitted from the trafficking of herself on each occasion it received payment for

rooms that she was kept in at the Fremont Marriott Silicon Valley.  *Id.* ¶ 190.  These are not

conclusory allegations of a monetary benefit received by Marriott through ordinary room rentals.

They are specific to J.C.'s obvious sex trafficking, and demonstrate a **direct financial connection**

from each incidence of abuse she suffered—multiple times per day for days at a time over an eleven-

year period—to Marriott's profit.  Plaintiff further alleges that Marriott has deliberately maintained

its sex trafficking detection deficiencies to maximize profits by failing to allocate expenditures for

proper ongoing of training of all employees (not just managers) on signs of sex trafficking, renting

rooms where sex trafficking occurs, and in failing to take proper security measures to combat sex

trafficking.  *Id.* ¶¶ 104, 145, 148, 158.

Marriott argues that the mere "[c]ollection of rent from guests" cannot support an inference

that a franchisor "knowingly" benefited from a sex trafficking venture.  Motion, p. 6.  Putting aside

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

the callousness of this argument, there are three problems with it.  First, all inferences must be drawn in favor of the non-moving party, not Marriott, and Plaintiff has provided ample evidence that Marriott **was** on notice that of J.C.'s predicament.  Second, as explained previously, section 1595(a) does not impose a requirement of actual knowledge of the sex trafficking.  *See Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020). Instead, "the first element merely requires that Defendant knowingly receives a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture."  *Id.*  "[T]he rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."  *Id.*, *quoting M.A.*, 425 F. Supp. 3d at 964; *see also A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at *15 (E.D. Pa. Apr. 22, 2020) (same); *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112 at 1137-38 (D. Colo. 2019) (finding the forced labor provision of section 1589(b) does not "require[] the party to benefit from the [forced] labor or services for liability to attach.").  Finally, section 1595 does not require that that the benefit be received "on account of" the sex trafficking itself, but only that Marriott knowingly benefit financially or receive anything of value.  *See H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *4 (S.D. Ohio Dec. 6, 2019); *see also Ricchio v. Bijal*, 386 F. Supp. 3d 126, 131 (2019) (where the defendants had a financial stake in the success of the motel, the court found that even the rental of a room for a short period could constitute a "benefit" within the meaning of the TVPRA).[5]

### ii. Marriott Participated in a Venture.

Next, J.C. has plausibly alleged that Marriott participated in a venture with her trafficker.  In the FAC, J.C. avers that Marriott "aided and engaged with her trafficker in his sex trafficking venture."  FAC, ¶ 127.  She alleges that Marriott had actual and/or constructive knowledge of the trafficking occurring in the hotel industry and of the trafficking of J.C. herself.  FAC, ¶¶ 47, 51, 55, 59, 68, 72-77, 80, 86, 109-124, 133, 139.  Further, that despite such knowledge Marriott failed to mandate training or implement anti-trafficking policies on its branded policies which would have

---

[5] The sole case cited by Marriott for this proposition, *Canosa v. Ziff*, No. 18 CIV 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019), Motion, p. 6, is inapposite.  In *Canosa*, the district court was only analyzing claims brought under section 1591, not section 1595.

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

prevented Plaintiff's trafficking and as a result Marriott facilitated the sex trafficking of J.C. through constant room rentals to her trafficker.  *Id.* ¶¶ FAC, 53, 89, 105, 107(e), (f), (i), 145, 157, 158.

With these non-conclusory, explicit averments, J.C. sufficiently alleges that Marriott, "[t]hrough its relationship with the staff at the Fremont Marriott Silicon Valley," *id.* ¶ 14(d), participated in the sex trafficking venture.

Indeed, plaintiffs in similar cases have met the participation in a venture element with less. In *H.H.*, 2019 WL 6682152, at *5, plaintiff's allegations that defendants rented rooms to people it knew or should have known were engaged in sex trafficking—allegations J.C. makes in the FAC, *id.*, ¶¶ 68, 109-124, 133, 139—were sufficient.  *See also Bistline v. Parker*, 918 F.3d 849, 875-76 (10th Cir. 2019) (holding that complaisance in response to exhibitions of TVPRA violations is sufficient to show participation in a trafficking venture).

Despite Plaintiff's robust allegations, Marriott advances four arguments.  Each fails.  First, Marriott attempts to transform section 1595(a)'s requirement of "participation in a venture" into "participation in a ***sex trafficking*** venture," ignoring the plain language of the statute.  To the contrary, "liability under § 1595 [for non-perpetrator beneficiary claims] can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in sex trafficking."  *M.A.,* 425 F. Supp. At 969; *see also Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 289 (D. Conn. 2013) (finding defendants participated in a venture where they maintained affiliations with a school where the sex trafficking of minors was taking place); *Gilbert*, 423 F. Supp. 3d at 1138 (holding that entire venture does not have to be engaged in the TVPRA violations).

Marriott next argues that "participation" requires an overt act, but other district courts have rejected this argument.  *See, e.g.*, *A.B.*, 2020 WL 1939678, at *8 ("We construe the Act under its terms as imposing liability should a jury find the business benefitted from participating in a venture it knew or should have known engaged in trafficking."); *Gilbert*, 423 F. Supp. 3d at 1138 (holding that a defendant's participation does not need to be an overt act).  Moreover, the cases Marriott cites say no such thing.  Motion, p. 7-8.  Several of the cases are entirely inapplicable because they involve the (stricter) definition of "participation in a venture" supplied in section 1591, the criminal

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

statute. 18 U.S.C. § 1591(e)(4).[6],[7]  As two federal judges have explained in recent, well-reasoned

opinions, Marriott's interpretation of the TVPRA defies the rules of statutory construction. *M.A.,*

425 F. Supp. 3d at 969-970; *see also* Order Granting In Part and Denying In Part Marriott's Motion

to Dismiss at 28-30, *A.B.*, 2020 WL 1939678, at **8-9).  In Marriott's view, the definition of

"participation in a venture" included in section 1591(e)(4) (the criminal statute) should be the

controlling measure of a hotel's liability.  That subsection reads: "The term 'participation in a

venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id.*

However, section 1591 is not the operative statute in this lawsuit, section 1595 is.  And section 1595

does not incorporate section 1591's definition of "participation in a venture."  Quite the opposite,

actually: the definitions in section 1591(e) explicitly apply only to "this section," *i.e.* section 1591.[8]

Were the Court to adopt Marriott's argument—and supplant the requirements of section 1595 with

those of section 1591—the "known or should have known" language of section 1595 would become

meaningless, a result eschewed by the rules of statutory construction.  *See M.A.,* 2019 WL 4929297

at *9.  "[C]ourts must give effect to every clause and word of a statute." *Williams v. Taylor*, 529

---

[6]  *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) is a criminal case dealing exclusively with section 1591. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018), is likewise distinguishable, as the plaintiff there only asserted section 1595 perpetrator trafficking claims against defendants who directly violated section 1591(a)(1) and section 1595 perpetrator financial beneficiary claims against defendants who directly violated section 1591(a)(2); *see also Geiss v. The Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) (same). *United States v. Longoria*, 569 F.2d 422 (5th Cir. 1978) explores the parameters of criminal aiding and abetting in the commission of a crime, but has zero applicability to section 1595's civil liability standard.
[7]  Marriott's reliance on *Shuvalova v. Cunningham*, No. C 10-02159 RS, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010), is also misplaced. In that case, the court evaluated plaintiff's claim under 18 U.S.C. section 1589, for forced labor, and found it lacking as to one defendant. *Id.* at *3. The case is distinguishable from this one given J.C.'s substantial allegations of the hotel staff's, and Marriott's, direct participation in her trafficking. In any event, *Shuvalova* merely found—in the particular circumstances of that case—that the slender allegations plaintiff made against the defendant-son (that the defendant-dad had forced plaintiff to engage in heavy manual labor "with [the defendant-son's] help") did not state a claim for forced labor against him. *Shuvalova* did not create a requirement of an "overt act" for liability under the TVPRA generally.
[8]  Naturally, to support a ***criminal*** violation under the TVPRA, the degree of "knowledge" must meet the requisite *mens rea* for a crime.  The fact that there are two different "knowledge" standards in the TVPRA is not problematic from a statutory construction standpoint because "there is such variation in the connection in which the words are used as to reasonably warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932).

U.S. 362, 364 (2000); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985) (when "statute is remedial in nature, its terms must be construed in a liberal fashion.").

Next, Marriott feebly argues that a franchisor-franchisee relationship is not a venture within the meaning of the statute, but cites no on-point authority.  Motion, p. 8.  Neither of the cases cited by Marriott even examined the franchisor-franchisee relationship in the context of 1595.  *See Afyare*, 632 F. App'x 272; *United States v. Coppin*, 1 F. App'x 283 (6th Cir. 2001) (criminal case evaluating aiding and abetting a conspiracy to distribute cocaine).  As discussed in Section B, below, Marriott's responsibility for the actions of the hotel staff at the Fremont Marriott Silicon Valley is firmly grounded in principles of vicarious liability and agency theory.

Last, Marriott's argument that it has to be "associated in fact" with J.C.'s trafficker "for a common purpose" relies primarily on RICO cases wholly unrelated to the TVPRA claims at issue here.[9],[10]

### iii. <u>Marriott Knew or Should Have Known that the Venture Was Engaged in Sex Trafficking.</u>

Plaintiff has plausibly alleged that Marriott knew or should have known of the venture with her trafficker engaging in the trafficking of J.C. over an eleven-year period.  For this prong, J.C. only needs to prove that the Marriott "should have known" about the nature of the venture, and this factor is akin to a negligence standard.  *See M.A.*, 425 F. Supp. 3d at *968.  Evidence of actual knowledge or conspiracy is not required.  *Id.*

Indeed, the failure to implement policies sufficient to combat a known problem in one's operation can rise to the level of willful blindness or negligence.  *See M.A.*, 425 F. Supp. 3d at 968, citing *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) (finding that the complaint provided sufficient allegations under section 1983, based on willful blindness, where

---

[9]  *See* Motion, p. 9, citing *United States v. Turkette*, 452 U.S. 576 (1981); *Peters v. Aetna, Inc.* No. 1:15-cv-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016); *Cirino v. Bank of America, N.A.*, No. CV 13-8829 PSG (MRWx), 2015 WL 3669078 (C.D. Cal. Feb. 10, 2015); *Rosner v. Bank of China*, 528 F. Supp. 2d 419 (S.D.N.Y. 2007).  Each of these cases is factually distinguishable as well, given the detailed allegations of the obvious signs of trafficking of J.C.
[10]  *Bistline*'s definition of venture (requiring an "association in fact") is in reference to section 1591, and is not the applicable standard in a section 1595 case.  *See Bistline*, 918 F.3d at 873 (10th Cir. 2019).

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

defendants knew that a supervisor at a correctional facility raped an employee, sexual harassment at the facility was not an isolated incident, and defendants failed to implement and effectuate the appropriate policies to remedy and/or prevent the discriminatory conduct, sexual harassment, and rape). J.C. has alleged Marriott was on notice of the prevalence of sex trafficking generally at its hotels—and specifically of her trafficking at the Fremont Marriott Silicon Valley—yet failed to take adequate steps to train the hotel staff, or institute appropriate security measures to prevent or thwart its occurrence. FAC, ¶¶ 107(a)-(h). In the FAC, J.C. highlights readily-available media coverage found through a simple online search demonstrating Marriott knew, as of at least early 2006, human trafficking for commercial sex was occurring in its hotels and across its grant. *Id*. ¶¶ 28, 72-77. Further, the FAC includes allegations that Marriott's management and executives discussed the prevalence of sex trafficking at meetings and through email communications. *Id.* ¶¶ 29, 30, 79, 82.

Plaintiff's complaint also includes a sufficient number of signs she alleges would have alerted Marriott (if it was a diligent hotel brand) to her plight, including at least one occasion there were altercations between victims in public areas of the hotel. *Id.* ¶¶ 68, 109-124, 133, 139. As such, Plaintiff has plausibly alleged facts sufficient to demonstrate Marriott knew, or at a minimum, Marriott ***should have known***, the venture was engaged in sex trafficking of J.C. at the Fremont Marriott Silicon Valley over an eleven-year period. While Marriott may argue these signs were observable only to Fremont Marriott Silicon Valley employees, knowledge of an agent within the scope of its authority is imputed to the principal. *See Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988); Cal. Civ. Code § 2332 ("both principal and agent are deemed to have notice of whatever either have notice of"). The cases cited by Marriott do not say otherwise. Motion, pp. 5-6. In *Ratha v. Phattana Seafood Co., Ltd*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017), the distributor defendants did not have ***any*** control over the factory. Plaintiffs sufficiently alleged violations of the TVPRA at the pleading stage, but ultimately lost on summary judgment after the discovery showed defendant incurred no benefit from its business relationship with the facility because it returned the product in question. *Id*. at *5. In contrast to the FAC here, the plaintiff's "shotgun" complaint in *Florida Abolitionist v. Backpage.com LLC* "lump[ed] all defendants together in nearly all allegations." *Id*., No. 6:17-cv-

218-Orl-28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018).  Finally, *Lawson v. Rubin*, 17-

cv-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) is distinguishable because J.C.'s

repeated presence at the Fremont Marriott Silicon Valley with her trafficker and 5-10 buyers a day,

over an eleven-year period, amounts to far greater evidence of Marriott's degree of knowledge than a

single ambulance visit to a condominium.  *Id.* at *14.[11]

### B.   Plaintiff's Complaint Sufficiently And Plausibly Pleads Marriott Is Vicariously Liable.

Plaintiff contends Marriott is the joint employer, alter ego, or otherwise in an apparent

agency relationship Fremont Marriott Silicon Valley where she was trafficked for sex.  Here, the

parties have yet to engage in any substantive discovery related to the Defendant-brand manager's

control over the day-to-day operations of their respective branded property.  Similarly, the parties

have conducted no discovery on whether Marriott exercised control over employees at Fremont

Marriott Silicon Valley such that it constitutes a "joint employer" for purposes of liability.

Therefore, Marriott's "franchisor / franchisee" arguments are premature and should be denied.

Under California law, "[a]n agent is one who represents another ... in dealings with third

persons." Cal. Civ. Code § 2295.  The hallmark of an agency relationship is that one person agrees

to act on behalf of another and is ***subject to his control***.  *See In re Coupon Clearing Serv., Inc.,* 113

F.3d 1091, 1099 (9th Cir. 1997) (applying California law).  "The law is clear that a franchisee may

be deemed to be the agent of the franchisor." *Kuchta v. Allied Builders Corp.,* 21 Cal. App. 3d 541,

547 (1971) (citations omitted).

> The general rule is where a franchise agreement gives the franchisor ***the right of complete or substantial control*** over the franchisee, an agency relationship exists.  It is the ***right to control the means and manner*** in

---

[11]  The level of factual detail in the FAC, and the significant time span over which J.C. was trafficked at the Fremont Marriott Silicon Valley makes Plaintiff's allegations distinct from the conclusory nature of Jane Doe's allegations against 29 named defendants in *Doe 1 v. Red Roof Inns*, No. 1:19-cv-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) (holding the fact that plaintiff failed to allege that the defendants "ever dealt with the Plaintiff herself," and instead relied on "allegations that customers complained about prostitution existing on properties" warranted dismissal without prejudice).  Moreover, the decisions granting motions to dismiss in that case and three related cases before the same judge in the Northern District of Georgia rely on a misapplication of precedent interpreting section 1591, as explained thoroughly in *A.B.,* 2020 WL 1939678, at **8-9.

1
      which the result is achieved that is significant in determining whether a
principal-agent relationship exists.

2
*Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992) (citations and quotations omitted)

3
(emphasis added).

4
      The test of an agency relationship is the principal's ***right*** to control the activities of the agent.

5
"It is not essential that the right of control be exercised or that there be actual supervision of the

6
work of the agent." *Id.*, 4 Cal. App. 4th at 1288 (citing *McCollum v. Friendly Hills Travel Ctr.*, 172

7
Cal. App. 3d 83, 91 (1985)).  Whether a right of control exists may be measured by asking "whether

8
or not, if instructions they were given, they would have to be obeyed." *Toyota Motor Sales U.S.A.,*

9
*Inc. v. Superior Court*, 220 Cal. App. 3d 864, 875 (1990) (reversing trial court's determination that

10
the delivery driver was an independent contractor).

11
      The question of whether the franchisee is an agent is ordinarily one of fact, and can be

12
determined as a matter of law "[o]nly when the essential facts are not in conflict." *Cislaw, supra,* 4

13
Cal. App. 4th at 1288 (citations omitted).  Allegations against a principal may survive a motion to

14
dismiss where "the complaint includes allegations from which an agency relationship may plausibly

15
be inferred." *Sloan v. Gen. Motors, LLC,* 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018), *order*

16
*clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018).

17
      Contrary to Marriott's suggestion, the FAC includes numerous specific allegations regarding

18
the amount of control Marriott exercised over Fremont Marriott Silicon Valley and its employees,

19
including:

20
21
22
- That an actual and/or apparent agency exists between Marriott and the Fremont Marriott Silicon Valley: (1) Marriott and the Fremont Marriott Silicon Valley intended to and agreed to form an express agency relationship via a franchise agreement; (2) Marriott holds out the Freemont Marriott Silicon Valley as possessing authority to act on its behalf to the general public. FAC, ¶¶ 14, 90-93, 97-98, 107(g)-(h).

23
24
25
26
- That Marriott (1) ***controls the training and policies for its hotels***, including the Fremont Marriott Silicon Valley where J.C. was trafficked, (2) that Marriott ***requires*** the hotels in its portfolio ***to comply with Marriott brand standards and all local, state, and federal laws***; (3) that Marriott ***receives approximately ten percent of gross room revenue***; (4) that Marriott owns, supervisors, and/or operates the Fremont Marriott Silicon Valley where J.C. was trafficked. *Id.* ¶¶ 14(b)(c), 66, 97, 107(f).

27
28
- That Marriott reserved and exercised ongoing and systemic rights of control over the day-to-day operations of Fremont Marriott Silicon Valley hotels, including: (1) hosting online bookings on Defendant Marriott's domain; (2) requiring Fremont Marriott

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

Silicon Valley branded hotels to use Marriott's customer rewards program; (3) *setting employee wages*; (4) *making employment decisions*; (5) *advertising for employment*; (6) *sharing profits*; (7) *requiring standardized training methods for employees*; (8) building and maintaining the facility in a manner specified by the owners; (10) *standardized or strict rules of operation*; (11) *fixing prices*; and/or (12) other actions that deprive Fremont Marriott Silicon Valley of independence in business operations. *Id.* ¶¶ 14, 21, 90, 92, 103, 107(g).

- That Marriott had the right to enforce its control through periodic inspections and *even termination of the franchise agreement* if the operating hotel is found to be inadequate. *Id.* ¶¶ 98, 104.

- That Marriott retained the control necessary to: (1) *distribute information* to employees to assist in identifying signs of sex trafficking; (2) *provide a process* for escalating sex trafficking concerns within the organization;(3) *require all employees to attend training related to sex trafficking*; (4) provide *new hire orientation on human rights* and corporate responsibility; (5) *provide training and education* to Fremont Marriott Silicon Valley through *webinars, seminars, conferences, and online portals*; (6) develop and *hold ongoing training sessions* on human trafficking; or (7) *provide checklists, escalation protocols, and information* to property management staff, or track performance indicators and key metrics on sex trafficking information. *Id.,* ¶¶ 14(b), 66, 70, 107(f). Yet despite their public statements, and in contradiction of their stated policies, did nothing to exercise this control. *Id.* ¶¶ 14(b), 74, 85, 88, 107(i).

The allegations in the FAC plausibly support an agency theory of liability between Marriott and the Fremont Marriott Silicon Valley. *See M.A.*, 425 F. Supp. 3d at 971-72 (court found that allegations that national brand controlled individuals hotels through employee training, standardized rules of operation, pricing, hosting online platforms for booking, setting employee pay, regular inspections, and requiring local hotels to participate in the national brand's rewards program were sufficient to plead that the individual hotels were agents of the national brands); *H.H.*, 2019 WL 6682152, at *6 (holding that allegations of profit-sharing, standardized rules of operation, and inspections were sufficient to show an agency relationship between brand companies, such as Wyndham, and individual hotel locations); *A.B.*, 2020 WL 1939678, at *19 (holding that allegations of "ongoing and systemic right of control" including sharing profits, standardized training methods for employees, building and maintaining the facility, regular inspections, and fixing prices sufficiently plead an agency relationship). Any factual dispute regarding the level of control Marriott exerts over its agent can only be determined through discovery on the merits, not at the pleadings stage.

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

1    Marriott's reliance on *Patterson v. Domino's Pizza, LLC,* 60 Cal. 4th 474 (2014), to argue

2    Plaintiff has not adequately pled agency liability is misplaced.  Motion, p. 11.  In *Patterson*, the

3    court concluded "the imposition and enforcement of a uniform marketing and operational plan

4    cannot ***automatically*** saddle the franchisor with the responsibility for the employees of the

5    franchisee."  *Patterson,* 60 Cal. 4th at 477 (emphasis in original).  Instead, the franchisor must

6    "exhibit the traditional characteristics of an 'employer' or 'principal; 'i.e., it has retained or assumed

7    a general right of control a ***general right of control*** over factors such as hiring, direction,

8    supervision, discipline, discharge, and ***relevant*** day-to-day aspects of the workplace behavior of the

9    franchisee's employee."  *Id.*  Nothing in *Patterson* limited the liability of a franchisor which, like

10   Marriott, has "***retained or assumed*** the right of general control over the ***relevant*** day-to-day

11   operations at its franchised locations."  *Id.* at 503 (emphasis added).[12]  *See also  Lomeli v. Jackson*

12   *Hewitt, Inc.*, No. 217CV02899-ODW (KSx), 2018 WL 1010268, at * 7 (C.D. Cal. Feb. 20, 2018)

13   (finding that franchisor could be found vicariously liable where it controlled the training of

14   employees, which was the instrumentality of the alleged harm).

15       Moreover, *Patterson* is distinguishable on its facts.  In *Patterson*, the franchisor had no

16   authority to intervene to address the harm alleged (sexual harassment).  *Id.* at 479 ("The

17   uncontradicted evidence showed the franchisee imposed discipline consistent with his own personnel

18   policies, declined to follow the ad hoc advice of the franchisor's representative, and neither expected

19   nor sustained any sanction for doing so.").  Here, Plaintiff has alleged Marriott "could and should"

20   have developed a policy or training program to help prevent and/or report sex trafficking at the

21   Fremont Marriott Silicon Valley, but simply failed to do so.  FAC, ¶¶ 14(b), 66, 70, 74, 85, 88,

22   107(f), (i).

23       The other cases relied upon by Marriott similarly do not compel otherwise.  Motion, p. 11.

24   In *N.T. v. Taco Bell Corp*., 411 F. Supp. 3d 1192 (D. Kan. 2019) the Court found that a franchisor

25   was not liable for a franchisee's employees' sexual harassment where there were no allegations the

26   _____

27   [12]  *Patterson* considered the very narrow question of whether "a franchisor stand[s] in an
     employment or agency relationship with its franchisee and its employees for purposes of holding it

28   vicariously liable for workplace injuries allegedly inflicted by one employee of a franchisee while
     supervising another employee of the franchisee."  *Patterson,* 60 Cal. 4th at 477.

1   franchisor retained control over day-to-day decisions.  *Acedo v. DMAX, Ltd.*, No. CV 15-02443

2   MMM (ASx), 2015 WL 12696176, at *29 (C.D. Cal. Nov. 13, 2015) (applying Michigan law) found

3   that General Motors was not liable as a motor repair facility on an agency theory.  In *Cha v. Hooters*

4   *of Am., LLC,* No. 12-CV-4523 DLI JMA, 2013 WL 5532745 (E.D.N.Y. Sept. 30, 2013) (applying

5   New York law) the court found that a franchisor was not liable for an employee's racial harassment

6   where there were no allegations of control of the relevant day-to-day operations.  Finally, in *Temple*

7   *v. McDonald's Corp.*, No. 11- 7516, 2012 WL 848284 (E.D. Pa. Mar. 13, 2012) (applying Maryland

8   law) found a franchisor was not liable for premises liability where the franchisee was solely

9   responsible for maintaining the property.

10         Finally, Marriott's arguments do not address Plaintiff's arguments that Marriott is liable

11   under a ***joint employer*** theory.  Similar to the agency relationship inquiry, whether two employers

12   are joint employers often turns on how much control one exercised over the other.  *See e.g. Salazar,*

13   *supra,* 944 F.3d at 1024.  At the motion to dismiss stage, a plaintiff need only allege facts showing a

14   joint employer relationship.  *Andrade v. Arby's Rest. Group, Inc.*, No. 15-cv-03175 NC, 2015 WL

15   6689475, at *4 (N.D. Cal. Nov. 3, 2015).  In order to establish a joint employer relationship:

16           [T]the Complaint must allege facts satisfying the following elements: 1)
        The nature and degree of control each employer had over the others'
17           employees; (2) day-to-day supervision and discipline over each other's
        employees; (3) authority to hire and fire the employee and to set
18           employment conditions; and (4) control over employment records and
        over methods and amounts of payment of the other's employees.

19

20   *Stewart v. Chick-Fil-A,* No. 19-cv-1780, 2020 WL 264578, at *2 (S.D. Cal. Jan. 17, 2020) (internal

21   citation omitted).  "Significantly, what matters under the common law is not how much control a

22   hirer ***exercises,*** but how much control the hirer retains the ***right*** to exercise."  *Ayala v. Antelope*

23   *Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (collecting cases) (emphasis in original); *Browning-*

24   *Ferris Indus. of Cal., Inc. v. Nat'l Labor Relations Bd.*, 911 F.3d 1195, 1213 (D.C. Cir. 2018).  In

25   addition to direct control, indirect control is relevant to determining employer status.  *Browning-*

26   *Ferris,* 911 F.3d at 1217.  As discussed above, the FAC has alleged Marriott was a joint employer

27   that reserved and exercised ongoing and systemic rights of control over the day-to-day operations of

28   Fremont Marriott Silicon Valley, including setting employee wages, making employment decisions,

1   and requiring standardized training methods for employees.  FAC, ¶¶ 14(b), (f), 21, 66, 90, 103-104,

2   107(g).  This is sufficient at the pleading stage.

3       **C.  <u>Plaintiff's Complaint Sufficiently And Plausibly Pleads A State Law Claim
        Under California Civil Code Section 52.5.</u>**

4

5       Marriott attempts to insert an additional "intent" element into the CTVPA where none exists.

6   Motion, pp. 12-13.  The CTVPA states, simply: "[a] victim of human trafficking, as defined in

7   Section 236.1 of the Penal Code, may bring a civil action."  Cal. Civ. Code 52.5(a).  Although it is

8   correct that the statute requires *the plaintiff* fit the definition of a "victim" in Section 236.1 of the

9   Penal Code, the statute says nothing about the nature of potential *defendants*, and does not

10  incorporate the *mens rea* element of the criminal statute into the Civil Code.

11      As Judge Koh of the Northern District of California noted recently, the TVPRA and CTVPA

12  are co-extensive.  *See Lesnik*, 374 F. Supp. 3d at 954 (the CTVPA "mirror[s] the TVPRA").  For all

13  the reasons articulated above, just as J.C. has stated a plausible claim for violations of the TVPRA,

14  so too has she stated a claim for the CTVPA.  Reading the CTVPA consistently with the TVPRA—

15  including the lower standard of proof for beneficiary claims—is consistent with the legislative

16  history of the CTVPA, wherein the bill's author explained "civil recourse" is necessary to address

17  "the heinous acts perpetrated against" trafficking victims, particularly in cases where criminal

18  prosecution does not occur due to "the difficulty of meeting the higher burden of proof in a criminal

19  case."  Bill Analysis of Assembly Bill 22, 2005 Assembly Committee on Judiciary, Regular Session

20  (Cal. Apr. 28, 2005).[13]  Where two claims are similar in both their elements and facts, the facts need

21  not be separated by cause of action.  *Livewirecyber, Inc.*, *v. Lee.*, Civ. No. 17-00645-AB(ASx), 2017

22  WL 4786087, at *4 (C.D. Cal. Aug. 3, 2017).

23      Marriott's citation to *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D.

24  Cal. 2016), does not change this result.  The quoted portion of *Lofthus* is no more than the court's

25  recitation of Section 236.1 of the Penal Code, which as explained above relates only to determining

26

27  [13]  Bill Analysis of A.B. 22, 2005 Assemb. Comm. On Judiciary, Reg. Sess. (Cal. Apr. 28, 2005),
    www.leginfo.ca.gov/pub/05-06/bill/asm/ab_0001-

28  0050/ab_22_cfa_20050428_095213_asm_comm.html.

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

standing of the **victim.** *Lofthus* included no discussion whatsoever of the level of intent required by a

defendant to impose liability and involved a complaint filed with "disjointed factual allegations" by

a *pro per* plaintiff against two hospitals for acts authorized by the Orange County Family Court. *Id.*

at 911.

### D. <u>Plaintiff's Amended Complaint Relies On Case-Specific Facts And Is Not An Impermissible "Shotgun" Pleading.</u>

It is true this case is one of several like it around the country seeking to hold hotel chains

accountable for rampant violations of the TVPRA.  That fact does not render this case an

impermissible "shotgun" pleading, however.  The Court need not spend much time on this argument

as the cases cited are easily distinguishable.[14]

Here, the FAC contains detailed allegations that are specific to J.C. and the sex trafficking of

J.C. at the Fremont Marriott Silicon Valley.  It also contains allegations specific to Marriott's

corporate practices and the agency relationship created by the degree of control Marriott has over its

brand properties.  "This is far from a cookie-cutter complaint."  *Nursing Home Pension Fund, Local*

*144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004).

### IV. <u>CONCLUSION</u>

Marriott asks this Court to overlook the significant financial benefit it knowingly receives

from room rentals and royalties of Marriott-branded hotels where sex trafficking is obviously

occurring, including the Fremont Marriott Silicon Valley.  Marriott additionally asks this Court to

interpret the "participation in a venture" and "knew or should have known" language of the TVPRA

in a narrow and limiting fashion, when Congress clearly intended to encompass such conduct as a

---

[14]  Motion, p. 10.  The complaint in *Shabazz v. Bank of America*, No. 1:10-CV-0813-RWS-AJB, 2010 WL 11647333 (N.D. Ga. Oct. 26, 2010), filed by a *pro se* plaintiff who did not bother to oppose Bank of America's motion to dismiss, was "entirely devoid of any meaningful factual allegations related specifically to Plaintiff's mortgage loan."  *Galvan v. Walt Disney Park & Resorts, U.S., Inc.*, Case No. CV 18-01721-AB (FFM), 2019 WL 8017806 (C.D. Cal. Dec. 20, 2019) granted a Rule 11 motion against the plaintiffs' attorney, who included plainly false information in the complaint and failed to investigate prior to filing.  In *Muhammad v. Muhammad,* No. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012), another *pro se* plaintiff "failed to present a comprehensible complaint compliant with basic pleading requirements" despite six opportunities to do so.

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**

1    basis of liability.  Last, on the question of the existence of an agency relationship, Marriott seeks to

2    skip past the pleading stage to the summary stage.

3           For all the reasons explained herein, J.C. has adequately and plausibly pled a claim under the

4    TVPRA and the CTVPA asserting that Marriott is liable, both directly and indirectly, under the

5    statutes.  Marriott's Motion should be denied in full.

6

7    Dated: May 4, 2020                          Respectfully Submitted,

8                                                By:  _____ */s/ Lori E. Andrus*_____

9                                                Lori E. Andrus, Bar No. 205816
                                                 lori@andrusanderson.com
10                                               Jennie Lee Anderson, Bar No. 203586
                                                 jennie@andrusanderson.com
11                                               Audrey Siegel, Bar No. 286771
                                                 audrey.siegel@andrusanderson.com
12                                               **ANDRUS ANDERSON LLP**
13                                               155 Montgomery Street, Suite 900
                                                 San Francisco, CA 94104
14                                               Telephone: (415) 986-1400
                                                 Facsimile:  (415) 986-1474
15

16                                               Melinda Davis Nokes, Bar No. 167787
                                                 mnokes@weitzlux.com
17                                               **WEITZ & LUXENBERG, P.C.**
                                                 1880 Century Park East, Suite 700
18                                               Los Angeles, CA 90067
                                                 Telephone: (310) 247-0921
19                                               Facsimile: (310) 786-9927

20
                                                 *Attorneys for Plaintiff J.C., proceeding under*
21                                               *pseudonym*

22

23

24

25

26

27

28

**PLAINTIFF'S OPP. TO MARRIOTT'S MOTION TO DISMISS**