Lori E. Andrus, Bar No. 205816
lori@andrusanderson.com
Jennie Lee Anderson, Bar No. 203586
jennie@andrusanderson.com
Audrey Siegel, Bar No. 286771
audrey.siegel@andrusanderson.com
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474

Melinda Davis Nokes, Bar No. 167787
mnokes@weitzlux.com
**WEITZ & LUXENBERG, P.C.**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 247-0921
Facsimile: (310) 786-9927

*Attorneys for Plaintiff J.C., proceeding under pseudonym*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| J.C., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHOICE HOTELS INTERNATIONAL, INC.;<br>HILTON WORLDWIDE HOLDINGS, INC;<br>MARRIOT INTERNATIONAL, INC.<br><br>Defendants. | Case No.: 3:20-cv-00155-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:   June 3, 2020<br>Time:  2:00 p.m.<br>Ctrm.:  2<br>Judge:  Hon. William H. Orrick<br><br>Action Filed:  January 7, 2020<br>Trial Date:     TBD |

1

## **TABLE OF CONTENTS**

2      I.    INTRODUCTION AND STATEMENT OF RELEVANT FACTS ............................................. 1

3      II.   STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD ............ 2

4            A.   Rule 12(b)(6) – Motion to Dismiss ...................................................................... 2
             A.   Rule 12(f) – Motion to Strike ............................................................................... 3

5      III.  ARGUMENT .......................................................................................................................... 3

6            A.   Plaintiff's Complaint Sufficiently And Plausibly Pleads A Claim Against Choice Under 18
                  U.S.C. § 1595(a). .................................................................................................. 3

7                 i.    Choice Participated in a Venture. ............................................................. 4
                  ii.   Choice Knowingly Benefitted. ................................................................. 7

8                 iii.  Choice Knew Or Should Have Known That The Venture Was Engaged In Sex
                        Trafficking. .............................................................................................. 9

9            B.   Plaintiff's Complaint Sufficiently And Plausibly Pleads Choice Is Vicariously Liable. ....... 12

10                i.    Plaintiff Has Sufficiently Alleged Agency And Vicarious Liability. ........................ 13
                  ii.   Plaintiff Has Sufficiently Alleged that Choice is a Joint Employer. ......................... 16

11           C.   Plaintiff's Complaint Sufficiently And Plausibly Pleads A State Law Claim Under California
                  Civil Code Section 52.5. ..................................................................................... 18

12           D.   Plaintiff's Amended Complaint Relies On Case-Specific Facts And Is Not An Impermissible

13                "Shotgun" Pleading. ............................................................................................. 19

             E.   Choice's Motion to Strike Lacks Merit. ............................................................. 20

14     IV.   CONCLUSION..................................................................................................................... 22

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1

## <u>TABLE OF AUTHORITIES</u>

2

**State Cases**

*Ayala v. Antelope Valley Newspapers, Inc.*
3     59 Cal. 4th 522 (2014) ...................................................................................17

*Cislaw v. Southland Corp.*
4     4 Cal. App. 4th 1284 (1992) .........................................................................14

*Kuchta v. Allied Builders Corp.*
5     21 Cal. App. 3d 541 (1971) ..........................................................................13

*McCollum v. Friendly Hills Travel Center*
6     172 Cal. App. 3d 83 (1985) ..........................................................................14

*Patterson v. Domino's Pizza, LLC*
7     60 Cal. 4th 474 (2014) ..................................................................................15

*Toyota Motor Sales U.S.A., Inc. v. Super. Court*
8     220 Cal. App. 3d 864 (1990) ........................................................................14

**Federal Cases**

*A.B. v. Marriott Int'l Inc.*
10    No. 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020).......................7, 8, 14

*Andrade v. Arbys Rest. Group, Inc.*
11    No. 15-cv-03175 NC, 2015 WL 6689475 (N.D. Cal. Nov. 3, 2015)..........16

*Ashcroft v. Iqbal*
12    129 S. Ct. 1937 (2009).....................................................................................3

*Brown v. Corr. Corp. of Am.*
13    603 F. Supp. 2d 73 (D.D.C. 2009) ...............................................................10

*Browning-Ferris Indus. of Cal., Inc. v. Nat'l Labor Rel. Bd.*
14    911 F.3d 1195 (D.C. Cir. 2018).................................................................17, 18

*Capella Photonics, Inc. v. Cisco Sys., Inc.*
15    77 F. Supp. 3d 850 (N.D. Cal. 2014) ..............................................................3

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*
16    467 U.S. 837 (1984)......................................................................................18

*Complete Distrib. Servs., Inc. v. All States Transp., LLC*
17    No. 3:13-CV-00800-SI, 2015 WL 1393281 (D. Or. Mar. 25, 2015)...........21

*Doe 1 v. Red Roof Inns*
18    No. 1:19-cv-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ...........7, 11

*Doe 2 v. Red Roof Inns, Inc.*
19    No. 1:19-cv-3841-WMR, 2020 WL 1872337 (N.D. Ga. Apr. 13, 2020) ...................7

*Doe 3 v. Red Roof Inns, Inc.*
20    No. 1:19-cv-3843-WMR, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ...................7

*Doe 4 v. Red Roof Inns, Inc.*
21    No. 1:19-cv-3845-WMR, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) ...................7

*Doe S.W. v. Lorain-Elyria Motel, Inc.*
22    No. 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020)...........8

*Fantasy, Inc. v. Fogerty*
23    984 F.2d 1524 (9th Cir. 1993) ......................................................................21

*Gateway Bottling, Inc. v. Dad's Rootbeer Co.*
24    53 F.R.D. 585 (W.D. Pa. 1971) ...................................................................21

*Gilbert v. United States Olympic Comm.*
25    423 F. Supp. 3d 1112 (D. Colo. 2019)........................................................5, 8

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

*H.H.* v. G6 Hosp., LLC
   No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019)..........................................9, 14
*Harrison v. Lee*
   No. 6:19-cv-00315-AA, 2019 WL 6528590 (D. Or. Dec. 4, 2019).........................................22
*Henderson v. United Student Air Funds, Inc.*
   918 F.3d 1068 (9th Cir. 2019) ...............................................................................................15
*Hughey v. Camacho*
   No. 2:13–cv–2665–TLN–AC, 2014 WL 5473184 (E.D. Cal. Oct. 23, 2014)..........................20
*In re Coupon Clearing Serv., Inc.*
   113 F.3d 1091 (9th Cir. 1997) ...............................................................................................13
*J.M. v. Pleasant Ridge Union Sch. Dist.*
   No. 2:16-00897 WBS CKD, 2017 WL 117965 (E.D. Cal. Jan. 10, 2017)...............................20
*Kyle K. v. Chapman*
   208 F.3d 940 (11th Cir. 2000) ...............................................................................................20
*L.W. v. Hilton Holdings, Inc.*
   Transcript of Oral Argument, No. 4:19-CV-4172 (S.D. Tex. Mar. 16, 2020), ECF No. 38 .7, 11
*LeDuc v. Ky. Cent. Life Ins. Co.*
   814 F. Supp. 820 (N.D. Cal. 1992) ...............................................................................3, 20, 21
*Lee v. City of L.A.*
   250 F.3d 668 (9th Cir. 2001) .................................................................................................16
*Lesnik v. Eisenmann SE*
   374 F. Supp. 3d 923 (N.D. Cal. 2019) ...........................................................................3, 8, 18
*Livewirecyber, Inc., v. Lee.*
   No. 17-00645-AB(ASx), 2017 WL 4786087 (C.D. Cal. Aug. 3, 2017)...................................19
*Lofthus v. Long Beach Veterans Hosp.*
   214 F. Supp. 3d 908 (C.D. Cal. 2016) ....................................................................................19
*M.A. v. Wyndham Hotels & Resorts, Inc.*
   No. 2:19-cv-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) ...................................... passim
*Mendiondo v. Centinela Hosp. Med. Ctr.*
   521 F.3d 1097 (9th Cir. 2008) .................................................................................................2
*Microsoft Corp. v. i4i Ltd. P'ship*
   564 U.S. 91 (2011)..................................................................................................................18
*Nissen v. Lindquist*
   No. C16-5093, 2017 WL 26843 (W.D. Wash. Jan. 3, 2017)...................................................20
*Noble v. Weinstein*
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)........................................................................................6
*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*
   380 F.3d 1226 (9th Cir. 2004) ...............................................................................................20
*Petrie v. Elec. Game Card, Inc.*
   761 F.3d 959 (9th Cir. 2014) ...................................................................................................3
*Ratha v. Phatthana Seafood Co., Ltd.*
   No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017).........................12
*Ricchio v. Bijal*
   386 F. Supp. 3d 126 (D. Mass. 2019) .......................................................................................9
*Salazar v. McDonald's Corp.*
   939 F.3d 1051 (9th Cir. 2019) ...............................................................................................15
*Salazar v. McDonald's Corp.*
   944 F.3d 1024 (9th Cir. 2019) .........................................................................................15, 16

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

*Sec. and Exch. Comm'n v. Sands*
   902 F. Supp. 1149 (C.D. Cal. 1995) ...................................................................22
*Shwarz v. United States*
   234 F.3d 428 (9th Cir. 2000) ..............................................................................3
*Sinatra v. National Enquirer, Inc.*
   854 F.2d 1191 (9th Cir. 1988) ..........................................................................11
*Sloan v. General Motors, LLC*
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ..............................................................14
*Sloan v. General Motors, LLC*
   No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018)...................14
*Sollberger v. Wachovia Sec., LLC*
   No. SACV-09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal. Jun. 30, 2010)......................20
*Stewart v. Chick-Fil-A*
   No. 19-cv-1780, 2020 WL 264578 (S.D. Cal. Jan. 17, 2020) .............................17
*United States v. Afyare*
   632 F. App'x 272 (6th Cir. 2016) ........................................................................6
*United States v. Aldrich*
   566 F.3d 976 (11th Cir. 2009) .............................................................................5
*United States v. Ballinger*
   395 F.3d 1218 (11th Cir. 2005) ...........................................................................5
*Walker v. Pacific Pride Servs., Inc.*
   341 F. App'x 350 (9th Cir. 2009) .......................................................................15
*Weiland v. Palm City Beach Cty. Sheriff's Office*
   792 F.3d 1313 (11th Cir. 2015) .........................................................................20
*Whittlestone, Inc. v. Handi-Craft Co.*
   618 F.3d 970 (9th Cir. 2010) .............................................................................22
*Yamamoto v. Omiya*
   564 F.2d 1319 (9th Cir. 1977) ...........................................................................22

**State Statutes**
Cal. Civ. Code § 2295...........................................................................................13
Cal. Civ. Code § 2332...........................................................................................11
Cal. Penal Code § 236.1...................................................................................18, 19
California Trafficking Victims Protection Act
   Cal. Civ. Code § 52.5.......................................................................2, 18, 19, 23

**Federal Statutes**
18 U.S.C. § 1589.............................................................................................5, 8
18 U.S.C. § 1591.......................................................................................3, 4, 5, 6
18 U.S.C. § 1595.................................................................................... passim
Fed. R. Civ. Proc. 12(b)(6) ..........................................................................2, 16, 22
Fed. R. Civ. Proc. 12(f)..........................................................................10, 21, 22
National Labor Relations Act
   29 U.S.C. §§ 151-169 (1935)........................................................................17
Trafficking Victims Protection Reauthorization Act of 2008
   18 U.S.C. § 1591 *et seq.* .................................................................. passim
Trafficking Victims Protection Reauthorization Act of 2008
   Amended Pub. L. No. 110-457, § 221(2), 122 Stat. 5067. ........................................4

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

**Treatises**

2 Daniel R. Coquillette et al., Moore's Fed. Prac. § 12.37 (Bender 3d ed. 2018)............. 21

5 Charles A. Wright et al., Fed. Prac. & Proc. § 1380 (1969) ............................................ 22

5 Charles A. Wright et al., Fed. Prac. & Proc. § 1382 (1990)............................................. 21

5C Charles A. Wright et al., Fed. Prac. & Proc. § 1381 (3d. ed. 2014)............................... 20

5C Charles A. Wright et. al., Fed. Prac. & Proc. § 1380 (3d. ed. updated Apr. 2020).......... 3

**Regulations**

Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184 (Feb. 26, 2020) (to be codified at 29 C.F.R. pt. 103) ................................................................................18

**State Bills**

Bill Analysis of A.B. 22, 2005 Assemb. Comm. On Judiciary, Reg. Sess. (Cal. 2005)................19

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

# I.  INTRODUCTION AND STATEMENT OF RELEVANT FACTS

This case describes the experience of a young woman, J.C., who was trotted in and out of the Comfort Inn Santa Cruz (a Choice brand property) in sexual servitude for the financial benefit of others for *eleven years*.  First Amended Complaint ("FAC"), at ¶¶ 111-112.  Despite the obviousness of J.C.'s predicament, hotel workers watched—and took no action to intervene or notify authorities—as J.C was escorted by her trafficker, along with his stable of other trafficked women, to hotel rooms that he paid cash for.  *Id.* ¶¶ 109, 111-112, 118.  In those rooms, J.C. was forced to perform sex acts multiple times per day, for weeks at a time.  *Id.* ¶¶ 109-124. This was not legal prostitution; this was a girl being repeatedly raped, tortured, verbally abused, and forced to terminate two resulting pregnancies.  *Id.* ¶¶ 5, 7, 113.

J.C. and her trafficker routinely had direct contact with hotel staff.  J.C. repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and often displaying prominent bruising.  *Id.* ¶ 137.  Her traffickers always rented the room for a number of weeks, paying in smaller increments, and requesting an inordinate amount of towels.  *Id.* ¶ 119.  J.C.'s traffickers would often help check her in and then not proceed to the room.  *Id.* ¶ 131.  In addition, she was often the victim of loud altercations and seemingly was never allowed to be alone.  *Id.*  For weeks J.C. was held up in the room, unable to leave and visibly deteriorating.  *Id.* ¶ 119.  The hotel staff witnessed a steady stream of men, who were not registered guests, entering and exiting the hotel, but never questioned the unannounced guests or reported them to authorities.  *Id.* ¶¶ 120, 131. In August 2010, J.C. was able to escape her trafficker by running out of the room and hiding in the bushes.  *Id.*, ¶ 115.  After he drove off, J.C. asked the front desk to use the phone to contact her parents.  *Id.*  On another occasion, J.C. went to the security staff with a bloody lip and asked for help.  *Id.* ¶ 120.  No authorities were called.  It simply would have been impossible for hotel staff not to notice J.C.'s victimization.

Given the open and obvious danger J.C. was in, the employees knew, or at the very least, should have known, that she was being trafficked.  *Id* ¶ 128.  Choice had the opportunity to stop J.C.'s traffickers from victimizing J.C. and others like her, but instead failed to take reasonable measures to stop sex trafficking from occurring in their hotels.  *Id.* ¶¶ 61, 64-71, 143.  By failing to

act, and by failing to train the hotel's staff how to respond when someone is being trafficked, Choice became a participant in J.C.'s exploitation. *Id.* ¶¶ 134, 140. Particularly given the frequency and longevity of J.C.'s forced stays at the Choice's brand hotel central to this case, Choice benefitted financially from her exploitation through the rental of rooms where her trafficking occurred. *Id.* ¶¶ 125, 137, 146. To this day, Choice enjoys the steady stream of income that sex traffickers bring to its brand hotels, including the Comfort Inn Santa Cruz where J.C. was trafficked. *Id.* ¶ 146. Turning a blind eye has proven to be a very lucrative business.

Contrary to Choice's claim that the FAC is "incomprehensible," Motion, p. 10, Choice knew exactly what was going on in J.C.'s hotel rooms, it knows exactly what this lawsuit is about. Plaintiff's causes of action are sufficiently and plausibly pled, with gruesome accuracy of the facts supporting those causes of action, and with a thorough recitation of Choice's egregious conduct in the venture to exploit J.C. for the benefit of her trafficker and Choice.

The FAC thus adequately alleges that Choice knowingly benefitted from participation in a venture that it knew or should have known engaged in trafficking, which constitutes a valid, stand-alone claim for relief under Section 1595 of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1591 *et seq.*, and pursuant to the California Trafficking Victims Protection Act ("CTVPA"), Cal. Civ. Code § 52.5. Further, the existence of a "franchisor/ franchisee" agreement between Choice and Comfort Inn does not preclude the existence of a principal-agent or joint employer relationship between them, nor does it relinquish Choice from liability. Plaintiff's allegations that Choice retained extensive control over the day-to-day operations of Comfort Inn sufficiently and plausibly plead an agency relationship and consequent liability therefor. Any challenge to the facts establishing vicarious liability should be raised after discovery.

## II. <u>STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD</u>

### A. <u>Rule 12(b)(6) – Motion to Dismiss</u>

The Court must decide whether Plaintiff's FAC adequately states a claim for relief under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In

1  considering the motion, the Court must accept the factual allegations in the complaint as true, and

2  must construe the pleadings in the light most favorable to the non-moving party.  *See Shwarz v.*

3  *United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Determining whether a complaint states a

4  plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its

5  judicial experience and common sense."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

6  ### A.  Rule 12(f) – Motion to Strike

7  Motions to strike matter from a pleading should not be granted unless the allegations have

8  no possible relation to the controversy and the moving party is somehow prejudiced by the inclusion

9  of the material in the pleading.  5C CHARLES A. WRIGHT ET. AL., FED. PRAC. & PROC. § 1380 (3d. ed.

10  updated Apr. 2020).  Motions to strike are generally "disfavored."  *See Petrie v. Elec. Game Card,*

11  *Inc.* 761 F.3d 959, 965 (9th Cir. 2014).  More specifically, motions to strike "should not be granted

12  unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of

13  the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  When

14  ruling on a motion to strike, the court views the challenged pleadings in the light most favorable to

15  the pleader.  *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal.

16  2014).

17  ### III. ARGUMENT

18  ### A.  Plaintiff's Complaint Sufficiently And Plausibly Pleads A Claim Against Choice
19  ### Under 18 U.S.C. § 1595(a).[1]

20  The TVPRA does two things.  First, it criminalizes sex trafficking by force, fraud, or

21  coercion.  *See* 18 U.S.C. § 1591.[2,3]  Separately, since 2008, section 1595 of the TVPRA provides

22  victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking ***and*** against

23  the beneficiaries of sex trafficking.  18 U.S.C. § 1595(a).  To help eradicate the scourge of sex

24  trafficking, in 2008, Congress included in the scope of potential defendants "***whoever*** knowingly

25

---

26  [1]  Claims brought under the TVPRA are not subject to a heightened pleading standard.  *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 951 (N.D. Cal. 2019).

27  [2]  Plaintiff J.C. is a victim of sex trafficking in violation of section 1591(a).  FAC, ¶¶ 11,166.

28  [3]  One who benefits financially from a sex trafficking venture can also be held criminally liable under section 1591(a)(2).

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *Id*. (Trafficking Victims Protection Reauthorization Act of 2008, Amended Pub. L. No. 110–457, title II, § 221(2), 122 Stat. 5067 )[4] (emphasis supplied).  The 2008 amendment evinced a broad Congressional intent to impose liability on businesses, such as Choice, that facilitate and financially benefit from sex trafficking.

Civil liability under section 1595(a) can be brought as a "standalone" claim; a defendant can be found to have violated section 1595 (for benefitting from and participating in a venture where he knew of should have known that the venture was involved in sex trafficking) *without* having violated section 1591.  *See, e.g., M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849, 2019 WL 4929297, at *2 (S.D. Ohio Oct. 7, 2019).  It is important not to conflate the distinct elements set forth in the statute's criminal liability section, and its civil liability section.  Though the standard for ***beneficiary*** liability (under section 1595) differs from the standard for ***perpetrator*** liability (under section 1591), throughout its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), Choice merges the two, in an attempt to hold J.C. to a higher standard than the law requires.  A plain reading of the statute, and application of the rules of statutory construction, supports the claims brought against Choice.

Accepting J.C.'s factual allegations and construing the FAC in the light most favorable to her, the non-moving party, it is clear that Plaintiff has stated a cognizable legal claim for relief supported by sufficient facts.  This is especially so given the context of the hotel industry's (including Choice's) widespread recognition of the prevalence of sex trafficking in its brand hotels. FAC, ¶¶ 26-47, 51, 55, 58, 71-77, 80, 86, 89.

### i.   Choice Participated in a Venture.

Unlike a perpetrator claim, "participation" under section 1595 (providing civil liability for beneficiary claims) does not require ***actual knowledge*** of participation in the sex trafficking itself. *M.A.*, 2019 WL 4929297, at *8.  Additionally, "participation in a venture" under section 1595 ***does***

---

[4]  Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457 (Dec. 23, 2008), https://www.congress.gov/110/plaws/publ457/PLAW-110publ457.pdf.

1  ***not*** require performance of an overt act in furtherance of the trafficking to make a claim.  *See Gilbert*

2  *v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1137-38 (D. Colo. 2019) (holding that the

3  defendant's participation does not need to be an overt act in furtherance of the other members'

4  TVPA violation).

5       The plain language of section 1595 irrefutably demonstrates that the definition of

6  "participation in a venture" necessary to meet the elements of the criminal act contemplated in

7  section 1591(e)(4) cannot apply to the element of "participation in a venture" as used in section

8  1595(a).[5]  If the definition from section 1591 did apply, civil liability would be limited only against a

9  criminal perpetrator, which is already permissible and was specifically written into the statute prior

10  to the amendment, and most of section 1595(a)—everything in parentheses[6]—would be rendered

11  meaningless.  *See also United States v. Ballinger,* 395 F.3d 1218, 1236 (11th Cir. 2005) ("statutes

12  should be construed so that 'no clause, sentence, or word shall be superfluous, void, or

13  insignificant.'" (quoting *United States v. Aldrich*, 566 F.3d 976, 978–79 (11th Cir. 2009)).  The

14  words "should have known" in section 1595(a) were not included by Congress for no purpose.[7]

15       Courts have ruled that facts similar to those alleged by Plaintiff under a financial beneficiary

16  claim under section 1595 are sufficient to create a "venture" as alleged by Plaintiff.  *See M.A*., 2019

17  WL 4929297 at **6-7 ("The definition of 'venture' as defined in § 1591(e) purports to only apply to

18  "this section" *i.e.,* § 1591.").

19       By providing an explicit constructive knowledge standard, Congress determined the

20  definition of "participation in a venture" from section 1591(e)(6) did not apply to financial

21  beneficiary claims under section 1595.  The availability of both a financial beneficiary claim and a

22

---

23  [5]  An individual who is a victim of a violation of this chapter may bring a civil action against the

24  perpetrator (***or whoever knowingly benefits, financially or by receiving anything of value from***

***participation in a venture which that person knew or should have known has engaged in an act in***

25  ***violation of this chapter***) in an appropriate district court of the United States and may recover

damages and reasonable attorneys' fees.  Trafficking Victim Protection Reauthorization Act

26  (TVPRA), 18 U.S.C. § 1595(a) (emphasis added).

[6]  *Supra,* n.5.

27  [7]  *See M.A.*, 2019 WL 4929297, at *9 ("Defendants need not have actual knowledge of the sex

trafficking in order to have participated in the sex trafficking venture for civil liability under the

28  TVPRA, otherwise the "should have known" language in § 1595(a) would be meaningless.").

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

perpetrator financial beneficiary claim has created confusion as litigants have stretched for cites from the scant case law applying the neoteric statutory scheme.  However, the distinction between the knowledge requirement in either a perpetrator claim and the constructive knowledge requirement in a financial beneficiary claim is significant in this case.  ***In order to state a financial beneficiary claim, the Plaintiff does not have to show an overt act or that Choice participated in any sex trafficking act itself***.

In making the argument that Plaintiff did not allege sufficient facts that it participated in a sex trafficking venture or overtly act in furtherance of a sex trafficking venture, *see* Motion, pp. 13-14, Choice primarily relies on ***inapplicable*** cases asserting ***criminal liability*** under section 1591, such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) and *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).  Choice's authorities, *Afyare* and *Noble*, are inapposite because neither applied the correct standard of constructive knowledge.  Instead, *Afyare* considered the applicable standard for criminal trafficking by a perpetrator.  *Afyare,* 632 F. App'x at 275. Though *Noble* dealt with civil liability, there the plaintiff sought to hold Harvey Weinstein's brother, Robert, liable under section 1591 for his own "knowing" or "reckless" direct participation in Harvey Weinstein's sex trafficking, which is not the type of claim at issue here.  335 F. Supp. 3d at 523.[8]

Similarly, the decisions granting motions to dismiss in the series of cases from the Northern District of Georgia, each issued by the same judge, rely on this same misapplication of precedent interpreting section 1591, as explained thoroughly in *A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at **8-9 (E.D. Pa. Apr. 22, 2020).[9]

---

[8]  Assuming *arguendo* that the standard set forth in *Noble* is applicable here, Plaintiff has sufficiently alleged that Choice was ***not ignorant*** of the venture's sex trafficking activities.  *Noble, supra,* 335 F. Supp. 3d at 524 ("Plaintiff must allege specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture.  In other words, some participation in the sex trafficking act itself must be shown.  ([D]efendant's mere membership in the venture is insufficient *if he is ignorant* of the venture's sex trafficking activities.") (citations omitted) (emphasis added).

[9]  Motion, p. 16, citing to *Doe 1 v. Red Roof Inns, Inc.*, No. 19-3840, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ; *Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841-WMR, 2020 WL 1872337 (N.D. Ga. Apr. 13, 2020) ; *Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-3843-WMR, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ; and *Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-3845-WMR, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020).

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

Selectively citing to a hearing transcript from the Southern District of Texas, Choice suggests that the statute "does not contemplate that a corporation, such as Choice, is even capable of 'participating in a venture.'" Motion, p. 13. Despite Judge Atlas' ruminations during oral argument, the district court denied the motion to dismiss, and ordered the brand hotel to produce its franchisor/franchisee agreement. Transcript of Oral Argument at 69, *L.W. v. Hilton Holdings, Inc.*, No. 4:19-CV-4172 (S.D. Tex. Mar. 16, 2020), ECF No. 38.

Choice's participation in a venture is properly alleged as follows: Choice had actual and/or constructive knowledge of the trafficking occurring in almost epidemic fashion throughout its 7,000 hotel properties, including the Comfort Inn where Plaintiff was trafficked;[10] despite such knowledge, Choice failed to mandate training or implement anti-trafficking policies on its branded properties which would have prevented Plaintiff's trafficking;[11] and as a result, Choice facilitated the sex trafficking of J.C. through constant room rentals to her trafficker.[12]

### ii. Choice Knowingly Benefitted.

J.C. plausibly alleges that Choice knowingly benefitted from the venture that trafficked her. FAC, ¶¶ 12, 93, 125, 128, 131, 137, 146, 149, 152, 163. "Choice receive[s] a percentage of the gross room revenue from the money generated by the operations of all Comfort Inn hotels, including a percentage of the rate charged [] for the rooms in which J.C. was trafficked." *Id.* ¶ 12(e). "[T]he Comfort Inn Santa Cruz pays around 10% of their total revenue back to Choice …" *Id.* ¶ 93. Plaintiff also alleges that Choice directly benefitted from the trafficking of herself on each occasion it received payment for rooms that she was kept in at the Comfort Inn Santa Cruz. *Id.* ¶ 163. These

---

[10] *See* FAC, ¶¶ 26-47, 51, 55, 58, 71-77, 80, 86, 89 (Choice has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking that occurs on its branded properties for years. Such knowledge facilitated the sex trafficking of Plaintiff at the Comfort Inn Santa Cruz); ¶¶ 109-124 (Plaintiff displayed several red flags that should have drew the attention of hotel staff in which she encountered on a regular basis during the time she was trafficked for sex at Choice's).

[11] *See* FAC, ¶¶ 51, 105, 106(b), 106(d), 143, 155(Choice failed to take the necessary action to prevent sex trafficking); ¶¶ 89, 106(b) (Choice failed to implement and enforce any of its own policy or policies to protect Plaintiff J.C. from being sex trafficked); *see also* ¶ 106(h) (Choice assumed the duty to direct its branded hotels to implement anti-trafficking policies and procedures and failed to do so).

[12] *See* FAC, ¶¶ 115, 118, 120, 131, 137 (Choice continued to lease rooms to J.C.'s trafficker even after knowledge that J.C. was being held under duress).

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1   are not conclusory allegations of a monetary benefit received by Choice through ordinary room

2   rentals.  They are specific to J.C.'s obvious sex trafficking, and demonstrate a ***direct financial***

3   ***connection*** from each incidence of abuse she suffered—multiple times per day for weeks at a time

4   over an eleven-year period—to Choice's profit.  Plaintiff further alleges that Choice has deliberately

5   maintained its sex trafficking detection deficiencies to maximize profits by failing to allocate

6   expenditures for proper ongoing of training of all employees (not just managers) on signs of sex

7   trafficking, renting rooms where sex trafficking occurs, and in failing to take proper security

8   measures to combat sex trafficking.  *Id.* ¶¶ 100, 137, 146.

9        Choice argues that the "simple receipt of contractually contemplated royalty payments"

10   cannot demonstrate that Choice was aware that the funds were in any way connected to the "alleged

11   act," since Choice, would have received a benefit for "any use of any room for any purpose."

12   Motion, p. 18.  Putting aside the callousness of this argument, there are three problems with it.

13   First, all inferences must be drawn in favor of the non-moving party, not Choice, and Plaintiff has

14   provided ample evidence that Choice ***was*** on notice that of J.C.'s predicament.  *Id.* ¶¶ 115, 120,

15   131, 137.  Second, as explained previously, section 1595(a) does not impose a requirement of

16   actual knowledge of the sex trafficking.  *See Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-

17   1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020).  Instead, "the first element merely

18   requires that Defendant knowingly receives a financial benefit, not that the perpetrator have actual

19   knowledge of the sex trafficking venture."  *Id.*  "[T]he rental of a room constitutes a financial

20   benefit from a relationship with the trafficker sufficient to meet this element."  *Id., quoting M.A.*,

21   2019 WL 4929297, at *3; *see also A.B.,* 2020 WL 1939678, at *15 (same); *Gilbert*, 423 F. Supp. 3d

22   at 1138 (finding the forced labor provision of section 1589(b) does not "require[] the party to

23   benefit from the [forced] labor or services for liability to attach.").  Finally, section 1595 does not

24   require that that the benefit be received "on account of" the sex trafficking itself, but only that

25   Choice knowingly benefit financially or receive anything of value.  *See H.H*. v. G6 Hosp., LLC,

26   No. 2:19-CV-755, 2019 WL 6682152, at *4 (S.D. Ohio Dec. 6, 2019); *see also Ricchio v. Bijal*,

27   386 F. Supp. 3d 126, 131 (D. Mass. 2019) (where the defendants had a financial stake in the

28   success of the motel, the court found that even the rental of a room for a short period could

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1    constitute a "benefit" within the meaning of the TVPRA).

2         In support of its argument that constructive knowledge is not sufficient, Choice *again* asks

3    this Court to rely on a misleadingly incomplete transcription of "a bunch of questions" by the

4    district judge in lieu of "writing a whole long opinion."  Transcript of Oral Argument, *L.W.*, No.

5    4:19-CV-4172 (S.D. Tex. Mar. 16, 2020), ECF No. 38.  The text omitted between the two

6    paragraphs cited by Choice provides:

7             MS. GREENBERG: Right. But when reading into what does it mean to
8             knowingly benefit and to participate in a trafficking venture, if that
              requires that we have to show that Hilton knew about the sex trafficking
9             venture, that's the criminal burden; that if we have to show that they
              knowingly benefited means that they knew about the sex trafficking
10            venture, that's the criminal state or the actual knowledge, and we just
              have to show that they knowingly benefited from something they knew
11            or should have known was a trafficking venture.

12            THE COURT: Right. And I guess -- I'm not sure if there's a distinction
13            without a difference, because *if you can get to "should have known"*
              and I'm eventually persuaded that not the cleaning people, but the hotel,
14            for instance, or maybe the management company *should have known*
              *about the venture and the renting rooms was a participation in the*
15            *venture, then  you may survive a Motion to Dismiss* if all I require is
              that they knew they were getting a benefit, actual knowledge they got a
16            benefit where the participation was a "should have known" standard.

17

18   *Id.* p. 28, Motion, p. 16-17 (emphasis added).

19                    iii.  <u>**Choice Knew Or Should Have Known That The Venture Was**</u>
20                          <u>**Engaged In Sex Trafficking.**</u>

21        Choice argues that Plaintiff has failed to allege that it knew or should have known that

22   Plaintiff was either a minor or that she was being held by "force, fraud, or coercion" because

23   Plaintiff failed to allege that any Choice employee ever dealt with Plaintiff personally.  Motion, p.

24   19.  This is not the rule for a claim brought under the TVPRA.

25        Plaintiff has plausibly alleged that Choice knew or should have known of the venture with

26   her trafficker engaging in the trafficking of J.C. over an eleven-year period.  For this prong, J.C. only

27   needs to prove that the Choice "should have known" about the nature of the venture, and this factor

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1    is akin to a negligence standard.  *See M.A.,* 2019 WL 4929297, at *6.  Evidence of actual knowledge

2    or conspiracy is not required.  *Id.*

3        Indeed, the failure to implement policies sufficient to combat a known problem in one's

4    operation can rise to the level of willful blindness or negligence.  *See M.A.*, 2019 WL 4929297, at

5    **4-6, citing *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) (finding that the

6    complaint provided sufficient allegations under section 1983, based on willful blindness, where

7    defendants knew that a supervisor at a correctional facility raped an employee, sexual harassment at

8    the facility was not an isolated incident, and defendants failed to implement and effectuate the

9    appropriate policies to remedy and/or prevent the discriminatory conduct, sexual harassment, and

10    rape).  J.C. has alleged that Choice was on notice of the prevalence of sex trafficking generally at its

11    hotels—and specifically of her trafficking at the Comfort Inn Santa Cruz—yet failed to take

12    adequate steps to train the hotel staff, or institute appropriate security measures to prevent or thwart

13    its occurrence.  FAC, ¶ 106(e),(h).[13]  In the FAC, J.C. highlights readily-available media coverage

14    found through a simple online search regarding the prevalence of sex trafficking and role Choice,

15    and other hotel chains, plays in sex trafficking.  *Id*. ¶¶ 47, 51, 55, 59, 72-77, 80, 86, 89.[14]

16        Plaintiff's complaint also includes a sufficient number of signs she alleges would have

17    alerted Choice (if it was a diligent hotel brand) to her plight, including two instances in which J.C.

18    asked the Comfort Inn Santa Cruz hotel staff for help.  *Id.* ¶¶ 109-124, 131, 137.  As such, Plaintiff

19    has plausibly alleged facts sufficient to demonstrate Choice  knew, or at a minimum, that Choice

20

21

22

---

23    [13] Quality Inn, like Comfort Inn, is a Choice brand hotel.  Due to a clerical error, paragraph 106 of
24    Plaintiff's FAC references the "Quality Inn" rather than the "Comfort Inn."  As alleged in all other
     paragraphs of the FAC, and as Defendant is well aware, J.C.'s complaint arises out of acts which
25    occurred at the Comfort Inn Santa Cruz.  In the event that the Court intends to grant Choice's
     Motion on this basis, Plaintiff respectfully requests that it grant her leave to file a Second Amended
26    Complaint to correct this clerical error.
     [14] As explained in Section E, *infra*, contrary to Choice's assertion that that these claims are
27    impertinent and subject to strike under Rule 12(f), these allegations help illustrate Choice's
     inattention to the prevalence of sex trafficking and support Plaintiff's allegations specific to her own
28    sex trafficking.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1   ***should have known***, that the venture was engaged in sex trafficking of J.C. at the Comfort Inn Santa

2   Cruz over an eleven-year period.[15]

3          Choice cites to hearing transcripts from cases in front of Judge Ray in the Northern District

4   of Georgia and Judge Nancy Atlas in the Southern District of Texas.  Motion, p. 19-20.  However,

5   the level of factual detail in the FAC, and the significant, ***eleven-year time*** span over which J.C. was

6   trafficked at the Comfort Inn Santa Cruz makes Plaintiff's allegations distinct from the conclusory

7   nature of the allegations in either case.  In *Doe 1*, for example, the district court in Georgia found

8   that the plaintiff's allegations "that customers complained about prostitution existing on properties

9   '***itself***'" was insufficient to meet a known or should have known standard."  *Doe 1*, 2020 WL

10  1872335 at *3.[16]  In *L.W.*, the district court in Texas found that evidence of a single prior incident at

11  a franchise hotel in China likely would not constitute notice to Hilton of "a pervasive sex trafficking

12  problem at all its brand hotels."  *Id.* at pp. 6-7.  While the complaint in *L.W.* included allegations of

13  incidents and statements made ***after*** at the time of the two-month time period which could be

14  sufficient to demonstrate notice, the court's "focus" was "on what Hilton knew or didn't know

15  [during the relevant time period]."  *Id.* at p. 9.  Here, Plaintiff alleged that she was trafficked at the

16  Comfort Inn Santa Cruz from at least 2008 through 2019.  FAC, ¶¶ 35, 109-124.  The FAC includes

17  allegations of ***thirteen separate incidents*** of sex trafficking at Choice brand's franchisees

18  ***throughout*** the United States from January 2015 through 2019, including two in California.[17]  *Id.* ¶

19  106(i).  In addition, the FAC includes allegations that Choice received media reports and/or notice

20  from law enforcement agencies that sex trafficking occurred at a least one of its brand hotels from

21  2008-2019, and references articles, campaigns, and other publicly available information available as

22  early as 2010.  *Id.* ¶¶ 28-29, 45, 51, 55, 58, 75-77, 79.  Further, the FAC includes allegations that

23  Choice's management and executives discussed the prevalence of sex trafficking at meetings, and

24

---

25  [15] While Choice may argue that these signs were observable only to Comfort Inn Santa Cruz
    employees, knowledge of an agent within the scope of its authority is imputed to the principal.  *See*
26  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988); Cal. Civ. Code § 2332 ("both
    principal and agent are deemed to have notice of whatever either have notice of").
27  [16]  Further, the motion to dismiss in *Doe 1* was granted with leave to amend.
    [17] Other incidents occurred in Kentucky, Michigan, Alabama, Pennsylvania, Massachusetts, Florida,
28  and Virginia, South Carolina, Tennessee.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

through email communications and phone conferences.  *Id.* ¶¶ 29, 30, 77, 80.  The strength and detail of J.C.'s allegations distinguishes the FAC from both *Doe 1* and *L.W.*

*Ratha v. Phatthana Seafood Co., Ltd.,* No. CV 16-4271-JFW (ASX), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017), the other case cited by Choice, *see* Motion, p. 20, is also distinguishable because the court (1) heard the case at the motion for summary judgment phase; and (2) the evidence failed to demonstrate any benefit required under the three-prong elements of Section 1595 of the TVPRA.  Specifically, the defendants "returned products from plants where exploitation was alleged," never benefitted otherwise from the initial receipt of the product, and the defendants had specifically implemented processes in an effort to avoid purchasing from buyers potentially involved in trafficking.  *Id.* at \*\*5-6.  Here, Choice failed to take any measures or follow any guidelines meant to protect Plaintiff and, in fact, rebuke any responsibility whatsoever.

## B.  Plaintiff's Complaint Sufficiently And Plausibly Pleads Choice Is Vicariously Liable.

Plaintiff contends that Choice is the joint employer, alter ego, or otherwise in an apparent agency relationship with each of their branded Defendant hotel properties in which Plaintiff was trafficked for sex.  Here, the parties have yet to engage in any substantive discovery related to Defendant brand manager's control over the day-to-day operations of their respective branded property.  Similarly, the parties have conducted no discovery on whether Choice exercised control over employees at Comfort Inn such that it is a "joint employer" for purposes of liability.  Therefore, Choice's "franchisor / franchisee" arguments are premature and should be denied.

Contrary to Choice's suggestion, the FAC includes numerous specific allegations regarding the amount of control Choice exercised over Comfort Inn and its employees, including that:

- That an actual and/or apparent agency exists between Choice and the Comfort Inn because (1) Choice and the Comfort Inn intended to and agreed to form an express agency relationship via a franchise agreement; (2) Choice holds out the Comfort Inn as possessing authority to act on its behalf to the general public.  FAC, ¶¶ 12, 90-94, 106(f)-(g).

- That Choice (1) *controls the training and policies for its hotels*, including the Comfort Inn where J.C. was trafficked, (2) that Choice *requires* the hotels in its *portfolio to comply with Choice brand standards and all local, state, and federal laws*; (3) that Choice *receives approximately ten percent of gross room revenue*; (4) that Choice

owns, supervisors, and/or operates the Comfort Inn where J.C. was trafficked.  *Id.* ¶¶ 12(b), (c), (f), 64, 93.

- That Choice reserved and exercised ongoing and systemic rights of control over the day-to-day operations of Comfort Inn hotels, including: (1) hosting online bookings on Defendant Choice's domain; (2) requiring Comfort Inn branded hotels to use Choice's customer rewards program; (3) ***setting employee wages***; (4) ***making employment decisions***; (5) ***advertising for employment***; (6) ***sharing profits***; (7) ***requiring standardized training methods for employees***; (8) building and maintaining the facility in a manner specified by the owners; (10) ***standardized or strict rules of operation***; (11) ***fixing prices***; and/or (12) other actions that deprive Comfort Inn of independence in business operations.  *Id.* ¶¶ 12(b), (f), 21, 90, 92, 99, 106(f).

- That Choice had the right to enforce its control through periodic inspections and ***even termination of the franchise agreement*** if the operating hotel is found to be inadequate.  *Id.* ¶ 94, 98, 100.

- That Choice retained the control necessary to: (1) ***distribute information*** to employees to assist in identifying signs of sex trafficking; (2) ***provide a process*** for escalating sex trafficking concerns within the organization;(3) ***require all employees to attend training related to sex trafficking***; (4) provide ***new hire orientation on human rights*** and corporate responsibility; (5) ***provide training and education*** to Comfort Inn hotels through ***webinars, seminars, conferences, and online portals***; (6) develop and ***hold ongoing training sessions*** on human trafficking; or (7) ***provide checklists, escalation protocols, and information*** to property management staff, or track performance indicators and key metrics on sex trafficking information.  *Id.* ¶¶ 106(e).  Yet despite their public statements, and in contradiction of their stated policies, did nothing to exercise this control.  *Id.* ¶¶ 12(b), 64, 90, 99, 106(e), (h).

### i.   <u>Plaintiff Has Sufficiently Alleged Agency And Vicarious Liability.</u>

Under California law, "[a]n agent is one who represents another ... in dealings with third persons."  Cal. Civ. Code § 2295.  The hallmark of an agency relationship is that one person agrees to act on behalf of another and is ***subject to his control***.  *See In re Coupon Clearing Serv., Inc.,* 113 F.3d 1091, 1099 (9th Cir. 1997) (applying California law).  "The law is clear that a franchisee may be deemed to be the agent of the franchisor."  *Kuchta v. Allied Builders Corp.,* 21 Cal. App. 3d 541, 547 (1971) (citations omitted).

> The general rule is where a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists.  It is the right to control ***the means and manner*** in which the result is achieved that is significant in determining whether a principal-agent relationship exists.

*Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992) (citations and quotations omitted)

(emphasis added).  The test of an agency relationship is the principal's ***right*** to control the activities

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1   of the agent.  "It is not essential that the right of control be exercised or that there be actual

2   supervision of the work of the agent."  *Id.* 4 Cal. App. 4th at 1288 (citing *McCollum v. Friendly Hills*

3   *Travel Ctr.*, 172 Cal. App. 3d 83, 91 (1985)).  Whether a right of control exists may be measured by

4   asking "whether or not, if instructions they were given, they would have to be obeyed."  *Toyota*

5   *Motor Sales U.S.A., Inc. v. Super. Court*, 220 Cal. App. 3d 864, 875 (1990) (reversing trial court's

6   determination that the delivery driver was an independent contractor).

7            The question of whether the franchisee is an agent is ordinarily one of fact, and can be

8   determined as a matter of law "[o]nly when the essential facts are not in conflict."  *Cislaw, supra,* 4

9   Cal. App. 4th at 1288 (citations omitted).  Allegations against a principal may survive a motion to

10   dismiss where "the complaint includes allegations from which an agency relationship may plausibly

11   be inferred."  *Sloan v. Gen. Motors, LLC,* 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018), *order*

12   *clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018).

13            The allegations in the FAC plausibly support an agency theory of liability between Choice

14   and the Comfort Inn.  *See M.A.*, 2019 WL 4929297, at *9 (district court found that allegations that

15   national brand controlled individuals hotels through employee training, standardized rules of

16   operation, pricing, hosting online platforms for booking, setting employee pay, regular inspections,

17   and requiring local hotels to participate in the national brand's rewards program were sufficient to

18   plead that the individual hotels were agents of the national brands); *H.H.*, 2019 WL 6682152, at *6

19   (holding that allegations of profit-sharing, standardized rules of operation, and inspections were

20   sufficient to show an agency relationship between brand companies, such as Wyndham, and

21   individual hotel locations); *A.B.*, 2020 WL 1939678, at *19 (holding that allegations of "ongoing and

22   systemic right of control" including sharing profits, standardized training methods for employees,

23   building and maintaining the facility, regular inspections, and fixing prices sufficiently plead an

24   agency relationship).  Any factual dispute regarding the level of control Choice exerts over its agent

25   can only be determined through discovery on the merits, not at the pleadings stage.[18]

26   _____

27   [18]  As further evidence of prematurity, Choice relies on cases at the motion for summary judgment
    phase.  *See e.g.*, *Henderson v. United Student Aid Funds, Inc*., 918 F.3d 1068, 1073 (9th Cir. 2019);
28   *Walker v. Pacific Pride Servs., Inc*., 341 F. App'x 350, 350-51 (9th Cir. 2009); *Patterson v.*
    *Domino's Pizza, LLC,* 60 Cal. 4th 474 (2014).

*Patterson,* relied on by Choice, does not change this result.  Motion, p. 21.  In *Patterson,* the court concluded that "the imposition and enforcement of a uniform marketing and operational plan cannot ***automatically*** saddle the franchisor with the responsibility for the employees of the franchisee."  *Patterson,* 60 Cal. 4th at 477 (emphasis in original).  Instead, the franchisor must "exhibit the traditional characteristics of an 'employer' or 'principal; 'i.e., it has retained or assumed a general right of control a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employee."  *Id.*  Nothing in *Patterson* limited the liability of a franchisor which, like Choice, has "***retained or assumed*** the right of general control over the relevant day-to-day operations at its franchised locations."  *Id.* at 503 (emphasis added).[19]  Moreover, *Patterson* is distinguishable on its facts.  In *Patterson,* the franchisor had no authority to intervene to address the harm alleged (sexual harassment).  *Id.* at 479 ("The uncontradicted evidence showed that the franchisee imposed discipline consistent with his own personnel policies, declined to follow the ad hoc advice of the franchisor's representative, and neither expected nor sustained any sanction for doing so.").  Here, Plaintiff has alleged that Choice "could and should" have developed a policy or training program to help prevent and/or report sex trafficking at the Comfort Inn, but simply failed to do so.  FAC, ¶¶ 12(b), 64, 90, 99, 106(e), (h).

Similarly, *Salazar v. McDonald's Corp.*, 939 F.3d 1051, 1056 (9th Cir. 2019), *am. and superseded on den'l of reh'g en banc.*, 944 F.3d 1024 (9th Cir. 2019), cited by Choice, does not support that "franchisors are generally not liable for the acts of their franchisees."  Motion, p. 8.  As a preliminary matter, in *Salazar,* the court did not consider whether the franchisor and franchisee where principal and agent, and instead considered only whether a franchisor could be considered a ***joint employer*** under the definition provided in a California Wage Order.  *Salazar,* 944 F.3d at 1032-1033 ("By its plain terms, the reference to an "agent" applies only to an entity that actually employs the worker or that actually exercises control over the wages, hours or working conditions of the

---

[19]  *Patterson* considered the very narrow question of whether "a franchisor stand[s] in an employment or agency relationship with its franchisee and its employees for purposes of holding it vicariously liable for workplace injuries allegedly inflicted by one employee of a franchisee while supervising another employee of the franchisee."  *Patterson,* 60 Cal. 4th at 477.

Case No. 3:20-cv-00155-WHO

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

worker.").  Moreover, *Salazar,* decided on summary judgment, is distinguishable as there were no

facts demonstrating that the franchisor controlled the relevant day-to-day operations such that it

**could not have caused or prevented** the alleged violations.  *Id.* at 1027.[20]

### ii.  Plaintiff Has Sufficiently Alleged that Choice is a Joint Employer.

On a motion to dismiss pursuant to Rule 12(b)(6), the court must limit its review to the

operative complaint, and may not consider facts presented in briefs or extrinsic evidence.  *See Lee v.

City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  But as with Choice's arguments regarding

"franchisor / franchisee" liability, Choice's arguments challenging the Plaintiff's allegations

regarding joint employer status in relation to each of their brand hotels requires factual development

to overcome and which has not yet occurred.  In addition to lacking merit, Choice's argument is

premature at the motion to dismiss stage.  Similar to the agency relationship inquiry, whether two

employers are joint employers often turns on how much control one exercised over the other.  See

*e.g. Salazar,* 944 F.3d at 1024.  At the motion to dismiss stage, a plaintiff need only allege facts

showing a joint employer relationship.  *Andrade v. Arbys Restaurant Group, Inc.*, No. 15-cv-03175

NC, 2015 WL 6689475, at *4 (N.D. Cal. Nov. 3, 2015).  In order to establish a joint employer

relationship:

> [T]the Complaint must allege facts satisfying the following elements: 1)
> The nature and degree of control each employer had over the others'
> employees; (2) day-to-day supervision and discipline over each other's
> employees; (3) authority to hire and fire the employee and to set
> employment conditions; and (4) control over employment records and
> over methods and amounts of payment of the other's employees.

*Stewart v. Chick-Fil-A,* No. 19-cv-1780, 2020 WL 264578, at *2 (S.D. Cal. Jan. 17, 2020) (internal

citation omitted).  "Significantly, what matters under the common law is not how much control a

hirer **exercises,** but how much control the hirer retains the **right** to exercise."  *Ayala v. Antelope*

*Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014) (collecting cases) (emphasis in original);

---

[20]  Choice also compares finding a franchisor vicariously liable for profiting from years of failing to
address well known industry-wide issues with sex-trafficking to a hypothetical regarding soccer
players turning a blind eye to the source of their financial sponsorship dicta in *Ayfare*.  Motion, p.
22.  Even if these situations were in any way analogous, as discussed in Section A.i, *supra*, *Ayfare*,
632 F. App'x 272, is a criminal case dealing exclusively with section 1591, and is not applicable to
the present situation.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

*Browning-Ferris Indus. of Cal., Inc. v. Nat'l Labor Rel. Bd.*, 911 F.3d 1195, 1213 (D.C. Cir. 2018). In addition to direct control, indirect control is relevant to determining employer status. *Browning-Ferris,* 911 F.3d at 1217.  As discussed above, the FAC has alleged that Choice was a joint employer that reserved and exercised ongoing and systemic rights of control over the day-to-day operations of Comfort Inn hotels, including setting employee wages, making employment decisions, and requiring standardized training methods for employees. FAC, ¶¶ *Id.* ¶¶ 12(b), (f), 21, 64, 90, 99, 106(f).  This is sufficient at the pleading stage.[21]

Choice asks this Court to take judicial notice of the National Labor Relation Board ("NLRB")'s recently-adopted rules, and asserts that the rules are instructive as to the standards regarding joint employers.  Motion, p. 8, 23.  However, these rules are irrelevant to this litigation and any consideration is inappropriate, especially at this stage of the litigation.  First, Plaintiff's claims do not arise under the National Labor Relations Act ("NLRA"), and Defendant has presented no authority (or even reasoning) why the MLRB's definition of the term "joint employer" (which is not even defined under the NLRA) would be controlling here.

To the extent that the NLRB's new Rule attempts to limit the common law by "specifying that evidence of indirect and contractually reserved but never exercised control" is probative "only to the extent that it supplements and reinforces evidence of direct and immediate control," and "mak[ing] clear that joint-employer status cannot be based solely on" such control, the new Rule is ineffective as NLRA's test for joint-employer status is determined by the common law of agency, not the reverse. *Browning-Ferris,* 911 F.3d at 1206-1207 (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 103 (2011).)  "Congress delegated to the Board the authority to make tough calls on matters concerning labor relations, but not the power to recast traditional common-law principles of agency in identifying covered employees and employers." *Id.* (citations omitted).  Moreover,

---

[21]  Choice argues that *Stewart* supports dismissal in this case, however the cases are distinguishable. 2020 WL 264578, at *3 (S.D. Cal. Jan. 17, 2020), Motion, p. 24.  There, the complaint included only conclusory allegations that Chick-fil-A was a joint employer, and did not include "any specific allegations" as to how the franchisor exercised control of the details of employment. *Id*. at 2.  Here, Plaintiff has alleged that the franchisor exercised control over employee wages, employment decisions, and training.  FAC, ¶¶ 12, 21, 64, 99, 106(f).  Moreover, the franchisor's motion to dismiss in *Stewart* was granted **with leave to amend**. *Id.* at 3.

1    because the terms "employee," "employer," and "agent" incorporate common law principles, the

2    agency's rules and determinations are not subject to deference under *Chevron U.S.A., Inc. v. Natural*

3    *Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  *Id.* at 1207-1208.[22]

4

           **C.**  **Plaintiff's Complaint Sufficiently And Plausibly Pleads A State Law Claim Under California Civil Code Section 52.5.**

5

6          Choice attempts to insert an additional "intent" element into the CTVPA where none exists.

7    Motion, pp. 24-25.  The CTVPA states, simply: "[a] victim of human trafficking, as defined in

8    Section 236.1 of the Penal Code, may bring a civil action."  Cal. Civ. Code 52.5(a).  Although it is

9    correct that the statute requires that ***the plaintiff*** fit the definition of a "victim" in Section 236.1 of

10    the Penal Code, the statute says nothing about the nature of potential ***defendants***, and does not

11    incorporate the *mens rea* element of the criminal statute into the Civil Code.

12          Choice argues that Plaintiff's allegations are insufficient because Plaintiff "has made no

13    attempt to distinguish her claims" from those made under the CTVPA.  Motion, p. 25.   However, as

14    Judge Koh of the Northern District of California noted recently, the TVPRA and CTVPA are co-

15    extensive.  *See Lesnik*, 374 F. Supp. 3d at 954 (the CTVPA "mirror[s] the TVPRA").  For all the

16    reasons articulated above, just as J.C. has stated a plausible claim for violations of the TVPRA, so

17    too has she stated a claim for the CTVPA.  Reading the CTVPA consistently with the TVPRA—

18    including the lower standard of proof for beneficiary claims—is consistent with the legislative

19    history of the CTVPA, wherein the bill's author explained that "civil recourse" is necessary to

20    address "the heinous acts perpetrated against" trafficking victims, particularly in cases where

21    criminal prosecution does not occur due to "the difficulty of meeting the higher burden of proof in a

22    criminal case."  Bill Analysis of Assembly Bill 22, 2005 Assembly Committee on Judiciary, Regular

23    Session (Cal. Apr. 28, 2005).[23]  Where two claims are similar in both their elements and facts, the

24

25    [22]  The persuasive value of this ruling is only further limited by the fact that the new Rule did not
come into effect until April 27, 2020, and has not yet been subject to congressional or judicial

26    review.  Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184 (Feb.
26, 2020) (to be codified at 29 C.F.R. pt. 103).

27    [23]  Bill Analysis of A.B. 22, 2005 Assemb. Comm. On Judiciary, Reg. Sess. (Cal. Apr. 28, 2005),
www.leginfo.ca.gov/pub/05-06/bill/asm/ab_0001-

28    0050/ab_22_cfa_20050428_095213_asm_comm.html.

1   facts need not be separated by cause of action.  *Livewirecyber, Inc.*, *v. Lee.*, No. 17-00645-AB(ASx),

2   2017 WL 4786087, at *4 (C.D. Cal. Aug. 3, 2017).

3          Choice next argues that "Plaintiff does not allege which of the many sections of Section 52.5

4   and [Penal Code] Section 236.1 are applicable in this case.  It is, therefore, impossible for Choice to

5   defend against Plaintiff's claim."  Motion, p. 25.  This argument is without merit.  Section 52.5

6   provides only for a single cause of action under section(a); sections (b) – (h) provide the damages

7   and remedies available, statute of limitations and tolling thereof, credit for restitution, and for a stay

8   of proceedings during a criminal action.

9          Choice's citation to *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D.

10  Cal. 2016), does not change this result.  The quoted portion of *Lofthus* is no more than the court's

11  recitation of Section 236.1 of the Penal Code, which as explained above relates only to determining

12  standing of the ***victim.***  *Lofthus* included no discussion whatsoever of the level of intent required by a

13  defendant to impose liability and involved a complaint filled with "disjointed factual allegations" by

14  a *pro per* plaintiff against two hospitals for acts authorized by the Orange County Family Court.  *Id.*

15  at 911.

16         **D.  Plaintiff's Amended Complaint Relies On Case-Specific Facts**
17             **And Is Not An Impermissible "Shotgun" Pleading.**

18         It is true that this case is one of several like it around the country seeking to hold hotel chains

19  accountable for rampant violations of the TVPRA.  That fact does not render this case an

20  impermissible "shotgun" pleading, however.  Here, the FAC contains detailed allegations that are

21  specific to J.C. and the sex trafficking of J.C. at the Comfort Inn Santa Cruz.  It also contains

22  allegations specific to Choice's corporate practices and the agency relationship created by the degree

23  of control Choice has over its brand properties.  "This is far from a cookie-cutter complaint."

24  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004).

25         Choice cites extensively to the Eleventh Circuit's decision in *Weiland v. Palm City Beach*

26  *Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).  But even if *Weiland* was binding on

27  this Court, it does not stand for the proposition that Choice claims.  While *Weiland* cited some cases

28  dismissing collective allegations, it also cited a case where collective allegations against defendants

1   were allowed to move forward: "***The fact that defendants are accused collectively does not render***

2   ***the complaint deficient. The complaint can be fairly read to aver that all defendants are***

3   ***responsible for the alleged conduct.***"  *Weiland,* 792 F.3d at 1323 n.14 (quoting *Kyle K. v. Chapman*,

4   208 F.3d 940, 944 (11th Cir. 2000)) (emphasis added).  Weiland reversed the district court's

5   dismissal, writing:

6       More importantly, this is not a situation where a failure to more precisely parcel out
7       and identify the facts relevant to each claim materially increased the burden of
        understanding the factual allegations underlying each count.  This may explain why the
8       defendants did not move for a more definite statement under Federal Rule of Civil
        Procedure 12(e) or otherwise assert that they were having difficulty knowing what they
9       were alleged to have done and why they were liable for doing it.

10  *Id.* at 1324.[24]

11             **E.  Choice's Motion to Strike Lacks Merit.**

12          Allegations "supplying background or historical material or other matter of an evidentiary

13  nature ***will not be stricken*** unless unduly prejudicial to the defendant."  *LeDuc,* 814 F. Supp. at 830.

14  Moreover, allegations which contribute to a full understanding of the complaint as a whole need not

15  be stricken.  *See id.*  A Rule 12(f) motion will not "be granted if there is a substantial question of fact

16  or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the

17  issue by drawing inferences from acts and statements that are not disputed."  *Complete Distrib.*

18  *Servs., Inc. v. All States Transp., LLC*, No. 3:13-CV-00800-SI, 2015 WL 1393281, at *3 (D. Or.

19  Mar. 25, 2015) (citing 5C CHARLES A. WRIGHT ET AL., FED. PRAC. & PROC. § 1381 (3d. ed. 2014)).

20

21

---

22  [24]  Defendant's string cites are similarly distinguishable.  Motion, p. 12.  *Nissen v. Lindquist*, No.
    C16-5093, 2017 WL 26843, at **1-2 (W.D. Wash. Jan. 3, 2017) is distinguishable because Plaintiff
23  has provided factual allegations to support each elements of each cause of action alleged; *Hughey v.*
    *Camacho*, No. 2:13–cv–2665–TLN–AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014) is
24  distinguishable because Plaintiff has specifically identified which factual allegations relate to each
    Defendant including Choice.  *J.M. v. Pleasant Ridge Union Sch. Dist.*, No. 2:16-00897 WBS CKD,
25  2017 WL 117965, at *2 (E.D. Cal. Jan. 10, 2017) is distinguishable because Choice knows precisely
    which actions plaintiff asserts it engaged in that support's each of Plaintiff's claims against it.
26  *Sollberger v. Wachovia Sec., LLC,* No. SACV-09-0766 AG (ANx), 2010 WL 2674456 (C.D. Cal.
    Jun. 30, 2010) is distinguishable because although some allegations in the FAC reference multiple
27  Defendants, Plaintiff has specifically identified sufficient factual allegations particular to each
    Defendant, including Choice.
28

1    Choice argues that the contextual and factual allegations contained within the FAC as to the

2    Defendants' roles within the sex trafficking industry should be stricken.  What Choice really seeks is

3    that the Court turn a blind eye to the material history and knowledge it had regarding sex trafficking

4    in hotels by arguing that the factual allegations are immaterial and redundant.

5    The factual allegations Choice  moves to strike are not redundant, immaterial,[25]

6    impertinent,[26] or scandalous.[27]  The allegations are material to establishing the elements of section

7    1595, mainly that Choice  knew or should have known that trafficking was occurring in its brand

8    hotels, and that by failing to mandate training to prevent trafficking, it facilitated and participated in

9    the trafficking venture and benefited therefrom.  The allegations provide support as to each specific

10   Defendant's constructive notice of the prevalence of sex trafficking on its properties to support the

11   Plaintiff's TVPRA claim.  *See M.A.*, 2019 WL 4929297, at **10-12 (the court relied on plaintiff's

12   citations to general and specific examples regarding sex trafficking at the defendants brand

13   properties, finding support for her allegations that the defendants were on notice about the

14   prevalence of sex trafficking at their hotels and failed to take adequate steps to train staff in order to

15   prevent its occurrence); *see also Harrison v. Lee*, No. 6:19-cv-00315-AA, 2019 WL 6528590, at *1

16   (D. Or. Dec. 4, 2019) (denying defendants' motions to strike, finding that the sections defendants

17   wished to strike provided context for plaintiff's claims of retaliation and discrimination).  The

18   factual allegations that Choice wishes to erase are material as to Plaintiff's financial beneficiary

19   claim against Choice.  Further, Choice has failed to prove it is prejudiced by the factual allegations.

20

21

22   [25] An "immaterial" matter is "that which has no essential or important relationship to the claim for
     relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)
23   (quoting 5 CHARLES A. WRIGHT ET AL., FED. PRAC. & PROC. § 1382, at 706-7 (1990)).
     [26] "Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in
24   question." *Id.*
     [27] A matter is "scandalous" if it "unnecessarily reflects on the moral character of an individual or
25   states anything in repulsive language that detracts from the dignity of the court." 2 DANIEL R.
26   COQUILLETTE ET AL., MOORE'S FED. PRAC. § 12.37[3] (Bender 3d ed. 2018).  "To strike material as
     scandalous, it must [1] obviously false and [2] unrelated to the subject matter of the action."
27   *Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585, 588 (W.D. Pa. 1971).  Here, the
     portions of the FAC that Choice wants to strike are not obviously false and unrelated to the subject
28   matter of this litigation.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

*See Sec. and Exch. Comm'n v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995) (showing of prejudice an important consideration on a motion to strike).

Choice's argument to strike the Complaint lacks merit and must be denied.  Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint. *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (citing 5 CHARLES A. WRIGHT ET AL., FED. PRAC. & PROC. § 1380, at 782 (1969)).  Unlike a motion to dismiss under Rule 12(b), a Rule 12(f) motion does not test the sufficiency of the complaint.  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (finding that if the court were to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss all or some of a pleading, it would create redundancies within the Federal Rules of Civil Procedure because Rule 12(b)(6) motions to dismiss already serve such a purpose).  Here, Choice asks the Court to create redundancies within the Federal Rules of Civil Procedure by alternatively asking the Court to strike the Plaintiff's Complaint under Rule 12(f).

## IV. <u>CONCLUSION</u>

Choice asks this Court to overlook the significant financial benefit it knowingly receives from room rentals and royalties of Choice branded hotels where sex trafficking is obviously occurring, including the Comfort Inn Santa Cruz.  Choice additionally asks this Court to interpret the "participation in a venture" and "knew or should have known" language of the TVPRA in a narrow and limiting fashion, when Congress clearly intended to encompass such conduct as a basis of liability.  Last, on the question of the existence of an agency relationship, Choice seeks to skip past the pleading stage to the summary stage.

For all the reasons explained herein, J.C. has adequately and plausibly pled a claim under the TVPRA and the CTVPA asserting that Choice is liable, both directly and indirectly, under the statutes.  Choice's Motion should be denied in full.

Dated: May 4, 2020                               Respectfully Submitted,

By: _____*/s/ Lori E. Andrus*_____

Lori E. Andrus, Bar No. 205816
lori@andrusanderson.com

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

Jennie Lee Anderson, Bar No. 203586
jennie@andrusanderson.com
Audrey Siegel, Bar No. 286771
audrey.siegel@andrusanderson.com
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile:  (415) 986-1474

Melinda Davis Nokes, Bar No. 167787
mnokes@weitzlux.com
**WEITZ & LUXENBERG, P.C.**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 247-0921
Facsimile: (310) 786-9927

*Attorneys for Plaintiff J.C., proceeding under pseudonym*

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**