Lori E. Andrus, Bar No. 205816
lori@andrusanderson.com
Jennie Lee Anderson, Bar No. 203586
jennie@andrusanderson.com
Audrey Siegel, Bar No. 286771
audrey.siegel@andrusanderson.com
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474

Melinda Davis Nokes, Bar No. 167787
mnokes@weitzlux.com
**WEITZ & LUXENBERG, P.C.**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 247-0921
Facsimile: (310) 786-9927

*Attorneys for Plaintiff J.C., proceeding under pseudonym*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| J.C., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHOICE HOTELS INTERNATIONAL, INC.; HILTON WORLDWIDE HOLDINGS, INC; MARRIOTT INTERNATIONAL, INC.<br><br>Defendants. | Case No.: 3:20-cv-00155-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT HILTON WORLDWIDE HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:   June 3, 2020<br>Time:  2:00 p.m.<br>Ctrm.:  2<br>Judge:  Hon. William H. Orrick<br><br>Action Filed:  January 7, 2020<br>Trial Date:     TBD |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND STATEMENT OF RELEVANT FACTS ........................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD ............. 3

III.  ARGUMENT ......................................................................................................................... 4

    A.   This Court has General Personal Jurisdiction over Hilton ........................................... 4

    B.   This Court has Specific Personal Jurisdiction over Hilton. ......................................... 7

    C.   Hilton is a Proper Defendant Because it is Directly Liable. ........................................ 9

    D.   Hilton is a Proper Defendant Because it is also Vicariously Liable ...……..………….10

    E.   Plaintiff's Complaint Sufficiently And Plausibly Pleads A Claim Against Hilton Under 18 U.S.C. § 1595(a). .................................................................**Error! Bookmark not defined.**

          i.    Hilton Participated in a Venture... ................................................................ 13
          ii.   Hilton Knew or Should Have Known that the Venture Was Engaged in Sex Trafficking ..................................................................................................... 15
          iii.  Hilton Knowingly Benefitted.......................................................................... 16

IV.   CONCLUSION..................................................................................................................... 188

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

1

## <u>TABLE OF AUTHORITIES</u>

2

**State Cases**

*Cislaw v. Southland Corp.*
3   4 Cal. App. 4th 1284 (1992) ...................................................................... 10

*Kuchta v. Allied Builders Corp.*
4   21 Cal. App. 3d 541 (1971) ........................................................................ 10

*Las Palmas Associates v. Las Palmas Center Associates,*
5   235 Cal.App.3d 1220, 1248 (1991)60 Cal. 4th 474 (2014) ........................ 10

*McCollum v. Friendly Hills Travel Center*
6   172 Cal. App. 3d 83 (1985) ........................................................................ 10

*Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*
7   220 Cal. App. 3d 864 (1990) ...................................................................... 10

8
**Federal Cases**

*A.B. v. Marriott Int'l Inc.*
9   No. 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020) ........................ 12, 14, 15, 17

10
*Ashcroft v. Iqbal*
   129 S. Ct. 1937 (2009) .............................................................................. 4, 9

11
*AT & T Co. v. Compagnie Bruxelles Lambert*
12   94 F.3d 586 (9th Cir.1996) ........................................................................ 3, 4

*Bell Atl. Corp. v. Twombly*
13   550 U.S. 544 (2007) ................................................................................... 4

14
*Bistline v. Parker*
   918 F.3d 849 (10th Cir. 2019) .................................................................... 13

15
*Brainerd v. Governors of the University of Alberta*
   873 F.2d 1257 (9th Cir. 1989) .................................................................... 6

16
*Bristol-Myers Squibb Co. v. Superior Court*
17   137 S. Ct. 1773 (2017) ............................................................................... 7

*Brown v. Corr. Corp. of Am.*
18   603 F. Supp. 2d 73 (D.D.C. 2009) ............................................................. 15

19
*Bohara v. Backus Hosp. Med. Benefit Plan*
   390 F. Supp. 2d 957, 961 (C.D. Cal. 2005) ............................................... 4

20
*Butcher's Union Local No. 498, United Food & Comm'l Workers v. SDC Investment, Inc.*
   88 F.2d 535 (9th Cir.1986) ......................................................................... 6

21
*Chicago, M. & St. P. R. Co. v. Minneapolis Civic and Commerce Assn.*
22    247 U.S. 490 (1918) .................................................................................. 9

*Daimler AG v. Bauman*
   571 U.S. 117 (2014) ................................................................................... passim

23
*Doe S.W. v. Lorain-Elyria Motel, Inc.*
   No. 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020) ........... 17

24
*Fields v. Sedgwick Associated Risks, Ltd.,*
25   796 F.2d 299 (9th Cir.1986) ...................................................................... 3

*Geiss v. The Weinstein Co. Holdings LLC*
26   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ........................................................ 14

*Gibson v. Chrysler Corp.*
27   261 F.3d 927 (9th Cir. 2001) ..................................................................... 6

28

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

*Gilbert v. United States Olympic Comm.*
   423 F. Supp. 3d 1112 (D. Colo. 2019)..................................................................... 13, 17
*Goodyear Dunlop Tires Operations, S.A. v. Brown*
   564 U.S. 915 (2011)....................................................................................................... 4
*H.H. v. G6 Hospitality, LLC*
   No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019)............................... 12, 17
*In re Coupon Clearing Serv., Inc.*
   113 F.3d 1091 (9th Cir. 1997) ..................................................................................... 9
*International Shoe Co. v. Washington*
   326 U.S. 310 (1945) …………………………………………………………… 4, 6
*Jean-Charles v. Perlitz*
   937 F. Supp. 2d 276 (D. Conn. 2013) ........................................................................ 13
*Lesnik v. Eisenmann SE*
   374 F. Supp. 3d 923 (N.D. Cal. 2019) ....................................................................... 11
*M.A. v. Wyndham Hotels & Resorts, Inc.*
   No. 2:19-cv-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) ........................... passim
*Mendiondo v. Centinela Hosp. Med. Ctr.*
   521 F.3d 1097 (9th Cir. 2008) ..................................................................................... 3
*Noble v. Weinstein*
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)........................................................................ 13
*Ratha v. Phattana Seafood Co., Ltd.*
   No. CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017)............................ 15
*Ricchio v. Bijal*
   386 F. Supp. 3d 126 (D. Mass. 2019) ........................................................................ 17
*Schwarzenegger v. Fred Martin Motor Co.*
   374 F.3d 797 (9th Cir. 2004) ....................................................................................... 7
*Sedima, S.P.R.L. v. Imrex Co., Inc.*
   473 U.S. 479 (1985)..................................................................................................... 14
*Shwarz v. United States*
   234 F.3d 428 (9th Cir. 2000) ....................................................................................... 3
*Sinatra v. National Enquirer, Inc.*
   854 F.2d 1191 (9th Cir. 1988) ..................................................................................... 15
*Sloan v. General Motors, LLC*
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ....................................................................... 10
*Sloan v. General Motors, LLC*
   No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018)........................ 10
*Swierkiewicz v. Sorema N. A.*
   534 U.S. 506 (2002)....................................................................................................... 4
*United States v. Afyare*
   632 F. App'x 272 (6th Cir. 2016) ............................................................................... 13
*United States v. Best Foods*
   524 U.S. 51 (1998)....................................................................................................... 10
*Williams v. Taylor*
   529 U.S. 362 (2000)..................................................................................................... 15
*WNS, Inc. v. Farrow*
   884 F.2d 200 (5th Cir.1989)……………………………………………….………….3

**State Statutes**

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

Cal. Civ. Code § 2295 ................................................................................................................ 9

Cal. Civ. Code § 2332 .............................................................................................................. 15

California Trafficking Victims Protection Act
    Cal. Civ. Code § 52.5 ........................................................................................................... 4

**Federal Statutes**

18 U.S.C. § 1589 ................................................................................................................... 16

18 U.S.C. § 1591 .............................................................................................................. passim

18 U.S.C. § 1595 .............................................................................................................. passim

Fed. R. Civ. Proc. 12(b)(6) .................................................................................................. 3, 4

Fed. R. Civ. P. 15(a)(2) ………………………………………………………………….…….8

Trafficking Victims Protection Reauthorization Act of 2008
    18 U.S.C. § 1591 *et seq*................................................................................................ passim

Trafficking Victims Protection Reauthorization Act of 2008
    Amended Pub. L. No. 110-457, § 221(2), 122 Stat. 5067. ........................................... 12

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

## I.  INTRODUCTION AND STATEMENT OF RELEVANT FACTS

This case, like several others on file around the country, is about holding Hilton Worldwide International, Inc. (hereinafter "Hilton"), as a brand hotel, accountable for their actions, and their inaction, when it comes to sex trafficking.  But this case is also about a young woman, J.C., who was forced to Virginia from California by her trafficker and compelled to stay at the Embassy Suites by Hilton Alexandria as well as the Doubletree by Hilton Hotel Sacramento and Hilton Sacramento Arden West (all Hilton brand properties), in sexual servitude for the financial benefit of others.  First Amended Complaint ("FAC"), ¶¶ 118, 122.  Plaintiff intends to move forthwith for leave to amend based on the trafficking of J.C. at the Hilton Doubletree and the Hilton Sacramento Arden West in Sacramento, CA.[1]  When Plaintiff's is allowed to add these allegations, plausible the jurisdictional defenses Hilton asserts in the instant motion will be moot, as further detailed below.  Therefore, plaintiff additionally asks this Court hold its decision on this motion in abeyance until plaintiff's Motion to Amend can be decided.[2]

For the duration of her trafficking ordeal, hotel workers at Hilton brand hotels, including the Embassy Suites by Hilton Alexandria as well as the Sacramento properties, watched as J.C. was escorted by her trafficker to hotel rooms paid for by her trafficker all to Hilton's benefit.  *Id.* ¶¶ 109, 118, 122.  In those rooms, J.C. was forced to perform sex acts multiple times per day.  FAC, ¶¶ 109-110, 122.  J.C. was repeatedly raped, tortured, verbally abused, and forced to terminate two resulting pregnancies  *Id.* ¶¶ 5, 7, 113.

---

[1] Plaintiff did not allege these details in her complaint or amended complaint not because they didn't happen but because she only later recalled them and her memory was refreshed by the meet and confer process the parties engaged in for this Motion. Part of plaintiff's damages that she will show throughout this case is that the impact of this type of trauma on a person, and in particular human trafficking survivors like herself, can affect one's memory and particularly the ability to recall details specific to the abuse.

[2] Plaintiff's counsel has conferred with counsel for Hilton in advance of this response and understands Hilton will not stipulate to Plaintiff's forthcoming motion for leave to amend.  Hilton and Plaintiff have agreed to meet and confer, and involve counsel for other Defendants, in the coming days in an attempt to reach an agreement on the impact of Plaintiff's Motions on the Court's hearing schedule.

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

J.C. and her trafficker routinely had direct contact with hotel staff.  J.C.'s trafficker would rent rooms at the Embassy Suites by Hilton Alexandria several days a week for eight months.  *Id.* ¶ 122.  J.C. visited the hotel repeatedly, often with different guests, without any luggage, avoiding all eye contact, and displaying prominent bruising.  *Id.* ¶ 138.  J.C.'s traffickers would often help check her in and then not proceed to the room.  *Id.* ¶ 132.  In addition, she was often the victim of loud altercations and seemingly was never allowed to be alone.  *Id.*  Plaintiff alleges hotel staff witnessed a steady stream of men, who were not registered guests entering and exiting the hotels, but never questioned the unannounced guests or reported them to authorities.  *Id.* ¶¶ 122, 132.  On at least one occasion, there were altercations between victims in public areas of the hotel that should have alerted hotel staff to the nature of their activity.  *Id.* ¶ 122.  No authorities were called.  It simply would have been impossible for hotel staff not to notice J.C.'s victimization.

Given the open and obvious danger J.C. was in, the employees knew, or, at the very least, should have known, she was being trafficked.  *Id.* ¶ 129.  Hilton had the opportunity to stop J.C.'s traffickers and offenders like them from victimizing J.C. and others like her but instead failed to take reasonable measures to stop sex trafficking from occurring in their hotels.  *Id.* ¶¶ 62, 65-70, 144.  By failing to act, and by failing to train hotel staff how to respond when someone is being trafficked, Hilton became a participant in J.C.'s exploitation.  *Id.* ¶¶ 135, 141.  Particularly given the frequency and longevity of J.C.'s forced stays at the Hilton brand hotels central to this case, Hilton benefitted financially from her exploitation through the rental of rooms where her trafficking occurred.  *Id.* ¶¶ 122, 126, 139, 148.  To this day, Hilton enjoys the steady stream of income it gets by passively facilitating a space for sex traffickers in their brand hotels, including Embassy Suites.  *Id.* ¶ 150.  Turning a blind eye has proven to be a very lucrative business for Hilton.

Just as Hilton knew exactly what was going on in J.C.'s hotel rooms, they know exactly what this lawsuit is about.  Plaintiff's causes of action are sufficiently and plausibly pled, with gruesome accuracy of the facts supporting those causes of action, and with a thorough recitation of Hilton's egregious conduct in the venture to exploit J.C. for the benefit of her trafficker and Hilton.

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

1    The FAC thus adequately alleges Hilton knowingly benefitted from participation in a venture

2    it knew or should have known engaged in trafficking, which constitutes a valid, stand-alone claim

3    for relief under Section 1595 of the Trafficking Victims Protection Reauthorization Act of 2008

4    ("TVPRA"), 18 U.S.C. § 1591 *et seq*., and pursuant to the California Trafficking Victims Protection

5    Act ("CTVPA"), Cal. Civ. Code § 52.5.  Further, the existence of a "franchisor/franchisee"

6    agreement between Hilton and the Embassy Suites by Hilton Alexandria does not preclude the

7    existence of a principal-agent or joint employer relationship between them, nor does it relinquish

8    Hilton from liability.  Plaintiff's allegations that Hilton retained extensive control over the day-to-

9    day operations of the Embassy Suites by Hilton Alexandria sufficiently and plausibly plead an

10   agency relationship and consequent liability therefor.  Any challenge to the facts establishing

11   vicarious liability should be raised after discovery.

12   The FAC likewise alleges facts sufficient to establish both general and specific personal

13   jurisdiction over Hilton based on its extensive presence in California in addition to the recently

14   realized contacts in Sacramento, California which contributed to the causes of action alleged herein.

15   Accordingly, Hilton's Motion should be denied in full.

16   I.   STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD

17    "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable

18   legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp.*

19   *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In considering the motion, the Court must accept

20   the factual allegations in the complaint as true, and must construe the pleadings in the light most

21   favorable to the non-moving party.  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

22   The Court must decide whether it has personal jurisdiction over the defendant, Hilton.

23   Plaintiff only needs to make a prima facie showing that personal jurisdiction exists to survive a

24   motion to dismiss for lack of jurisdiction. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299,

25   301 (9th Cir.1986);  In determining whether this burden has been met, uncontroverted allegations in

26   the complaint "must be taken as true, and 'conflicts between the facts contained in the parties'

27   affidavits must be resolved in [the plaintiff's] favor ....'" *AT & T Co. v. Compagnie Bruxelles*

28

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

*Lambert*, 94 F.3d 586, 588 (9th Cir.1996)(citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989).) *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 961 (C.D. Cal. 2005).

The Court must also decide whether plaintiff has alleged sufficient facts supporting direct and/or vicarious liability of Hilton. Plaintiff has alleged multiple facts supporting both direct liability and vicarious liability and "a judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572, (2007), quoting *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 508, n. 1 (2002).

Finally, the court must decide whether Plaintiff's FAC adequately states a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Plaintiff concedes Hilton's last argument that Cal. Civ. Code 52.5(a) does not apply to conduct at the Virginia Embassy Suites, but she intends to include this claim against Hilton for conduct at its California properties.

## II. ARGUMENT

### A.    This Court has General Personal Jurisdiction over Hilton

There are two types of personal jurisdiction, general and specific. Specific jurisdiction arises out of activities occurring within the forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). General jurisdiction on the other hand, "allows a plaintiff to sue a defendant 'on any and all claims,' regardless of the connection (or lack thereof) between the claim and the forum." *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 920 (2011)). General jurisdiction over a corporation exists when its contacts with the state are "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014).

This Court has general jurisdiction over Hilton. Defendant misstates the holding in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *Daimler* did not narrow the test for general jurisdiction to "only" a corporate defendant's place of incorporation or principal place of business, rather, the Court

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

1    in *Daimler* specifically clarified that, "*Goodyear* did not hold that a corporation may be subject to

2    general jurisdiction *only* in a forum where it is incorporated or has its principal place of business."

3    *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014) (emphasis added). Although the Court in

4    *Daimler* did find that subjecting a defendant to the broadest possible application of general

5    jurisdiction would be "unacceptably grasping," it did not narrow the test as far as defendant claims.

6    Ultimately, the *Daimler* court found that, "the inquiry under *Goodyear* is not whether a foreign

7    corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is

8    whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render

9    [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (quoting

10   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The facts of *Daimler*

11   further distinguish it from this case as the Court in that case was highly concerned about the

12   international nature of the suit. *Daimler AG v. Bauman*, 571 U.S. 117, 142 (2014).

13          In this case, defendant Hilton Worldwide Holdings has over 350 hotels under their brand in

14   California[3].  With these hotels, some which are franchised, some which are directly owned and

15   managed by them,[4] they are registered to do business in California, licensed to do business in

16   California, own property in California,  pay taxes in California and they are unquestionably at home

17   in this jurisdiction. This type of permanent presence in the state is in sharp contrast to the contacts

18   deemed insufficient in *Daimler*.  Contrary to the defendant's interpretation, *Daimler* did not limit

19   general jurisdiction to only those places where a corporation is incorporated or has its principal place

20   of business.   If the Court wanted to, it would have specifically said so; instead, the Court used the

21   phrase, "essentially at home in the forum."  This is not the broad standard rejected by the *Daimler*

22   Court that would allow "general jurisdiction in every State" that would be "unacceptably grasping."

23   *Daimler*, 571 U.S. at 137–38.  This is a factually based analysis of the contacts that go beyond a

24   "substantial, continuous and systematic course of business." *Id.*

25          Without the benefit of discovery on the subject, publicly available documents evidence the

26

27   ───────────────
     [3] https://www.hilton.com/en/locations/usa/california/

28   [4] See Exhibit A to Declaration of Owen Wilcox Form 10-K filing of Hilton Worldwide Holdings Inc.
     (Document 43-2)

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

significant business interests of Hilton in California, a vacation destination state with a robust

tourism industry.   Hilton's 10-Q filing indicates that a number of their hotels are directly owned and

operated by them,[5] therefore their presence in the state is not limited to only franchisees, but rather

direct ownership and participation.   Hilton owns a number of its hotels, including locations in

California, such as the Hilton La Jolla Torrey Pines, the Hilton San Diego Bayfront and the Hilton

Garden Inn in El Segundo.[6]  With more than 350 locations in California, their contacts far exceed

the lower standard of "in some sense continuous and systematic" contacts shunned by *Daimler.* To

the contrary, with such high levels of transacting substantial and regular business activities,

defendant has created a significant physical presence in California and plays a major role in its

economy. This due process analysis is based on the presumption that it is reasonable to require a

defendant to be subject to the burden of litigating in a state in which it conducts business and

benefits from its activities in that state.  *Brainerd v. Governors of the University of Alberta*, 873 F.2d

1257, 1259 (9th Cir. 1989).  In this case, defendant has such a dominant presence in California

making their contacts "so continuous and systematic as to render [them] essentially at home" in

California. Therefore, subjecting Hilton to general jurisdiction in this forum would not "offend

traditional notions of fair play and substantial justice" and is in accordance with due process.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Nevertheless, if the court is not persuaded by the statements in the 10-Q or by other cited

publicly available information regarding the extent of defendant's contacts with California, plaintiff

requests that she be allowed to investigate the facts further through limited jurisdictional discovery.

"Discovery is available in federal court to establish the presence of personal jurisdiction in that

court, see, e.g., *Butcher's Union Local No. 498, United Food & Comm'l Workers v. SDC Investment,*

*Inc*., 788 F.2d 535, 540 (9th Cir.1986) ("Discovery should ordinarily be granted where 'pertinent

facts bearing on the question of [personal] jurisdiction are controverted or where a more satisfactory

showing of the facts is necessary.' ") (citation omitted)…."  *Gibson v. Chrysler Corp*., 261 F.3d 927,

948 (9th Cir. 2001), holding modified by *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546,

---

[5] See Exhibit A to Declaration of Owen Wilcox at pp. 8 – 10 (14 – 17/229)
[6] https://www.latimes.com/archives/la-xpm-2009-jan-22-fi-hilton22-story.html

Case No. 3:20-cv-00155-WHO

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).

### B.    This Court has Specific Personal Jurisdiction over Hilton

In the Ninth Circuit, the courts apply a three-part test to determine the applicability of specific jurisdiction:

(1) whether the defendant purposefully availed himself of the privileges of conducting activities in the forum;

(2) whether the claim arises out of or results from the defendant's forum-related activities; and

(3) whether the exercise of jurisdiction is reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 at 802 (9th Cir. 2004).

Here, the defendant has clearly purposefully availed itself of the privileges of conducting business in California by owning, operating and franchising hundreds of hotel properties here, and plaintiff has alleged as much (FAC ¶¶ 21 & 22).   On the second prong, plaintiff has alleged a common course of conduct which began in California with her trafficker and led to her being trafficked at the Hilton property in Virginia.  (FAC ¶ 13(g).)   The plaintiff bears the burden on the first two prongs.  Once met, the burden shifts to the defendant to show that the exercise of jurisdiction would not be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 at 802 (9th Cir. 2004). However, the exercise of jurisdiction in this case is supremely reasonable not just because it stems from the same transactions and occurrences that began in California and flowed to Virginia, but also because it is not reasonable for plaintiff to bring her cause of action against Hilton in a separate court based on these same facts and law.  Doing so would force her to undergo discovery twice in each action and to retell her harrowing victimization in both forums.  Judicial economy dictates that this matter be heard by one court, not two.

Defendant's reliance on *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) is misplaced.  That case found no jurisdiction for claims involving an out of state plaintiff and an out of state defendant.  By contrast, the plaintiff here is a California resident and California has an interest on preventing the trafficking of its residents. Defendant Hilton Worldwide Holdings is an

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

out of state defendant with significant and continuous contacts in this state involving over 350 hotels including some which are directly owned and operated by Hilton Worldwide Holdings.  The facts giving rise to this cause of action began in California and continued through a common course of conduct which led to the location in Virginia.  Moreover, Hilton's contacts with California are similar to those in Virginia.  In fact, their 10-Q acknowledges that their conduct with respect to human trafficking is set by them and is uniform throughout their hotels, whether in California or Virginia:

> As reflected in our Code of Conduct, any behavior, communication or other conduct that creates an environment that is intimidating, offensive or hostile is unacceptable. To combat human trafficking, we require all hotel-based employees to complete an annual training on identifying signs of trafficking. We also partner with expert organizations, including ECPAT, Vital Voices and It's a Penalty, to help prevent and mitigate such risks, including at an industry level through the International Tourism Partnership, World Travel and Tourism Council, American Hotel & Lodging Association and UK Stop Slavery Hotel Industry Network.

(Motion, Exhibit A to the Declaration of Owen Wilcox at p. 11 (18/229).)

Notwithstanding this analysis, through the meet and confer process precipitated by this Motion, plaintiff has recalled[7] that during the lengthy ordeal with her trafficker, she was actually also trafficked at two Hilton locations in Sacramento, California in addition to the Hilton branded Embassy Suites in Virginia.  Because federal district courts are supposed to grant leave to amend a complaint "freely … when justice so requires" Fed. R. Civ. P. 15(a)(2), plaintiff respectfully requests leave to amend her First Amended Complaint to add these later realized facts[8].  If the court is not inclined to allow plaintiff to her amend her complaint, in the alternative, plaintiff requests in

---

[7] The trauma of J.C.'s sex trafficking understandably has caused her extensive emotional stress such that at times it has affected her memory.  Upon recent conversations with J.C. regarding this Motion, her memory was refreshed on these details.

[8] Plaintiff intends to file a Motion for Leave to Amend her First Amended Complaint with these facts.  However, it cannot be briefed and heard prior to the hearing on this Motion.  The parties involved are cognizant of the impact on this schedule and will work to find a satisfactory resolution.

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

the interests of justice that her matter against Hilton not be dismissed, but rather be transferred to the Eastern District of Virginia.

### C.     Hilton is a Proper Defendant Because it is Directly Liable

Hilton is directly liable under the TVPRA because it facilitated the venture that led to J.C.'s injuries and directly financially benefitted financially from this venture.  There are multiple allegations in the FAC alleging this direct liability.  (FAC ¶¶ 95, 109-124, 126, 129, 132, 138, 147, 150, 153, 165-169.) It is Hilton that establishes the conduct for its franchisees and those employed at the Embassy Suites by Hilton in Alexandria, VA location.  It is Hilton that instructs these managers and employees how to respond, if at all, to signs of human trafficking. "To combat human trafficking, we require all hotel-based employees to complete an annual training on identifying signs of trafficking.")  (Motion, Exhibit A to Declaration of Owen Wilcox at p. 11 (18/229).)

Likewise, it is Hilton that benefits from these actions, or omissions.  "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   Embassy Suites is a brand of the defendant Hilton and is referred to throughout Hilton Worldwide Holding Company's 10-Q filing as "Embassy Suites *by Hilton"* (Motion, Exhibit A to Declaration of Owen Wilcox at pp. 3, 5, 8 *et seq*. (7/229, 10/229, 15/229).)   The 10-Q filing makes a point of stating the importance of the Hilton brand to their enterprise: "***Any deterioration in the quality or reputation of our brands could have an adverse effect on our reputation, business, financial condition or results of operations***…. Our brands and our reputation are among our most important assets. Our ability to attract and retain guests depends, in part, on the public recognition of our brands and their associated reputation."  They acknowledge that, "If our brands become obsolete or consumers view them as unfashionable, unsustainable or lacking in consistency and quality, we may be unable to attract guests to our hotels, and may further be unable to attract or retain our hotel owners."  (Motion, Exhibit A to Declaration of Owen Wilcox at p. 17 (29/229).)  It is this consistency for which Hilton, the brand, is responsible and it is the consistency in their response to human trafficking, from their locations in California to Virginia that gives rise to their direct liability for violations of the TVPRA,

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

further discussed below.

### D.   Hilton is a Proper Defendant Because it is Also Vicariously Liable

Plaintiff has also alleged that Hilton is the "alter ego" of the Embassy Suites® by Hilton Alexandria Old Town.  The Supreme Court in *United States v. Best Foods* 524 U.S. 51 (1998) observed that there are multiple well-established exceptions to the basic rule that parent corporations are not liable for the acts of subsidiaries: "[T]here are occasions when the limited liability sought to be obtained through the corporation will be qualified or denied. *Chicago, M. & St. P. R. Co.* v. *Minneapolis Civic and Commerce Assn.,* 247 U.S. 490, 501 (1918).  Under California law, "[a]n agent is one who represents another ... in dealings with third persons."  Cal. Civ. Code § 2295.  The hallmark of an agency relationship is that one person agrees to act on behalf of another and is ***subject to his control***.  *See In re Coupon Clearing Serv., Inc.,* 113 F.3d 1091, 1099 (9th Cir. 1997) (applying California law).  "The law is clear that a franchisee may be deemed to be the agent of the franchisor."  *Kuchta v. Allied Builders Corp.,* 21 Cal. App. 3d 541, 547 (1971) (citations omitted).

> The general rule is where a franchise agreement gives the franchisor ***the right of complete or substantial control*** over the franchisee, an agency relationship exists.  It is the ***right to control the means and manner*** in which the result is achieved that is significant in determining whether a principal-agent relationship exists.

*Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992) (citations and quotations omitted) (emphasis added).

The test of an agency relationship is the principal's ***right*** to control the activities of the agent. "It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent."  *Id.*, 4 Cal. App. 4th at 1288 (citing *McCollum v. Friendly Hills Travel Ctr.*, 172 Cal. App. 3d 83, 91 (1985)).  Whether a right of control exists may be measured by asking "whether or not, if instructions they were given, they would have to be obeyed."  *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 875 (1990) (reversing trial court's determination that the delivery driver was an independent contractor).

In California, whether a corporate parent can be liable for its subsidiary under an alter ego theory is a question of fact. *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

1220, 1248 (1991).    Allegations against a principal may survive a motion to dismiss where "the

complaint includes allegations from which an agency relationship may plausibly be inferred." *Sloan*

*v. Gen. Motors, LLC,* 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-

EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018).  Since discovery has not been undertaken and

we do not currently know the precise extent to which Hilton controlled the actions of employees at

the Embassy Suites® by Hilton Alexandria Old Town, defendant's motion to dismiss based on no

vicarious liability is premature and should be denied on this grounds.  However, given the tenor and

detail paid to the importance of consistency and reputation across their brand facilities as described

in the 10-Q filing attached to the Motion as Exhibit A to the Declaration of Owen Wilcox, it can be

inferred that there is, in fact, a great deal of control.  Regardless, Plaintiff has alleged facts from

which an agency relationship may be inferred. (FAC ¶¶ 3, 13, 21, 22, 36, 39, 43, 49, 52, 56, 59, 62,

65, 90 – 96, 102, 108, 126, 129, 147 & 150.)  These allegations in the FAC plausibly support an

agency theory of liability between Hilton and the Embassy Suites by Hilton in Alexandria, VA.

(Plantiff incorporates by reference the discussion on prior court holdings finding individual hotels as

agents of their national brands found in Plaintiff's Opposition to Marriott's Motion to Dismiss at p.

12, ll. 14 – 28.)  These allegations are sufficient at the pleading stage, therefore, defendant's Motion

to dismiss should be denied.

### E.    Plaintiff's Complaint Sufficiently And Plausibly Pleads A Claim Against Hilton Under 18 U.S.C. § 1595(a).[9]

The TVPRA serves two primary purposes.  First, it criminalizes sex trafficking by force,

fraud, or coercion.  *See* 18 U.S.C. § 1591.[10]  Separately, since 2008, section 1595 of the TVPRA

provides victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking *and*

against the beneficiaries of sex trafficking.  *See* 18 U.S.C. § 1595(a).[11]  To help eradicate the scourge

---

[9]  Claims brought under the TVPRA are not subject to a heightened pleading standard.  *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 951 (N.D. Cal. 2019).

[10]  One who benefits financially from a sex trafficking venture can also be held criminally liable under section 1591(a)(2).

[11]  Plaintiff J.C. is a victim of sex trafficking in violation of section 1591(a).  FAC, ¶¶ 9, 166.

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

of sex trafficking, in 2008, Congress included in the scope of potential defendants "***whoever*** knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *Id.* (Trafficking Victims Protection Reauthorization Act of 2008, Amended Pub. L. No. 110–457, title II, § 221(2), 122 Stat. 5067)[12] (emphasis supplied).  The 2008 amendment evinced a broad Congressional intent to impose liability on businesses, such as Hilton, that facilitate and financially benefit from sex trafficking.

Civil liability under section 1595(a) can be brought as a "standalone" claim; a defendant can be found to have violated section 1595 (for benefitting from and participating in a venture where he knew of should have known that the venture was involved in sex trafficking) ***without*** having violated section 1591.  *See, e.g., M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 963 (S.D. Ohio 2019); *see also A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at *8 (E.D. Pa. Apr. 22, 2020).  It is important not to conflate the distinct elements set forth in the statute's criminal liability section, and its civil liability section.  Though the standard for ***beneficiary*** liability (under section 1595) differs from the standard for ***perpetrator*** liability (under section 1591), throughout its Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), Hilton merges the two, in an attempt to hold J.C. to a higher standard than the law requires.  A plain reading of the statute, and application of the rules of statutory construction, supports the claims brought against Hilton.

Accepting J.C.'s factual allegations and construing the FAC in the light most favorable to her, the non-moving party, it is clear that Plaintiff has stated a cognizable legal claim for relief supported by sufficient facts.  This is especially so given the context of the hotel industry's (including Hilton's) widespread recognition of the prevalence of sex trafficking in its brand hotels.  FAC, ¶¶ 47, 49, 52, 56, 59, 62, 65, 71-76, 78, 81, 87, 89.

---

[12]  Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457 (Dec. 23, 2008), https://www.congress.gov/110/plaws/publ457/PLAW-110publ457.pdf.

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

1

### i.   Hilton Participated in a Venture.

2      J.C. has plausibly alleged that Hilton participated in a venture with her trafficker.  In the

3 FAC, J.C. avers that Hilton "aided and engaged with her trafficker in his sex trafficking venture."

4 *Id.* at FAC, ¶ 126.  She alleges that Hilton had actual and/or constructive knowledge of the

5 trafficking occurring in the hotel industry and of the trafficking of J.C. herself.  *Id.* at FAC, ¶¶ 27-34,

6 39, 43, 45, 56, 59, 68, 72-73, 75-76, 81, 87, 109-110, 122, 126, 129, 132, 138, 141.  Further, that

7 despite such knowledge Hilton failed to mandate training or implement anti-trafficking policies on

8 its branded policies which would have prevented Plaintiff's trafficking and as a result Hilton

9 facilitated the sex trafficking of J.C. through constant room rentals to her trafficker.  *Id.* at ¶¶ FAC,

10 53, 89, 105, 108(b), (g), (h), 144, 156, 158.  With these non-conclusory, explicit averments, J.C.

11 sufficiently alleges that Hilton, "[t]hrough its relationship with the staff at the Embassy Suites hotel,"

12 *id.* at ¶ 13(d), participated in the sex trafficking venture.

13      Indeed, plaintiffs in similar cases have met the participation in a venture element with less.

14 In *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *5 (S.D. Ohio Dec. 6, 2019),

15 plaintiff's allegations that defendants rented rooms to people it knew or should have known were

16 engaged in sex trafficking—allegations J.C. makes in the FAC, *id.*, ¶¶ 68, 109-110, 122, 132, 138—

17 were sufficient.  *See also Bistline v. Parker*, 918 F.3d 849, 875-76 (10th Cir. 2019) (holding that

18 complaisance in response to exhibitions of TVPRA violations is sufficient to show participation in a

19 trafficking venture).

20      Despite Plaintiff's robust allegations, Hilton advances four arguments.  Each fails.  First,

21 Hilton attempts to transform section 1595(a)'s requirement of "participation in a venture" into

22 "participation in a ***sex trafficking*** venture," ignoring the plain language of the statute in favor of a

23 Black's Law Dictionary plain language interpretation.  To the contrary, "liability under § 1595 [for

24 non-perpetrator beneficiary claims] can attach when an individual participates in a venture that is not

25 specifically a sex trafficking venture and participation is not direct participation in sex trafficking."

26 *M.A.,* 425 F. Supp. At 969; *see also Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 289 (D. Conn.

27 2013) (finding defendants participated in a venture where they maintained affiliations with a school

28 where the sex trafficking of minors was taking place); *Gilbert v. United States Olympic Comm.*, 423

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

F. Supp. 3d 1112 at 1138 (D. Colo. 2019) (holding that entire venture does not have to be engaged in the TVPRA violations).

Hilton next argues that "participation" requires an overt act, but other district courts have rejected this argument. *See, e.g.*, *A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at *8 ("We construe the Act under its terms as imposing liability should a jury find the business benefitted from participating in a venture it knew or should have known engaged in trafficking."); *Gilbert*, 423 F. Supp. 3d at 1138 (holding that a defendant's participation does not need to be an overt act). Moreover, the cases Hilton cites say no such thing. Motion, p. 11-13. Several of the cases are entirely inapplicable because they involve the (stricter) definition of "participation in a venture" supplied in section 1591, the criminal statute. 18 U.S.C. § 1591(e)(4).[13] As two federal judges have explained in recent, well-reasoned opinions, Hilton's interpretation of the TVPRA defies the rules of statutory construction. *M.A.,* 425 F. Supp. 3d at 969-970; *see also A.B.*, 2020 WL 1939678, at **8-9). In Hilton's view, the definition of "participation in a venture" included in section 1591(e)(4) (the criminal statute) should be the controlling measure of a hotel's liability. That subsection reads: "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." *Id.* However, section 1591 is not the operative statute in this lawsuit, section 1595 is. And section 1595 does not incorporate section 1591's definition of "participation in a venture." Quite the opposite, actually: the definitions in section 1591(e) explicitly apply only to "this section," *i.e.* section 1591.[14] Were the Court to adopt Hilton's argument—and supplant the requirements of section 1595 with those of section 1591—the "known or should have known"

---

[13]  *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) is a criminal case dealing exclusively with section 1591. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018), is likewise distinguishable, as the plaintiff there only asserted section 1595 perpetrator trafficking claims against defendants who directly violated section 1591(a)(1) and section 1595 perpetrator financial beneficiary claims against defendants who directly violated section 1591(a)(2); *see also Geiss v. The Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) (same).

[14]  Naturally, to support a ***criminal*** violation under the TVPRA, the degree of "knowledge" must meet the requisite *mens rea* for a crime. The fact that there are two different "knowledge" standards in the TVPRA is not problematic from a statutory construction standpoint because "there is such variation in the connection in which the words are used as to reasonably warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932).

language of Section 1595 would become meaningless, a result eschewed by the rules of statutory construction. *See M.A.,* 2019 WL 4929297 at *9. "[C]ourts must give effect to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 364 (2000); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985) (when "statute is remedial in nature, its terms must be construed in a liberal fashion.").

Hilton argues that a common purpose between Hilton and J.C.'s trafficker is necessary to establish "participation" under Section 1595. Such an interpretation of the statute would ostensibly remove the "should have known" language from Section 1595. See *A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at *8. Hilton's "associated in fact" argument relies primarily on RICO cases wholly unrelated to the TVPRA claims at issue here. Hilton participated in such a venture and is directly responsible for its actions under Section 1595 and indirectly responsible for the hotel staff at the Embassy Suites by Hilton which is firmly grounded in principles of vicarious liability and agency theory.

### ii.  Hilton Knew or Should Have Known that the Venture Was Engaged in Sex Trafficking.

Plaintiff has plausibly alleged that Hilton knew or should have known of the venture with her trafficker engaging in the trafficking of J.C. over an eleven-year period. For this prong, J.C. only needs to prove that the Hilton "should have known" about the nature of the venture, and this factor is akin to a negligence standard. *See M.A.*, 425 F. Supp. 3d at *968. Evidence of actual knowledge or conspiracy is not required. *Id.*

Indeed, the failure to implement policies sufficient to combat a known problem in one's operation can rise to the level of willful blindness or negligence. *See M.A.*, 425 F. Supp. 3d at 968, citing *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) (finding that the complaint provided sufficient allegations under section 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped an employee, sexual harassment at the facility was not an isolated incident, and defendants failed to implement and effectuate the appropriate policies to remedy and/or prevent the discriminatory conduct, sexual harassment, and rape). J.C. has alleged Hilton was on notice of the prevalence of sex trafficking generally at its hotels—and specifically of her trafficking at the Embassy Suites by Hilton—yet failed to take

1  adequate steps to train the hotel staff, or institute appropriate security measures to prevent or thwart

2  its occurrence.  FAC, ¶¶ 108(a)-(h).  In the FAC, J.C. highlights readily-available media coverage

3  found through a simple online search demonstrating Hilton knew, as of at least early 2011, human

4  trafficking for commercial sex was occurring in its hotels and across its grant.  *Id*. ¶¶ 108(h).

5  Further, the FAC includes allegations that Hilton's management and executives discussed the

6  prevalence of sex trafficking at meetings and through email communications.  *Id.* ¶¶ 29, 30, 78, 81.

7      Plaintiff's complaint also includes a sufficient number of signs she alleges would have

8  alerted Hilton (if it was a diligent hotel brand) to her plight, including at least one occasion there

9  were altercations between victims in public areas of the hotel.  *Id.* ¶¶ 68, 109-110, 122, 126, 129,

10  132, 138.  As such, Plaintiff has plausibly alleged facts sufficient to demonstrate Hilton knew, or at a

11  minimum, Hilton ***should have known***, the venture was engaged in sex trafficking of J.C. at the

12  Embassy Suites by Hilton over an eleven-year period.  While Hilton may argue these signs were

13  observable only to the Embassy Suites by Hilton employees, knowledge of an agent within the scope

14  of its authority is imputed to the principal.  *See Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191,

15  1201 (9th Cir. 1988); Cal. Civ. Code § 2332 ("both principal and agent are deemed to have notice of

16  whatever either have notice of").  The case cited by Hilton says otherwise.  Motion, p. 15.  In *Ratha*

17  *v. Phattana Seafood Co., Ltd*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Cal. Dec. 21,

18  2017), the distributor defendants did not have ***any*** control over the factory.  Plaintiffs sufficiently

19  alleged violations of the TVPRA at the pleading stage, but ultimately lost on summary judgment

20  after the discovery showed defendant incurred no benefit from its business relationship with the

21  facility because it returned the product in question.  *Id*. at *5.

22          ### iii.  **Hilton Knowingly Benefitted.**

23      J.C. plausibly alleges that Hilton knowingly benefitted from the venture that trafficked her.

24  FAC, ¶¶ 109-110, 122, 126, 129, 132, 138, 141, 147.  "Embassy Suites by Hilton Alexandria Old

25  Town pays around 10% of their total revenue back to Hilton…"  *Id.* ¶ 95.  Plaintiff also alleges that

26  Hilton directly benefitted from the trafficking of herself on each occasion it received payment for

27  rooms that she was kept in at the Embassy Suites by Hilton.  *Id.* ¶ 90, 102, 168.  These are not

28  conclusory allegations of a monetary benefit received by Hilton through ordinary room rentals.

1   They are specific to J.C.'s obvious sex trafficking, and demonstrate a ***direct financial connection***

2   from each incidence of abuse she suffered—multiple times per day for days at a time over an eleven-

3   year period—to Hilton's profit.  Plaintiff further alleges that Hilton has deliberately maintained its

4   sex trafficking detection deficiencies to maximize profits by failing to allocate expenditures for

5   proper ongoing of training of all employees (not just managers) on signs of sex trafficking, renting

6   rooms where sex trafficking occurs, and in failing to take proper security measures to combat sex

7   trafficking.  *Id.* ¶¶ 102, 145, 148, 158.

8           Hilton argues that the mere "[c]ollection of rent from guests" cannot support an inference

9   that a franchisor "knowingly" benefited from a sex trafficking venture.  Motion, p. 6.  Putting aside

10  the callousness of this argument, there are three problems with it.  First, all inferences must be drawn

11  in favor of the non-moving party, not Hilton, and Plaintiff has provided ample evidence that Hilton

12  ***was*** on notice that of J.C.'s predicament.  Second, as explained previously, section 1595(a) does not

13  impose a requirement of actual knowledge of the sex trafficking.  *See Doe S.W. v. Lorain-Elyria*

14  *Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020).  Instead, "the

15  first element merely requires that Defendant knowingly receives a financial benefit, not that the

16  perpetrator have actual knowledge of the sex trafficking venture."  *Id.*  "[T]he rental of a room

17  constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."

18  *Id.*, *quoting M.A.*, 425 F. Supp. 3d at 964; *see also A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL

19  1939678, at *15 (same); *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112 at 1137-38

20  (finding the forced labor provision of section 1589(b) does not "require[] the party to benefit from

21  the [forced] labor or services for liability to attach.").  Finally, section 1595 does not require that

22  the benefit be received "on account of" the sex trafficking itself, but only that Hilton knowingly

23  benefit financially or receive anything of value.  *See H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019

24  WL 6682152, at *4; *see also Ricchio v. Bijal*, 386 F. Supp. 3d 126, 131 (2019) (where the

25  defendants had a financial stake in the success of the motel, the court found that even the rental of a

26  room for a short period could constitute a "benefit" within the meaning of the TVPRA).

27  / / /

28  / / /

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**

1

2

## III. CONCLUSION

3    This Court has both specific and general jurisdiction over Hilton based on Plaintiff's asserted

4    and forthcoming allegations. Hilton is a "worldwide" brand with a significant and regular presence

5    in California. The allegations Plaintiff will add to her Second Amended Complaint moot Hilton's

6    motion.  Furthermore, Plaintiff has pled facts sufficient to allege both direct and vicarious liability as

7    well as to state a claim under the TVPRA.  For these reasons, and in the interest of justice, Plaintiff

8    respectfully asks this Court to deny Hilton's Motion in full, or, in the alternative, hold in abeyance

9    the decision on this pending motion until Plaintiff is granted or denied leave to amend her complaint.

10

11   Dated: May 8, 2020                               Respectfully Submitted,

12                                                    By:  _____ */s/ Melinda Davis Nokes* _____

13                                                    Melinda Davis Nokes, Bar No. 167787
                                                      mnokes@weitzlux.com
14                                                    **WEITZ & LUXENBERG, P.C.**
                                                      1880 Century Park East, Suite 700
15                                                    Los Angeles, CA 90067
                                                      Telephone: (310) 247-0921
16                                                    Facsimile: (310) 786-9927

17                                                    Lori E. Andrus, Bar No. 205816
                                                      lori@andrusanderson.com
18                                                    Jennie Lee Anderson, Bar No. 203586
                                                      jennie@andrusanderson.com
19                                                    Audrey Siegel, Bar No. 286771
                                                      audrey.siegel@andrusanderson.com
20                                                    **ANDRUS ANDERSON LLP**
                                                      155 Montgomery Street, Suite 900
21                                                    San Francisco, CA 94104
                                                      Telephone: (415) 986-1400
22                                                    Facsimile:  (415) 986-1474

23

24                                                    *Attorneys for Plaintiff J.C., proceeding under*
                                                      *pseudonym*

25

26

27

28

**PLAINTIFF'S OPP. TO HILTON'S MOTION TO DISMISS**