MICHAEL P. O'DAY (*pro hac vice*)
michael.oday@us.dlapiper.com
ELLEN E. DEW (*pro hac vice*)
ellen.dew@us.dlapiper.com
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Tel:    215.656.2431
Fax:    215.606.2046

AMANDA L. MORGAN (Bar No. 246277)
amanda.morgan@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:    415.836.2500
Fax:    415.836.2501

Attorneys for Defendant
Marriott International, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| J.C., an individual, | CASE NO. 3:20-CV-00155-WHO |
| Plaintiff, | **DEFENDANT MARRIOTT INTERNATIONAL, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| vs. | |
| CHOICE HOTELS INTERNATIONAL, INC.; HILTON WORLDWIDE HOLDINGS, INC.; MARRIOTT INTERNATIONAL, INC.; | |
| Defendants. | Date:    June 3, 2020<br>Time:    2:00 p.m.<br>Ctrm.:   2 - 17th Floor<br>Judge:   Hon. William H. Orrick |
| | Action Filed:   January 7, 2020<br>FAC Filed:      March 19, 2020<br>Trial Date:     TBD |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The Amended Complaint Does Not Plead A Plausible TVPRA Claim ................. 2

        1. Marriott International Did Not Knowingly Participate In A Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code. ............................................................................................................ 2

        2. Marriott International Neither Knew Nor Should Have Known That J.C.'s Traffickers Were Engaged In A Chapter 77 Violation. ................... 6

        3. Marriott International Did Not Knowingly Benefit From The Venture. ........................................................................................................ 7

    B. The Amended Complaint Does Not Plead An Agency Relationship or a Joint Employer Relationship. ................................................................................. 8

    C. The Amended Complaint Does Not Plead A Cal. Civ. Code § 52.5 Claim ......... 10

III. CONCLUSION ............................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.B. v. Marriott International, Inc.*,
  No. 19-5770 (E.D. Pa. April 22, 2020) ...............................................................................1, 5, 6

*Andrade v. Arby's Rest. Group Inc.*,
  No. 15-cv-03175 NC, 2015 WL 6689475 (N.D. Cal. Nov. 3, 2015) ...........................................9

*Ayala v. Antelope Valley Newspapers, Inc.*,
  327 P.3d 165 (Cal. 2014) ............................................................................................................9

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019)......................................................................................................5

*Browning-Ferris Indus. of Cal., Inc., v. Nat'l Labor Relations Bd.*,
  911 F.3d 1195 (D.C. Cir. 2018) ...................................................................................................9

*Gilbert v. U.S. Olympic Comm.*,
  423 F. Supp. 3d 1112 (D. Colo. 2019) .........................................................................................5

*H.H. v. G6 Hospitality, LLC*,
  No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ..................................................6

*Jane Doe 1 v. Red Roof Inns, Inc.*,
  No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020) ..................................5

*Jane Doe 2 v. Red Roof Inns, Inc.*,
  No. 1:19-cv-3841, 2020 WL 1872337, slip op. (N.D. Ga. Apr. 13, 2020) ...............................5, 8

*Jane Doe 3 v. Red Roof Inns, Inc.*,
  No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020) ..................................5

*Jane Doe 4 v. Red Roof Inns, Inc.*,
  No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020) ..................................5

*Kuchta v. Allied Builders Corp.*,
  21 Cal. App. 3d 541 (1971).........................................................................................................8

*Lofthus v. Long Beach Veterans Hosp.*,
  214 F. Supp. 3d 908 (C.D. Cal. 2016).......................................................................................10

*N.T. v. Taco Bell Corp.*,
  411 F. Supp. 3d 1192 (D. Kan. 2019) ......................................................................................8, 9

*Northcross v. Bd. of Educ. of Memphis City Sch.*,
  412 U.S. 427 (1973).....................................................................................................................3

*Owino v. CoreCivic, Inc.*,
    No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) ............................10

*Ratha v. Phatthana Seafood Co., Ltd.*,
    No. CV 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017)............................................4, 6

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017) ......................................................................................................5

*Salazar v. McDonald's Corp.*,
    944 F.3d 1024 (9th Cir. 2019).....................................................................................................9

*Shuvalova v. Cunningham*,
    No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) .................................................4

*Smith v. City of Jackson, Miss.*,
    544 U.S. 228 (2005) ....................................................................................................................3

*Stewart v. Chick-Fil-A*,
    No. 19-cv-1780-CAB-BGS, 2020 WL 264578 (S.D. Cal. Jan. 17, 2020) ...................................9

*Sun-Maid Growers of Ca. v. N.L.R.B.*,
    618 F.3d 56 (9th Cir. 1980).........................................................................................................9

*Talib v. Guerrero*,
    No. CV 15-03825-JAK (DFM), 2016 WL 1470082 (C.D. Cal. Mar. 14, 2016) .......................10

*Talib v. Guerrero*,
    No. CV 15-3825-JAK (DFM), 2015 WL 7428511 (C.D. Cal. Nov. 20, 2015) .........................10

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016)................................................................................................5

*Williams v. Taylor*,
    529 U.S. 362 (2000) ....................................................................................................................1

**STATUTES**

18 U.S.C. Chap. 77..............................................................................................................2, 3, 4, 6

18 U.S.C. § 1589 .................................................................................................................................4

18 U.S.C. § 1591(e)(6) .........................................................................................................................3

18 U.S.C. § 1595 .................................................................................................................................4

18 U.S.C. § 1595(a)..................................................................................................................... passim

18 U.S.C. § 1961(4) .............................................................................................................................3

Cal. Civ. Code § 52.5 ....................................................................................................................2, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff's opposition to Marriott's Motion to Dismiss the First Amended Complaint (ECF No. 54, hereinafter "Opposition" or "Opp.") advances a construction of the TVPRA that turns that statute on its head. Instead of applying the actual words of the statute, which applies civil liability to those who *participate* in illegal activity by third party criminals, the Opposition's reading of 18 U.S.C. § 1595(a) would create liability for businesses who *fail to affirmatively prevent* such illegal activity. Contrary to the Opposition's argument, Marriott International does not contend that this Court is required to import the definition of "participation in a venture" or other specific phrases from criminal sections of the TVPRA, the Federal Civil RICO statute, or other authorities. Opp. at 6-8. What *is* required is the application to Section 1595(a) of the well-settled rule of construction that "courts must give effect to every clause and word of a statute." Opp. at 7-8 (citing *Williams v. Taylor*, 529 U.S. 362, 364 (2000)). Plaintiff's construction of Section 1595(a) runs afoul of that maxim by reading the key words "participate in" right out of the statute.

The cases construing the TVPRA by the U.S. District Courts for the Southern District of Ohio and Eastern District of Pennsylvania do not support the Opposition's argument. Indeed, the latter expressly disavowed the theory that "Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties" or that "hotels (and other businesses or professions possibly earning money from trafficking)" are required "to affirmatively stop [sex] trafficking." *A.B. v. Marriott International, Inc*., No. 19-5770 (E.D. Pa. April 22, 2020), ECF No. 39-2 (hereinafter, "*A.B.*") at 11. Yet this is precisely the theory of liability Plaintiff relies upon throughout the First Amended Complaint (ECF No. 34, the "Amended Complaint" or "FAC"). Even assuming that this Court were to adopt those courts' broader beneficiary theory of liability (which it should *not*), Plaintiff's TVPRA claim is still deficient because it fails to make factual allegations that Marriott International knew or should have known of (let alone knowingly benefitted from) J.C.'s trafficking.

The Opposition invokes incendiary rhetoric, calling Marriott International's argument "callous[,]" claiming that "Marriott knew exactly what was going on in J.C.'s hotel rooms," and

that "turning a blind eye has proven to be a very lucrative business." Opp. at 2. Yet, no facts alleged in the Amended Complaint remotely justify these inflammatory claims. Marriott International unequivocally condemns all forms of forced labor and sexual exploitation and has been an industry leader in addressing these grave concerns. FAC ¶74, n.15. The simple fact, though, is that hotel franchisors are not civilly liable for being unable to uncover and stop every crime that occurs on their franchisees' hotel premises.

The rest of the Opposition fares no better. It avers that the Court should wait until after discovery to decide whether an agency relationship or joint employer relationship exists between Marriott International and the Fremont Marriott Silicon Valley ("Fremont Hotel"), but glides over (1) the absence of *factual* allegations suggesting day-to-day control and (2) the Federal cases which have dismissed similarly deficient pleadings before discovery. Opp. at 10-15. And it misconstrues California Civil Code Section 52.5, which requires intent. Opp. at 15-16. In any event, even assuming that that statute should be construed as synonymous with the TVPRA, the state law claim suffers from the same fatal flaws as does the TVPRA claim. The Court should dismiss the Amended Complaint in its entirety with prejudice.

## II.  ARGUMENT

### A.  The Amended Complaint Does Not Plead A Plausible TVPRA Claim.

#### 1.  Marriott International Did Not Knowingly Participate In A Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code.

The crux of the Opposition is that "[t]he 2008 amendment [to the TVPRA] evinced a broad Congressional intent to impose liability on businesses, such as Marriott, that facilitate and financially benefit from sex trafficking." Opp. at 3. In other words, "recognition of the prevalence of sex trafficking in its brand hotels," coupled with a failure to affirmatively prevent such trafficking, is enough. Opp. at 4; *see also* FAC ¶71. This reading of the TVPRA is untenable. There is no indication from the text of the TVPRA's 2008 amendment or its legislative history that Congress intended to deputize the hotel industry with law enforcement authority or impose an affirmative duty on the industry to "conduct proactive audits" to actively investigate and police sex trafficking.

*First*, Plaintiff's construction is incompatible with the plain text of the statute. Section

1595(a) imposes civil liability on "whoever *knowingly* benefits, financially or by receiving anything of value from *participation* in a *venture which* that person knew or should have known *has engaged in an act in violation of this chapter*)." (emphases added). The "chapter" referred to is Chapter 77 of Title 18 of the United States Code which criminalizes peonage, slavery, forced labor, sex trafficking, and similar acts. Thus, civil liability under Section 1595(a) is predicated upon *knowingly* (1) benefitting from and (2) participating in (3) a *venture which* the defendant knew or should have known *was engaged in a* forced labor or sex trafficking violation.

The Opposition cites the rule that "courts must give effect to every clause and word of a statute" (Opp. at 7, internal citation omitted), yet violates that rule in two ways for Section 1595(a). It avers that "Marriott feebly argues that a franchisor-franchisee relationship is not a venture within the meaning of the statute, but cites no on-point authority" (Opp. at 8). This ignores the fact that Section 1595(a), by its terms, applies not to a "venture" in a vacuum, but rather to one "*engaged in an act in violation of* [Chapter 77]." 18 U.S.C. § 1595(a) (emphasis added). The Opposition disregards the plaint text of the statute by suggesting that participation in *any* venture, such as a franchisor-franchisee relationship, suffices for liability. And Plaintiff ignores that the Federal Civil RICO's definition of venture—an association in fact of persons for a common purpose—is persuasive given the similarities in language between the two statutes.[1] It is telling that the Opposition has no response to this argument other than to call these cases "wholly unrelated to the TVPRA claims at issue here." Opp. at 8. Yet this Court need not even apply RICO cases to reach the correct result, as the plain text of the statute makes clear that liability turns on participation in not just any "venture," but one specifically "engaged in an act in violation of" Chapter 77. For similar reasons, the Opposition's argument that Marriott International "merges"

---

[1] Where Congress uses similar language in two statutes, "it is appropriate [for courts] to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Educ. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) ("The similarity of language in [two statutes] is, of course, a strong indication that the two statutes should be interpreted pari passu."). The definition of "venture" in the TVPRA closely tracks the definition of "enterprise" in the Racketeer Influenced and Corrupt Organizations Act, as both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) *with* 18 U.S.C. § 1961(4).

1  civil and criminal TVPRA sections by seeking to "transform section 1595(a)'s requirement of 'participation in a venture' into 'participation in a *sex trafficking* venture,'" misses the point. Opp. at 4, 6. To define "venture" for purposes of the TVPRA, the Court need only give effect to every word of Section 1595(a)—which imposes liability for participation in a venture *engaged in a Chapter 77 violation*. In short, there is no factual allegation suggesting that Marriott International participated in any venture with J.C.'s traffickers.

*Second*, the Opposition likewise deletes the words "participate in" from the statute. Throughout the Opposition and Amended Complaint, Plaintiff asserts that "participation" includes "failing to act," "failing to train the hotel's staff how to respond when someone is being trafficked," "failing to take proper security measures to combat sex trafficking," and so on. Opp. at 1, 4, 5, 9, 13; *see also* FAC ¶¶51-53. A central premise of Plaintiff's TVPRA claim is summed up in Paragraph 70 of the Amended Complaint: "Hospitality companies, including Choice, Hilton, and Marriott, can and should mandate that *all* staff working at *all* hotel properties across their brands complete sex trafficking training." (emphasis in original.)

As this Court has held, though, nonfeasance does not give rise to civil liability under the TVPRA. In *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010), this Court dismissed a Section 1595(a) claim against a man alleged to have been physically present when his father forced the plaintiffs into involuntary servitude, "remind[ing the plaintiffs] that they could not escape." Even though the claim against the father was adequately pled, this Court dismissed the claim against the son. *Id.* at *1-3; *see also Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (more than mere passive receipt of a benefit is required to satisfy TVPRA's participation requirement). The Opposition's attempt to distinguish this case in a footnote fails. *Shuvalova* did not involve a "claim under 18 U.S.C. section 1589;" instead, as the court noted, the plaintiffs asserted claims for violations of the TVPRA, including under Section 1595. 2010 WL 5387770, at *3 n.3 ("[a]lthough the TVPRA is a criminal statute, section 1595 provides a private right of action under the Act.")

Similarly and even more explicitly, the U.S. District Court for the Northern District of Georgia, in granting motions to dismiss in favor of franchisors, recently held that:

> TVPRA claims require Plaintiff to allege that the Defendants *participated in ventures* that were *engaged in sex trafficking* and that they each had three separate *types of knowledge* with respect to that venture: (1) knowledge as to the benefit received from trafficking; (2) knowledge as to 'assisting, supporting or facilitating' trafficking; and (3) knowledge that the Plaintiff was either a minor or subject to force.

*Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (internal citation omitted) (emphasis added) (Dkt. No. 275 at 8).[2] The Amended Complaint fails to plead sufficiently any of these elements, but especially the second. The recent *Jane Doe* decisions comport with the recent decisions of the Courts of Appeals who have analyzed the participation element of the TVPRA.[3] Without an overt act, some allegation of a defendant's actual knowledge of the trafficking is required to establish participation in a venture.[4] Otherwise the knowledge requirement is rendered meaningless.

*Lastly*, even the Plaintiff's authorities do not support their sweeping construction of the statute. For example, in *A.B.*, the Court explained:

> We disagree with A.B. to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We

---

[2] *See also Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020); *Jane Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020); and *Jane Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020).

[3] *See Bistline v. Parker,* 918 F.3d 849, 874 (10th Cir. 2019) (imposing TVPRA "venture" liability where complaint "recount[ed] in great detail" defendants' participation in "creating the intricate scheme" to enable forced labor and "were actively seeking to enforce" their co-venturer's control); *United States v. Afyare*, 632 F. App'x 272, 282 (6th Cir. 2016) (noting that "[p]articipation in a venture" requires more than "mere negative acquiescence"); *see also Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (venture liability sufficiently pled where complaint specifically referenced conduct by the co-venturers establishing their knowledge of the trafficking activity, including high-fiving traffickers and statements about "getting this thing going again").

[4] Even *Gilbert v. U.S. Olympic Comm.*, included allegations demonstrating the co-defendants' knowledge of the alleged venture beyond that of a mere commercial transaction in the ordinary course. The "perpetrator" defendants were alleged to have raped the victims, while the "beneficiary" defendants were alleged to have formed an enterprise for the express purpose of covering up the crimes, including by "*making false and corrupting statements to Congress*." 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019). Nothing close to that level of knowledge is alleged here, as it pertains to Marriott International.

> do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.

*Id.* at 11. Here, the Amended Complaint relies on "inartfully" pleaded allegations regarding general conduct in the hotel industry and alleged failures to prevent trafficking at hotels in both Northern California and Virginia over a period of 11 years, including some periods in which Plaintiff was apparently able to escape home to her parents. FAC ¶¶26-89, 109-118.

Likewise, the Opposition misplaces reliance on *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152, at *5 (S.D. Ohio Dec. 6, 2019) for the proposition that "allegations that defendants rented rooms to people it knew or should have known were engaged in sex trafficking" are "sufficient" to constitute participation. Opp. at 6. It omits, however, important factual allegations in that case, *e.g.:*

- "Plaintiff 'was discovered by hotel cleaning staff at the Defendant 6 Columbus tied to the guest room bed and despite her desperate pleas for help, the staff ignored her.' …

- '[A] female member of the hotel housekeeping staff … discovered the Plaintiff chained up in the bathroom of the hotel room out of which she was being trafficked' and 'despite the Plaintiff's desperate pleas for help, the staff person ignored her."

*Id.* at *3. Even applying the Southern District of Ohio's broader beneficiary theory (which this Court should *not* do, for the reasons discussed above), the allegations in this case are a far cry from constituting "red flags" which made it "impossible for [staff] not to notice the victimization of J.C." FAC ¶124. Simply put, the paucity of factual, Plaintiff-specific allegations in this case foreclose any finding that the Amended Complaint has adequately pled Marriott International's participation in a sex trafficking venture under any reading of the TVPRA.

### 2. Marriott International Neither Knew Nor Should Have Known That J.C.'s Traffickers Were Engaged In A Chapter 77 Violation.

For similar reasons, Marriott International neither knew nor should have known that J.C. was being trafficked at the Fremont Hotel. The Opposition's attempt to distinguish *Ratha v. Phattana Seafood Co., Ltd*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) on the grounds that it was decided on summary judgment falls flat. Opp. at 9. The underlying principle remains the same regardless of a case's procedural posture: a plaintiff must

plead, proffer evidence, and ultimately prove knowledge relevant to the trafficking of the individual *plaintiff*. Mere generalized knowledge or negligence in relation to sex trafficking, such as the "hospitality industry's" general alleged complicity in trafficking (FAC ¶¶26, 28-34, 45-47, 67, 69-73, 75-78, 89), references to other hotel companies not even parties to this case (FAC ¶73), and two reports about different crimes committed against unrelated victims in other states that had nothing to do with J.C. (FAC ¶107.j), are not enough.

While the Opposition objects that Plaintiff "includes a sufficient number of signs she alleges would have alerted Marriott . . . to her plight" (Opp. at 9), the Paragraphs cited cannot support a reasonable inference that Marriott International knew or even should have known of J.C.'s trafficking. Several paragraphs have nothing to do with Marriott International or any of its franchisees, and several paragraphs do not even identify the time or place where the alleged conduct occurred. *See* FAC ¶¶115, 119 (unidentified hotels), 120 (Comfort Inn), 122 (Embassy Suites). Most relate to actions of J.C.'s unnamed trafficker, but do not suggest (even by inference) that anyone employed by the Fremont Hotel knew or should have known about what was going on inside her hotel rooms. *See* FAC ¶¶111-124. Simply put, allegations of a single public altercation and allegations that J.C.'s trafficker rented rooms for numerous weeks at a time, paid for rooms in small increments, and requested an inordinate amount of towels, do not support a reasonable inference that Marriott International knew or should have known that J.C. was being victimized in a hotel room.

### 3.     Marriott International Did Not Knowingly Benefit From The Venture.

Lastly, Marriott International did not "knowingly" benefit from the illegal venture. The Amended Complaint alleges that Marriott International received a portion of revenues from the Fremont Hotel where J.C. was allegedly trafficked. Opp. at 4 (citing FAC). As discussed above, however, Marriott International did not know, nor should it have known, that any portion of that revenue was derived from criminals who were trafficking J.C. *See supra* Part II.A.2. The Opposition relies heavily on cases from the Southern District of Ohio for the proposition that the "knowingly benefits" element "merely requires that Defendant knowingly receives a financial benefit" and nothing more. Opp. at 5 (internal citation omitted). As discussed above (*supra* Part

II.A.1.), that court's reading of Section 1595(a) is incompatible with the text of the statute, effectively nullifying key words (here, "knowingly"). The better construction of this element is that it requires "knowledge as to the benefit received *from trafficking*," and allegations supporting that element (properly construed) are conspicuously absent. *Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (Dkt. No. 275 at 8) (emphasis added).

### B. The Amended Complaint Does Not Plead An Agency Relationship or a Joint Employer Relationship.

The Amended Complaint alleges an agency relationship with the Fremont Hotel at which J.C. was trafficked. FAC ¶¶14.f., 103, 107.g. But, to the extent that the Amended Complaint assumes that this relationship renders Marriott International vicariously liable for J.C.'s trafficking, that assumption is erroneous as a matter of California law.

The Opposition cites *Kuchta v. Allied Builders Corp.,* 21 Cal. App. 3d 541, 547 (1971) and other authorities for the proposition that a franchisee may be a franchisor's agent if the former retains the right to control the latter. Opp. at 10-11. Even under those authorities, Plaintiff's allegations that Marriott International could demand conformity to brand standards, conduct periodic inspections, and terminate the agreement if the Fremont Hotel failed to meet those standards – do not establish a "right to control" operations sufficient for an agency relationship.

The cases cited in Marriott International's Motion to Dismiss are instructive because they (1) applied principles of agency law similar to California's and (2) were decided on a motion to dismiss posture. These cases turned on the principal's right to control. *N.T. v. Taco Bell Corp.,* 411 F. Supp. 3d 1192, 1197 (D. Kan. 2019), which hinged on whether Taco Bell retained a "right of control" over its franchisee's daily operations, is illustrative. As here, the plaintiff cited the correct legal test and argued "that '[t]his [*i.e.*, retention of the right to control the franchisee's operations] is precisely what Plaintiff has asserted in her Complaint." *Id.* The court rejected that argument, finding that that Taco Bell's alleged duties to provide rules regarding operations, oversee operations, and ensure that franchisees maintained safe working environments, were "prime examples of the type of conclusory allegations that are insufficient, under *Twombly* and *Iqbal*, to

state a plausible claim." *Id.* Allegations of Marriott International's retention of control necessary to provide training and impose strict rules of operation are similarly conclusory. Opp. at 11-12. Moreover, "the imposition of quality and operational requirements by contract suggests that the franchisor does *not* intervene in the daily operation and management of the independent business of the franchisee." *N.T.*, 411 F. Supp. at 1197 (emphasis added, internal citation omitted). Thus, many of the Amended Complaint's allegations actively undercut any reasonable inference that Marriott International controls the daily operation and management of the Fremont Hotel, and nowhere are there factual allegations affirmatively supporting that dispositive predicate. Plaintiff argues that these cases "do not compel" dismissal, but does not explain why, instead simply summarizing the holding of each case in a few words. Opp. at 13-14.

Moreover, Marriott International cannot be held vicariously liable for the acts of the staff at the Fremont Hotel under a joint employer theory. Generally speaking, a joint employer relationship exists when an employer exercises authority over employment conditions which are within the area of mandatory collective bargaining. *Sun-Maid Growers of Ca. v. N.L.R.B.*, 618 F.3d 56, 59 (9th Cir. 1980). This relationship arises almost exclusively in the context of labor and employment statutes that are not at issue or applicable here. *Andrade v. Arby's Rest. Group Inc.*, No. 15-cv-03175 NC, 2015 WL 6689475, at *3 (N.D. Cal. Nov. 3, 2015) (alleged wage and hour claim). In fact, all the cases cited in support of Plaintiff's joint employer theory involve labor and employment disputes.[5] The Amended Complaint does not allege that Marriott International exercises authority over employment conditions at the Fremont Hotel.

---

[5] *See Salazar v. McDonald's Corp.*, 944 F.3d 1024 (9th Cir. 2019) (alleged denial of overtime, breaks, and other benefits in violation of California Labor Code); *Andrade*, 2015 WL 6689475 at *3 (N.D. Cal. Nov. 3, 2015) (alleged violations of California labor law, and federal wage and unemployment law); *Stewart v. Chick-Fil-A*, No. 19-cv-1780-CAB-BGS, 2020 WL 264578, at *1 (S.D. Cal. Jan. 17, 2020) (alleged age, gender, and retaliation discrimination under federal law); *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 169 (Cal. 2014) (alleged unpaid overtime, unlawful deductions, failure to provide breaks, and failure to reimburse for business expenses, among other statutory and wage order violations); *Browning-Ferris Indus. of Cal., Inc., v. Nat'l Labor Relations Bd.*, 911 F.3d 1195, 1199 (D.C. Cir. 2018) (involving a petition to represent a bargaining unit under the National Labor Relations Act).

### C.     The Amended Complaint Does Not Plead A Cal. Civ. Code § 52.5 Claim.

Plaintiff's claim under California Civil Code Section 52.5 is even weaker than the TVPRA claim, as it fails to allege the requisite element of intent. Plaintiff argues that Marriott International "attempts to insert an additional 'intent' element into the CTVPA where none exists." Opp. at 15. This argument fails for several reasons. *First*, requiring proof of intent is the only sensible reading of the statute, as required by every court to substantively analyze Section 52.5. *See Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D. Cal. 2016); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *15 (S.D. Cal. May 14, 2018); *Talib v. Guerrero*, No. CV 15-3825-JAK (DFM), 2015 WL 7428511, at *11 (C.D. Cal. Nov. 20, 2015) (second dismissal, with leave to amend); *Talib v. Guerrero*, No. CV 15-03825-JAK (DFM), 2016 WL 1470082, *11 (C.D. Cal. Mar. 14, 2016) (third dismissal, without leave to amend).[6] *Second*, because the statute does not expressly limit who may be sued, the Opposition's construction would allow a plaintiff to sue *anyone* upon showing that someone else committed a Section 236.1 violation—an absurd result. *Third*, the Opposition's citation to legislative history suggesting that the burden of proof should not be beyond a reasonable doubt (Opp. at 15) is a red herring, as the issue for purposes of this Motion to Dismiss is whether proof of the element of intent is required, not what the general burden of proof should be at trial. *Fourth* and last, even assuming that this Court construes Section 52.5 and the TVPRA synonymously—despite their radically different language—the Section 52.5 claim must be dismissed for the same reasons that the Complaint's TVPRA claim is fatally defective. *See supra* Part II.A.

### III.    CONCLUSION

For the foregoing reasons and those in its Motion to Dismiss, Marriott International respectfully requests that the Court grant its motion with prejudice.

---

[6] This interpretation is further supported by the California Civil Jury Instructions for Section 52.5 claims. *See* West's Committee on California Civil Jury Instructions, Cal. Jury Instr.--Civ. 11.49.6 (2017) (requiring proof of civil defendant's "intent" to prove a Section 52.5 claim).

Dated: May 13, 2020

DLA PIPER LLP (US)

By: _____
MICHAEL P. O'DAY (*pro hac vice*)
ELLEN E. DEW (*pro hac vice*)
AMANDA L. MORGAN
Attorneys for Defendant Marriott International