Nicole M. Perry, *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX  77002
Telephone:  +1.832.239.3939
Email:  nmperry@jonesday.com

Bethany K. Biesenthal, *Pro Hac Vice*
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL  60601
Telephone:  +1.312.782.3939
Email:  bbiesenthal@jonesday.com

Emily F. Knox (State Bar No. 307035)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  +1.415.626.3939
Email:  egoldbergknox@jonesday.com

Attorneys for Defendant
HILTON WORLDWIDE HOLDINGS INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C., an individual, | **Case No. 3:20-cv-00155-WHO** |
| Plaintiff, | **DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER RULES 12(B)(2), 12(B)(6), AND 21** |
| v. | |
| CHOICE HOTELS INTERNATIONAL, INC., HILTON WORLDWIDE HOLDINGS, INC., and MARRIOTT INTERNATIONAL, INC. | Date:       June 3, 2020 |
| | Time:       2:00 p.m. |
| Defendants**.** | Judge:      Hon. William H. Orrick |
| | Courtroom:  2 |

# TABLE OF CONTENTS

**Page**

I.    THE COURT LACKS PERSONAL JURISDICTION OVER HILTON ............................ 2

    A.    General Jurisdiction ......................................................................................... 2

    B.    Specific Jurisdiction ........................................................................................ 4

        1.    Specific jurisdiction is a claim-by-claim analysis ................................... 4

        2.    There remains no specific jurisdiction for the Virginia Claim ................ 5

        3.    There is no specific jurisdiction for the Sacramento Claims .................... 7

II.   HILTON IS AN IMPROPER DEFENDANT ............................................................. 8

    A.    The SAC does not plausibly allege that Hilton is directly liable ................... 8

    B.    The SAC does not plausibly allege that Hilton is indirectly liable ................ 9

III.  THE SAC FAILS TO STATE A CLAIM AGAINST HILTON ....................................... 10

    A.    The Virginia Claim does not state a claim under the TVPRA ..................... 10

    B.    The Sacramento Claims do not state a claim under the TVPRA or the California
        Civil Code .................................................................................................. 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

CASES

*A.B. v. Marriott Int'l, Inc.*,
   No. 19-5770, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020) ......................................9, 13, 14, 15

*Bautista v. Los Angeles Cty.*,
   216 F.3d 837 (9th Cir. 2000) .................................................................................................5

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019) ..............................................................................................13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .......................................................................................................2, 3, 7

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ............................................................................................3, 4

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ..............................................................................................................7

*Gilbert v. U.S. Olympic Comm.*,
   423 F. Supp. 3d 1112 (D. Colo. 2019) .................................................................................13

*H.H. v. G6 Hosp., LLC*,
   No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ....................................13, 16

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ..............................................................................................................6

*Jane Doe 2 v. Red Roof Inns, Inc.*,
   No. 1:19-cv-3841-WMR, 2020 WL 1872337 (N.D. Ga. Apr. 13, 2020) ................................12

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) .................................................................................16

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ...............................................................................................2

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*,
   196 F.3d 284 (1st Cir. 1999) ..................................................................................................4

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Ranza v. Nike, Inc.*,

4

    793 F.3d 1059 (9th Cir. 2015).........................................................................................3, 7, 8

5

*Ricchio v. McLean*,

    853 F.3d 553 (1st Cir. 2017)................................................................................................16

6

7

*Seiferth v. Helicopteros Atuneros, Inc.*,

    472 F.3d 266 (5th Cir. 2006)..................................................................................................4

8

9

*United States v. Bestfoods*,

    524 U.S. 51 (1998).................................................................................................................7

10

*United States v. Iroquois Apartments, Inc.*,

11

    21 F.R.D. 151 (E.D.N.Y. 1957)............................................................................................5

12

*Walden v. Fiore*,

13

    571 U.S. 277 (2014)...........................................................................................................6, 7

14

*Wells Fargo & Co. v. Wells Fargo Express Co.*,

15

    556 F.2d 406 (9th Cir. 1977)...............................................................................................13

16

*Williams v. Yamaha Motor Co.*,

    851 F.3d 1015 (9th Cir. 2017)...........................................................................................7, 8

17

**STATUTES**

18

18 U.S.C. § 1595(a) ...................................................................................................10, 11, 15

19

20

Cal. Civ. Code § 52.5 ......................................................................................................10, 16

21

Cal. Penal Code § 236.1 ...........................................................................................................16

22

**OTHER AUTHORITIES**

23

Fed. R. Civ. P. 10 ......................................................................................................................5

24

Fed. R. Civ. P. 12 ..................................................................................................1, 7, 10, 17

25

Fed. R. Civ. P. 21 ..........................................................................................................1, 10

26

Hilton Hotels Locator, https://www.hilton.com/en/locations/usa......................................3

27

28

1    The Opposition all but concedes that the original claim of alleged trafficking at a Hilton-

2    brand hotel in Virginia (the "Virginia Claim") cannot proceed in this Court against Hilton.  Instead,

3    the Opposition hangs its hat on two new claims of years-earlier trafficking at Hilton-brand hotels

4    in Sacramento (the "Sacramento Claims").  The Sacramento Claims—which comprise a single

5    paragraph—are exceedingly bare and provide even less substance than the Virginia Claim.  As a

6    result, all of Hilton's arguments regarding the Virginia Claim apply *a fortiori* to the Sacramento

7    Claims.  And the new Sacramento Claims do not confer personal jurisdiction over Hilton, render

8    Hilton a proper defendant, or cure the deficient claims on the merits.[1]

9    *First*, as to personal jurisdiction, the Opposition suggests that the Sacramento Claims can

10   save the Virginia Claim by providing for specific jurisdiction over Hilton.  But it is black-letter law

11   that "[t]here is no such thing as supplemental specific personal jurisdiction."  Wright & Miller, Fed.

12   Prac. & Proc. Civ. § 1351 n.30.  Instead, when a court exercises specific jurisdiction over a

13   defendant, the court needs an independent jurisdictional basis for each *claim* against the defendant.

14   In any event, this Court lacks personal jurisdiction over Hilton as to the new Sacramento Claims

15   for the same reasons it lacks personal jurisdiction over Hilton as to the Virginia Claim.

16   *Second*, the Sacramento Claims suffer from the same fundamental defect of which Plaintiff

17   has been aware for months as to the Virginia Claim: Hilton is the wrong defendant because it is a

18   holding company that conducts no substantive operations.  The SAC, like the pleadings that

19   preceded it, alleges no basis for piercing the corporate veil between Hilton and its subsidiaries that

20   perform substantive operations.  This defect warrants dismissal of Hilton as an improper defendant

21   under Rule 12(b)(6) or Rule 21.

22   *Third*, even setting all this aside, the SAC fails to state a claim for relief under either federal

23   or California law.  As to California law, the Opposition concedes that it does not apply to the

24   Virginia Claim.  Moreover, despite stating that it will press the California law argument as to the

25   Sacramento Claims, the Opposition never responds to Hilton's explanation why the California law

26   argument fails on the merits.  As to federal law, the Opposition never engages with Hilton's

27   ────────────────────

[1] On May 19, the Court granted Plaintiff's Motion for Leave to Amend Her First Amended Complaint and requested Hilton brief dismissal of the Second Amended Complaint (the "SAC") in

28   this Reply.  Accordingly, Hilton will refer to the SAC rather than the FAC throughout this Reply.

HILTON'S REPLY IN SUPPORT OF ITS
MOT. TO DISMISS THE SAC
CASE NO. 3:20-CV-0155-WHO

1  straightforward textual reading of the TVPRA, which demonstrates that the SAC fails to state a

2  claim.

3  Although Plaintiff has had three opportunities to plead her claims against Hilton, she has

4  failed to remedy obvious and longstanding fatal defects.  Therefore, the Court should dismiss the

5  SAC for lack of personal jurisdiction, dismiss with prejudice Hilton as an improper defendant, or

6  dismiss with prejudice the SAC for failure to state a claim.

7  **I.        THE COURT LACKS PERSONAL JURISDICTION OVER HILTON.**

8  The Court should dismiss the SAC against Hilton for lack of general and specific personal

9  jurisdiction over Hilton.

10  **A.   General Jurisdiction**

11  As to general jurisdiction, the Opposition accuses Hilton of "misstat[ing]" the holding in

12  *Daimler AG v. Bauman*, 571 U.S. 117 (2014), by suggesting that *Daimler* "limit[ed] general

13  jurisdiction to *only* those places where a corporation is incorporated or has its principal place of

14  business." Doc. 58 at 4–5 (emphasis added).  The Opposition misreads Hilton's motion to dismiss.

15  In line with the Supreme Court's reluctance to extend the concept of general jurisdiction beyond a

16  corporation's place of incorporation and principal place of business, Hilton stated that the "at

17  home" requirement "*generally*" may only be satisfied in those two places.  Doc. 43 at 5 (emphasis

18  added).  Indeed, "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere

19  else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S.

20  at 139 n.19).  This is not that exceptional case.

21  The Opposition retreads old ground in advancing theories soundly rejected by the Supreme

22  Court.  The Opposition argues that Hilton is "at home" in California because it "has over 350 hotels

23  under [its] brand in California," which "are registered to do business in California, licensed to

24  business in California, own property in California, pay taxes in California[,] and . . . are

25  unquestionably at home in this jurisdiction." Doc. 58 at 5.  This argument does not work for two

26  reasons.  To begin with, for purposes of personal jurisdiction, none of these hotels are *Hilton*—the

27  Delaware-incorporated, Virginia-based holding company that performs no substantive operating

28  activities.  The hotels have relationships with distant *subsidiaries* of Hilton.  *See* Wilcox Decl. ¶ 5

1  ("Any reference to Defendant Hilton Worldwide Holdings Inc. managing or performing certain

2  operations is a reference to a responsibility performed by one of Hilton Worldwide Holdings Inc.'s

3  subsidiaries."); Wilcox Decl., Ex. A at 3 (describing "a management and franchise segment" and

4  "an ownership segment").  Yet it is hornbook law that a subsidiary's contacts with a forum cannot

5  be imputed to a parent company unless there are well-pleaded allegations that the subsidiary is the

6  alter ego of the parent.  *See, e.g.*, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015).  The

7  SAC does not specifically allege the identities of these 350 hotels, or that they are alter egos of

8  Hilton or that their existence satisfies the demanding standard for alter-ego relationships, *see id.* at

9  1073–74.  Thus, they provide no basis for asserting that Hilton is "at home" in California.

10  More fundamentally, however, by relying on the number of Hilton-brand hotels in

11  California, the Opposition invites this Court to undertake the exact analysis that the Supreme Court

12  has forbidden.  In *Daimler*, the Supreme Court expressly *rejected* as "unacceptably grasping" the

13  plaintiffs' argument that general jurisdiction is proper "in every State in which a corporation

14  engages in a substantial, continuous, and systematic course of business."  571 U.S. at 137–38

15  (internal quotations omitted).  Yet that is exactly the Opposition's argument: Hilton is "at home"

16  in California because there is "a substantial, continuous, and systematic course of business" in the

17  form of 350 Hilton-brand hotels.  The best evidence that the Opposition cannot be correct is that

18  under the Opposition's view, Hilton would be "at home" in virtually all of the 50 States.  For

19  example, the hotel locator that the Opposition cites shows that there are well over 500 Hilton-brand

20  hotels in Texas; well over 300 Hilton-brand hotels in Florida; well over 200 Hilton-brand hotels in

21  Georgia; and well over 200 Hilton-brand hotels in New York.  *See* Hilton Hotels Locator,

22  https://www.hilton.com/en/locations/usa.  But "[a] corporation that operates in many places can

23  scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20.  That the Opposition

24  would render the general-jurisdiction test an empty letter illustrates the errors in the Opposition's

25  argument.  Hilton is not "at home" in California.

26  Neither is jurisdictional discovery warranted on this issue.  "[W]here pertinent facts bearing

27  on the question of jurisdiction are controverted or where a more satisfactory showing of the facts

28  is necessary," a court may order jurisdictional discovery, including an evidentiary hearing.  *Data*

1  *Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (citing *Wells Fargo*

2  *& Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).   But there are no

3  disputed facts.   Even taking Plaintiff's reliance on the 350 Hilton-brand hotels in California on its

4  own terms, the discussion above illustrates that there is no basis for asserting general jurisdiction

5  over Hilton.   Jurisdictional discovery is therefore unwarranted.

6  **B.   Specific Jurisdiction**

7  **1.   Specific jurisdiction is a claim-by-claim analysis.**

8  Realizing that this Court lacks jurisdiction over Hilton with regard to the Virginia Claim,

9  the Opposition alleges for the first time in the SAC that Plaintiff "was actually also trafficked at

10  two Hilton locations in Sacramento, California in addition to the Hilton branded Embassy Suites in

11  Virginia."   Doc. 58 at 8.   The Opposition appears to believe that these new claims would "moot"

12  Hilton's motion to dismiss, granting the Court blanket specific jurisdiction over Hilton for all

13  claims.   *Id.* at 18.   This is not how specific jurisdiction works.

14  Specific jurisdiction is a *claim-by-claim* analysis.   *Data Disc, Inc.*, 557 F.2d at 1289 n.8

15  ("[T]he court must have in personam jurisdiction over the defendant with respect to each claim.").[2]

16  The SAC's new Sacramento Claims—based on wholly different occurrences in different states at

17  different hotels and separated in time by two years—do not change the fact that the Court lacks

18  specific jurisdiction over Hilton regarding the Virginia Claim.

19  Plaintiff's attempt to elide this fact by lumping the separate claims together in a single

20  "Count" is also unavailing.   The conduct alleged at the three separate hotels involves separate

21  transactions or occurrences (separated in time by at least two years), thereby forming separate

22

23

24  [2] This principle is universally accepted in federal practice.  *See, e.g.*, *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) ("Questions of specific jurisdiction are always tied to the particular claims asserted."); *see also Seiferth v. Helicopteros Atuneros, Inc*.,

25  472 F.3d 266, 275 (5th Cir. 2006) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise

26  out of or relate to the defendant's forum contacts would violate the Due Process Clause."); *see also* Wright & Miller, Fed. Prac. & Proc. Civ. § 1351 n.30 ("There is no such thing as supplemental

27  specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not

28  provide the basis for another claim.").

1    *claims* as the term is used in the federal rules.  *See* Fed. R. Civ. P. 10(b).[3]  The upshot is that the

2    SAC violates the ordinary pleading rules by failing to separate out separate claims.  Thus, even if

3    there were specific jurisdiction over Hilton as to the new Sacramento Claims (there is not), that

4    would not confer specific jurisdiction over Hilton as to the Virginia Claim.

### 2.    There remains no specific jurisdiction for the Virginia Claim.

6    Neither the Opposition nor the SAC can salvage the Virginia Claim.  To be subject to

7    specific jurisdiction in a particular forum: (1) the defendant must purposefully direct his activities

8    toward the forum or purposefully avail himself of the privileges of conducting activities in the

9    forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3)

10   the exercise of jurisdiction must comport with fair play and substantial justice.  Doc. 43 at 6 (citing

11   cases).

12   As to the first prong, the Opposition argues that Hilton "clearly purposefully availed itself

13   of the privileges of conducting business in California by owning, operating and franchising

14   hundreds of hotel properties here[.]"  Doc. 58 at 7.  But, as Hilton explained in its motion to dismiss

15   (supported by the unrebutted Wilcox Declaration), *Hilton* does not own, operate, or franchise any

16   hotel locations; all such operations are conducted by subsidiaries of Hilton.  Despite having had

17   three bites at the apple to provide something more, the Opposition rests on bare, conclusory

18   allegations that are refuted by Hilton's unrebutted evidence.

19   As to the second prong, the Opposition argues that Plaintiff "has alleged a common course

20   of conduct which began in California with her trafficker and led to her being trafficked at the Hilton

21   property in Virginia."  *Id.* at 7.  But the Opposition ignores the two ways in which Hilton explained

22   that this argument is flawed.  First, "Plaintiff's claim *against Hilton* . . . arises wholly out of her

---

23

24      [3] "If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).  A separate factual transaction or occurrence remains the hallmark of what makes a claim, not the form in which the plaintiff has chosen to plead it.  *See United States v.*

25   *Iroquois Apartments, Inc.*, 21 F.R.D. 151, 153 (E.D.N.Y. 1957) ("It is obvious, and the courts have

26   pointed out on innumerable occasions, that [Rule 10] stresses the transaction or occurrence as the subject matter of a claim rather than the legal rights arising therefrom."); *see also Bautista v. Los*

27   *Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) ("Moreover, each plaintiff's claim being founded upon a separate transaction or occurrence, it is properly stated in a separate count . . . [because] a

28   separation facilitates the clear presentation of the matters set forth." (citations omitted)).

1    alleged sex trafficking at" the Virginia Hotel *in Alexandria, Virginia*.   Doc. 43 at 7 (emphasis

2    added).   "Hilton's only alleged purposeful contacts with California—the alleged control or

3    franchising of other hotel locations and other unspecified business—at most constitute

4    'unconnected activities' in California." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court*,

5    137 S. Ct. 1773, 1781 (2017)).   Second, although the Opposition invokes "a common course of

6    conduct which led to the location in Virginia," Doc. 58 at 8, "the trafficker's decision to traffic

7    Plaintiff in both California and Virginia was his and his alone," Doc. 43 at 7.   "And it is well

8    established that 'a defendant will not be haled into a jurisdiction solely as a result of . . . the

9    unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*,

10   471 U.S. 462, 475 (1985) (internal citations and quotations omitted)).   "The trafficker's unilateral

11   conduct thus cannot create specific jurisdiction over Hilton in California." *Id.*

12      Finally, as to the third prong, claiming that Plaintiff "is a California resident," the

13   Opposition argues that "it is not reasonable for plaintiff to bring her cause of action against Hilton

14   in a separate court based on these same facts and law."   Doc. 58 at 7.   To begin with, the SAC

15   expressly alleges that Plaintiff is *an Idaho resident*, not a California resident. SAC ¶ 11.   Moreover,

16   the question of fair play, substantial justice, and reasonableness is *defendant*-focused—whether it

17   would be fair to hale a *defendant* into a particular forum that a plaintiff has selected.   *See Int'l Shoe*

18   *Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)

19   ("[D]ue process requires only that in order to subject a defendant to a judgment in personam . . . he

20   have certain minimum contacts with [a forum] such that the maintenance of the suit does not offend

21   traditional notions of fair play and substantial justice." (quotation marks and citation omitted)).

22   Indeed, as the Supreme Court recently reiterated, "[d]ue process limits on the State's adjudicative

23   authority principally protect the liberty of the nonresident defendant—*not the convenience of*

24   *plaintiffs or third parties*."   *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).   The

25   Opposition's argument on this score thus misunderstands the final prong of the analysis.

26

27

28

**3.    There is no specific jurisdiction for the Sacramento Claims.**

Plaintiff's attempt to establish specific jurisdiction over Hilton through the Sacramento Claims fails for all of the same reasons.[4]  Indeed, Plaintiff ignores that the Hilton defendant sued here does not own, operate, manage, or franchise any hotels (including the Sacramento Hotels) because it is simply a holding company.  *See* Wilcox Decl.  Instead of addressing this fact, the SAC continues to act as if corporate identities do not matter.  But Plaintiff's silence cannot change that a parent corporation and its subsidiaries are separate entities with separate liabilities.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.").  And as explained above, for purposes of personal jurisdiction, it is equally fundamental that the jurisdictional contacts of subsidiaries and parents cannot be imputed to each other unless they are alter egos.  *See Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1022–25 (9th Cir. 2017) (recognizing that the rationale in *Daimler* and *Walden* undermines the Ninth Circuit's prior doctrine of allowing mere agency relationships to impute contacts for specific jurisdiction purposes); *see also Ranza*, 793 F.3d at 1070–71 (only alter ego status permits imputing contacts for general jurisdiction).  Because Hilton conducts no substantive operating activities, Plaintiff's personal-jurisdiction theory for the Sacramento Claims requires imputing the contacts of other entities or subsidiaries to Hilton.

The SAC is Plaintiff's third bite at the apple; yet, like the pleadings that came before it, the SAC fails to sufficiently allege an alter-ego theory.  It alleges in conclusory fashion that "Hilton owns, supervises, and/or operates the [Sacramento Hotels]," SAC ¶¶ 13(g), 13(h), 109(b), 109(c).  But Hilton submitted unrebutted evidence months ago that unequivocally demonstrated that this allegation is false.  *See* Wilcox Decl.; *see also Williams*, 851 F.3d at 1023 (crediting that "[a]ppellees submitted unrebutted evidence in support of their Rule 12(b)(2) motion that [appellee] does not conduct any activities within the state of California, nor does it target California via marketing or advertising").  Three complaints later, the SAC contains *no* allegations that form a

---

[4] The Sacramento Claims also fail to plausibly allege a claim under the TVPRA.  *See infra* Section III.B.

1    basis to impute California contacts to Hilton under an alter-ego theory with the Sacramento Hotels.[5]

2    Where, as here, a complaint fails to "plead sufficient facts to make out a prima facie case" that a

3    parent and subsidiary are "alter egos," the plaintiff has failed to properly allege an alter-ego theory

4    and the subsidiary's contacts may not be imputed to the parent.  *Id.* at 1022.

5          For all of these reasons, the Court should dismiss the SAC against Hilton for lack of

6    personal jurisdiction.

7    **II.      HILTON IS AN IMPROPER DEFENDANT.**

8          Even if this Court had personal jurisdiction over Hilton, dismissal would still be in order

9    because Hilton is an improper defendant.  As Hilton has explained at length, it is a holding company

10   based in Virginia that manages and issues stock and conducts no substantive operating activities.

11   Doc. 43 at 8.  The Opposition offers no adequate response to the fact that there are no plausible

12   allegations that Hilton is directly liable in this case, neither are there any allegations that the

13   corporate veil between Hilton and any of its subsidiaries should be pierced.

14         **A.      The SAC does not plausibly allege that Hilton is directly liable.**

15         The sole page that the Opposition dedicates to Hilton's alleged direct liability illustrates that

16   the SAC turns only on a theory of indirect liability.  Doc. 58 at 9.  To begin with, although the

17   Opposition insists that "Hilton is directly liable under the TVPRA because it facilitated the venture

18   that led to J.C.'s injuries and directly financially benefited financially [sic] from this venture," it is

19   telling that the Opposition does not attempt to assess Hilton's direct liability under the elements of

20   a TVPRA claim.  *Id.*  As Hilton explained, "to state a claim under the TVPRA, a plaintiff must

21   sufficiently allege that a defendant: (1) 'knowingly benefit[ed], financially or by receiving anything

22   of value from,' (2) 'participation in a venture,' (3) 'which that person knew or should have known

23   has engaged in an act in violation of this chapter.'"  Doc. 43 at 8 (quoting 18 U.S.C. § 1595(a)).

24   Hilton explained at length how the SAC fails to allege that Hilton itself is directly liable under these

25   _____

26   [5] At one point, the Opposition states that "Plaintiff has also alleged that Hilton is the 'alter
     ego' of the" Virginia Hotel.  Doc. 58 at 10.  That is not true.  The only time the words "alter ego"
27   appear in the SAC is when it alleges that "Marriott holds out Fremont Marriott Silicon Valley hotel
     to the public as its direct alter-ego -- each possessing authority to act on the other's behalf."  SAC
28   ¶ 108(h).  Even beyond that, however, the SAC never sufficiently pleads factual bases to support
     the ordinary alter ego factors as to Hilton.  *See Ranza*, 793 F.3d at 1073–74.

1    elements, *id.* at 8–9, and the Opposition does not point to any well-pled allegations showing that

2    Hilton falls within those elements.

3         Instead, the Opposition asserts that Hilton is directly liable because "[i]t is Hilton that

4    instructs [hotel] managers and employees how to respond, if at all, to signs of human trafficking."

5    Doc. 58 at 9.  And it is "the importance of the Hilton brand" and "the consistency in their response

6    to human trafficking" that "gives rise to [Hilton's] direct liability for violations of the TVPRA."

7    *Id.*  As an initial matter, the Opposition misreads Hilton's Form 10-K, which states that "Hilton"

8    and "we" in the 10-K refer to Hilton "together with all of its consolidated subsidiaries"—not Hilton

9    alone.  Wilcox Decl., Ex. A at 2.  And the Wilcox Declaration makes clear that Hilton "conducts

10   no substantive operating activities" and any reference to Hilton "managing or performing certain

11   operations is a reference to a responsibility performed by one of [Hilton's] subsidiaries."  Wilcox

12   Decl. ¶¶ 4–5.  More importantly, Plaintiff's assertions again say nothing about the elements of a

13   TVPRA claim.  In fact, one of Plaintiff's own cases specifically rejects the notion that the TVPRA

14   requires a corporation to affirmatively combat trafficking.  *See A.B. v. Marriott Int'l, Inc.*, No. 19-

15   5770, 2020 WL 1939678, at *8 (E.D. Pa. Apr. 22, 2020) ("We do not read the Act as requiring

16   hotels (and other businesses or professions possibly earning money from trafficking) to

17   affirmatively stop the trafficking.").  The SAC thus fails to sufficiently allege that Hilton is directly

18   liable.

19        **B.      The SAC does not plausibly allege that Hilton is indirectly liable.**

20        The Opposition also appears to misunderstand why the SAC fails to allege that Hilton is

21   *indirectly* liable.  The Opposition cycles through various statements of law concerning principal-

22   agent relationships and franchise relationships before concluding that "we do not currently know

23   the precise extent to which Hilton controlled the actions of employees at [the Virginia Hotel]."

24   Doc. 58 at 10–11.  But this misses the problem Hilton identified and the Wilcox Declaration

25   confirms, which is that there is no direct relationship between Hilton and the Virginia Hotel or

26   Sacramento Hotels.  All substantive operations are performed by subsidiaries of Hilton.  And "the

27   [SAC] fails to allege a basis for piercing the corporate veil between the subsidiary and the Hilton

28   defendant named in this case, Hilton Worldwide Holdings Inc."  Doc. 43 at 10.

HILTON'S REPLY IN SUPPORT OF ITS
MOT. TO DISMISS THE SAC
CASE NO. 3:20-CV-0155-WHO

In a similar vein, the Opposition purports to "incorporate[] by reference the discussion on prior court holdings finding individual hotels as agents of their national brands found in Plaintiff's Opposition to Marriott's Motion to Dismiss at p. 12, ll. 14 – 28." Doc. 58 at 11.  But none of those cases involved or considered the veil-piercing issue that Hilton has raised, particularly where, as here, the defendant is separated from the subject hotel by layers of subsidiaries.

"These deficiencies, together with the fact that Hilton is merely a holding company, either compel dismissal of Hilton as an improper defendant under Rule 21 or compel dismissal of the [SAC] against Hilton under Rule 12(b)(6)." Doc. 43 at 10 (citing cases).

## III.     THE SAC FAILS TO STATE A CLAIM AGAINST HILTON.

Beyond the personal-jurisdiction and improper-defendant issues, the Opposition fails to overcome the SAC's deficient allegations on the merits.  To the contrary, the Opposition now "concedes Hilton's last argument that Cal. Civ. Code 52.5(a) does not apply to conduct at" the Virginia Hotel.  Doc. 58 at 4.  What remain, therefore, are the TVPRA claim concerning alleged trafficking at the Virginia Hotel, and the TVPRA and California Civil Code claims concerning alleged trafficking at the Sacramento Hotels.

### A.   The Virginia Claim does not state a claim under the TVPRA.

As relevant here, a TVPRA plaintiff must sufficiently allege that a defendant: (1) "knowingly benefit[ed], financially or by receiving anything of value from," (2) "participation in a venture," (3) "which that person knew or should have known has engaged in an act in violation of [Section 1591]." 18 U.S.C. § 1595(a).

Hilton's position on the statutory text is simple:

- *Participation in a venture*: Drawing from the plain text of Section 1595(a), Hilton's position is that "participation in a venture" means "(1) entering into an agreement with a common purpose, and (2) performing an overt act in furtherance of that common purpose." Doc. 43 at 11–12.[6]

- *Knew or should have known*: Drawing from the plain text of Section 1591, Hilton's position is that the defendant knew or should have known that the venture engaged in "maintaining and harboring Plaintiff" and "used force, fraud, or coercion to force

---

[6] Despite this clear statement of Hilton's interpretation, the Opposition claims that, "[i]n Hilton's view, the definition of 'participation in a venture' included in section 1591(e)(4) (the criminal statute) should be the controlling measure of a hotel's liability." Doc. 58 at 14.  Hilton has never made this argument, and it is not Hilton's position.

1   Plaintiff to engage in commercial sex acts[.]" *Id.* at 14.

2   - *Knowingly benefits from*: Drawing on the plain text of Section 1595(a), Hilton's
3   position is that the defendant must have "known all the circumstances underlying
    satisfaction of the other two Section 1595(a) elements and received (and retained) a
    benefit that the defendant knows to be tied to those circumstances." *Id.* at 16.
4

5   And Hilton's position on applying the statutory text in this case is equally simple.  There are no

6   well-pleaded allegations that any Hilton-related entity (1) entered into an agreement with Plaintiff's

7   trafficker with a common purpose or performed an overt act in furtherance of that common purpose

8   (to the contrary, the SAC expressly pleads that the Virginia Hotel asked Plaintiff and the trafficker

9   *to leave on multiple occasions*, SAC ¶ 124); (2) knew or should have known that any such venture

10  engaged in maintaining and harboring Plaintiff and used force, fraud, or coercion to force Plaintiff

11  to engage in commercial sex acts; or (3) knew such facts and circumstances and received and

12  retained a benefit from those facts and circumstances.  The Opposition's arguments in response

13  misunderstand and mischaracterize Hilton's position, the statutory text, and the related allegations.

14  **First**, the Opposition—like the decisions from the Southern District of Ohio and the Eastern

15  District of Pennsylvania on which the Opposition relies—rests on a fundamental misunderstanding

16  of *participation in a venture*.  The Opposition complains that "Hilton attempts to transform section

17  1595(a)'s requirement of 'participation in a venture' into 'participation in a **sex trafficking**

18  venture,' ignoring the plain language of the statute in favor of a Black's Law Dictionary plain

19  language interpretation." Doc. 58 at 13.  The thrust of the Opposition—and the decisions on which

20  it relies—is that Section 1595(a) is not limited only to sex-trafficking ventures.  Otherwise, the

21  requirement that a defendant participate in a sex-trafficking venture would render ineffective the

22  related requirement that the defendant know *or should have known* that the venture engaged in sex

23  trafficking—because, by virtue of his participation in a sex-trafficking venture, a defendant will

24  always necessarily have known of the sex trafficking.  The Opposition—and the decisions on which

25  it relies—protests that this *de facto* "actual knowledge" requirement cannot be correct because it

26  would read "or should have known" out of Section 1595(a).  Thus, these decisions have permitted

27  cases against hotels to go forward based only on allegations that the hotels should have known of

28  alleged sex trafficking that criminals perpetrated on the premises.  But this reasoning is flawed for

1    several reasons.

2          To begin with, the reasoning misses the fact that plaintiffs, including this Plaintiff, have

3    alleged *sex-trafficking ventures*, not hypothetical non-sex-trafficking ventures.   Indeed, the

4    Opposition plainly alleges that Hilton "aided and engaged with her trafficker in his *sex trafficking*

5    *venture*."   *Id.* at 13 (quoting SAC ¶ 128) (emphasis added).   As alleged, therefore, the relevant

6    venture *is* a sex-trafficking venture, which renders academic any discussion about how the TVPRA

7    applies to non-sex-trafficking ventures.   The upshot is that Plaintiff must sufficiently allege that a

8    Hilton-related entity entered into an agreement with Plaintiff's trafficker to traffic Plaintiff and

9    performed an overt act to further the sex trafficking—and, as a result, Plaintiff must sufficiently

10   allege Hilton's actual knowledge of Plaintiff's sex trafficking.   After all, a defendant cannot be

11   deemed to have agreed to commit sex trafficking that the defendant knew nothing about.   *See Jane*

12   *Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841-WMR, 2020 WL 1872337, at *3 (N.D. Ga. Apr.

13   13, 2020) (one of four related orders emphasizing that "Plaintiff's TVPRA claims require Plaintiff

14   to allege . . . three separate types of knowledge" related to Plaintiff's trafficking).

15         The Opposition's reasoning also overlooks Hilton's direct answer to the false dilemma

16   above.  Doc. 43 at 13–14 n.11.  If (unlike this case) a plaintiff alleges that a TVPRA defendant

17   participated in a *non*-sex-trafficking venture, the "should have known" language has substantial

18   work to do under the ordinary meaning of the statutory text.   The question would remain whether

19   the defendant (1) entered into an agreement with a common purpose, and (2) performed an overt

20   act in furtherance of that agreement.   And the plaintiff would have to show that the defendant

21   entered into an agreement with a common purpose (say, a nail salon business venture) and

22   performed an overt act in furtherance of that agreement that the defendant knew *or should have*

23   *known* additionally furthered sex trafficking.   There, a defendant's actual knowledge of sex

24   trafficking would not be required; it would be enough that, while participating in an otherwise

25   innocuous venture, the defendant should have known that the venture was engaged in sex

26   trafficking.

27         Like the decisions on which it relies, the Opposition rests on flawed reasoning by failing to

28   ask the basic threshold question in any statutory interpretation case: what is the ordinary meaning

HILTON'S REPLY IN SUPPORT OF ITS
MOT. TO DISMISS THE SAC
CASE NO. 3:20-CV-0155-WHO

of the statutory text?  Relying on dictionary definitions and Supreme Court precedents, Hilton has articulated the ordinary meaning of *participation in a venture*—and, as Hilton explained in detail, the SAC fails to sufficiently allege Hilton's participation in a venture.  *Id.* at 11–13.[7]

**Second**, even if this Court opted to consider the decisions in *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) and *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019), which the Opposition invokes at length, those decisions are night-and-day different than the present case.  In *H.H.*, the plaintiff alleged that hotel staff discovered her "tied to the guest room bed" and "chained up in the bathroom," yet ignored her pleas for help.  2019 WL 6682152, at *3.  And in *Bistline*, the plaintiffs alleged in detail that the defendant attorneys were specifically retained to (and did in fact) create an intricate legal scheme to enable and shield forced labor.  918 F.3d at 854–55.  Against these stark facts, the Opposition cannot reasonably argue that they are "less" in quantity and detail than what the SAC alleges in a single paragraph concerning alleged trafficking at the Virginia Hotel.  Doc. 58 at 13.  And it bears repeating that the SAC itself alleges that the Virginia Hotel employees asked Plaintiff and her trafficker *to leave on multiple occasions*.  SAC ¶ 124.  These decisions thus do not carry the day for Plaintiff.[8]

**Third**, for the same reason the Opposition misunderstands the *participation in a venture* element, it also misunderstands the *knew or should have known* element as applied in this case.  Indeed, the Opposition argues that Plaintiff "only needs to prove that Hilton 'should have known'

---

[7] This failure to wrestle with the ordinary meaning of the statutory text is what led the court in *A.B.* astray when it followed the decisions from Chief Judge Marbley in the Southern District of Ohio.  2020 WL 1939678, at *14–18.  The court never wrestled with the ordinary meaning of *participation in a venture* or articulated a clear interpretation of the plain text.  *Cf.* Doc. 43 at 11–13.  For purposes of the *knew or should have known* element, the court never measured the conduct of the alleged venture against the actual elements of sex trafficking under Section 1591(a).  *Cf. id.* at 14–15.  And the court never considered the ordinary meaning of the *knowingly benefits from* element and the clear requirement of a causal connection.  *Cf. id.* at 16–17.

[8] The same is true of *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112 (D. Colo. 2019), and *A.B.*, 2020 WL 1939678.  In *Gilbert*, the "perpetrator" defendants were alleged to have raped the victims, and the "beneficiary" defendants were alleged to have created an enterprise for the *express* purpose of covering up the crimes, including by "making false and corrupting statements to Congress."  423 F. Supp. 3d at 1122 (citation omitted).  Nothing of the sort is alleged in this case as to Hilton.  And in *A.B.*, the court repeatedly emphasized the plaintiff's allegation that "[t]he staff at each of the three hotels saw signs of her visible injury and were aware of frequent loud altercations as well as constant attacks on her by her trafficker loud enough for staff and hotel patrons to hear."  2020 WL 1939678, at *2, 14, 17 (quotation marks omitted).  Again, nothing of the sort is alleged in this case as to Hilton.

about the nature of the venture, and this factor is akin to a negligence standard. Evidence of actual knowledge or conspiracy is not required." Doc. 58 at 15 (citations omitted). As explained above, this might be true in a case where a plaintiff alleged a defendant's participation in a *non*-sex-trafficking venture. But that is not this case. Because the SAC alleges that Hilton participated in a *sex-trafficking* venture, the SAC necessarily must sufficiently allege Hilton's actual knowledge of Plaintiff's trafficking. Yet the Opposition does not (and could not) attempt to establish Hilton's actual knowledge of Plaintiff's trafficking.

In any event, the SAC does not sufficiently allege that Hilton should have known of Plaintiff's trafficking. The Opposition points to allegations that Hilton was aware of trafficking "generally." *Id.* at 15–16. Hilton has already explained why these allegations are insufficient. Doc. 43 at 15. Beyond that, however, the Opposition's own case establishes that these allegations are insufficient. *See A.B.*, 2020 WL 1939678, at *17 ("It is true A.B.'s amended complaint inartfully includes numerous allegations regarding the problem of sex trafficking generally, the use of hotel and motel rooms as a venue for trafficking, efforts by private organizations and the Department of Homeland Security to combat human trafficking, and news reports on sex trafficking incidents involving other victims and other hotels. If A.B. made only these allegations, we may agree with Marriott [that the allegations were insufficient].").

The Opposition also claims to have identified "a sufficient number of signs she alleges would have alerted Hilton (if it was a diligent hotel brand) to her plight." Doc. 58 at 16. There are a number of inaccuracies in this argument that require correction. First, the Opposition three times asserts that Plaintiff was trafficked at the Virginia Hotel "over an eleven-year period." *Id.* at 15, 16, 17. That contradicts the SAC, which alleges that Plaintiff was trafficked *in total* for 11 years at various hotels throughout the country, not that Plaintiff was trafficked for 11 years at the Virginia Hotel. SAC ¶ 11; *cf id.* ¶ 124. Second, the Opposition claims "at least one occasion [where] there were altercations between victims in public areas of the hotel." Doc. 58 at 16. None of the cited paragraphs in the FAC or SAC support this assertion. The only paragraph that mentions Hilton and an altercation is Paragraph 134, which alleges that "Hilton knew, or should have known, that [Plaintiff] was being trafficked because . . . she was often the victim of loud altercations while

seemingly never allowed to be alone." SAC ¶ 134.  This allegation says nothing about public areas of the Virginia Hotel or whether hotel employees witnessed the altercations.  Third, instead of addressing Hilton's explanation of how Paragraph 124—the only paragraph in the SAC that actually discusses Plaintiff's alleged trafficking at the Virginia Hotel—is deficient, the Opposition mischaracterizes Hilton as hinging its argument on the fact that "these signs [of trafficking] were observable only to the [Virginia Hotel] employees."  Doc. 58 at 16.  Although Hilton made this argument with respect to why Hilton itself is not directly liable, Doc. 43 at 7–9, Hilton's argument on the merits of the TVPRA claim contained no such qualification.  Rather, the flaw that Hilton explained in detail was that the SAC fails to allege that any Hilton-related entity knew or should have known "a trafficker was maintaining or harboring Plaintiff" or that "a trafficker used force, fraud, or coercion to force Plaintiff to engage in commercial sex acts at the [Virginia Hotel]."  *Id.* at 14–15.  The Opposition offers no response on that score.

**Fourth**, for all of the foregoing reasons, the Opposition misunderstands the *knowingly benefits from* element.  Characterizing Hilton's plain-text reading as "callous[]," Doc. 58 at 17, the Opposition advances three arguments.  The first is that "Plaintiff has provided ample evidence that Hilton **was** on notice of [Plaintiff's] predicament."  *Id.*  As just explained, that is incorrect.  The second is that "section 1595(a) does not impose a requirement of actual knowledge of the sex trafficking."  *Id.*  As just explained, that is incorrect in this case, which involves an alleged *sex-trafficking* venture.  And the third is that "section 1595 does not require that that [sic] the benefit be received 'on account of' the sex trafficking itself, but only that Hilton knowingly benefit financially or receive anything of value."  *Id.*  Yet the Opposition does not engage with Hilton's explanation that the words "knowingly" and "from" indicate that there must be knowledge of a causal relationship between the participation in a venture (here, the sex-trafficking venture) and the benefit received.  Doc. 43 at 16–17.  Hilton's alleged receipt of a portion of a rental fee without more cannot constitute a *knowing benefit from* participation in the alleged venture.  And the SAC does not sufficiently allege anything more.

**B.   The Sacramento Claims do not state a claim under the TVPRA or the California Civil Code.**

The new Sacramento Claims suffer from all the same deficiencies that plague the Virginia Claim and thus must be dismissed for the same reasons the Virginia Claim must be dismissed.  In addition, the Sacramento Claims are even more bare than the Virginia Claim.  Most glaringly, the single substantive paragraph addressing Plaintiff's alleged trafficking at the Sacramento Hotels does not plausibly plead that Hilton *participated* in a sex trafficking venture, nor that Hilton *knew or should have known* of Plaintiff's trafficking.  *See* SAC ¶ 122.  Every TVPRA case that has moved beyond the dismissal stage has required more.[9]  It does not follow from Paragraph 122 of the SAC that Hilton had actual or constructive knowledge of a sex trafficking venture because Plaintiff was "force[d] . . . into sexual exchanges . . . several times," and "a steady stream of men, who were not registered hotel guests, would enter and leave the hotel."

As for Plaintiff's claims under California Civil Code Section 52.5 insofar as Plaintiff argues they arose at the Sacramento Hotels, the SAC still fails to state a claim against Hilton for the unrebutted reasons identified in Hilton's motion to dismiss.  *See* Dkt. 43 at 17–18.  Section 52.5 only provides a cause of action against actual perpetrators of trafficking—in other words, those who violate California Penal Code Section 236.1.   The statute simply does not contain "participation in a venture" liability analogous to the TVPRA.  And finally, Section 236.1 violations are specific intent crimes and the SAC does not remotely plead that Hilton was the perpetrator of trafficking, or acted with criminal intent as required by Section 236.1.

---

[9] *See, e.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (allegations contained strong evidence that the traffickers and hotel operators were working together to traffic the plaintiff for profit, including a past business relationship between the trafficker and hotel owner, "high-fives" while discussing "getting this thing going again," and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [her] obvious physical deterioration"); *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (among other allegations, trafficker requested rooms near exit doors and instructed plaintiff to refuse housekeeping services while filling the trash cans with an extraordinary number of used condoms; and hotel staff ignored "her desperate pleas and screams for help, after being beaten or choked"); *see also H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *1 (S.D. Ohio Dec. 6, 2019) (in one hotel, hotel staff ignored plaintiff's cries for help after finding her tied to the hotel bed; in another hotel, hotel staff ignored her pleas for help when they discovered her chained up in the bathroom).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

This Court lacks personal jurisdiction over Hilton.  Hilton also is an improper defendant in this case, and the SAC falls short of the Rule 12(b)(6) standard by failing to state a claim for relief on any claim.  For the foregoing reasons, Hilton respectfully requests that the Court dismiss the SAC against Hilton for lack of personal jurisdiction, dismiss Hilton as an improper defendant, or dismiss the SAC against Hilton for failure to state a claim for relief.  Plaintiff has had three chances to plead a sufficient case against Hilton, and has not done so.  Further leave to amend would be futile, so unless the Court chooses to dismiss on personal jurisdiction grounds, Hilton respectfully asks that the Court dismiss the claims with prejudice.

Dated:  May 26, 2020

Respectfully submitted,

JONES DAY

By:   /s/ Nicole M. Perry
Nicole M. Perry
Emily F. Knox
Bethany K. Biesenthal

Attorneys for Defendant
HILTON WORLDWIDE HOLDINGS INC.

HILTON'S REPLY IN SUPPORT OF ITS
MOT. TO DISMISS THE SAC
CASE NO. 3:20-CV-0155-WHO