Tiffany R. Ellis (*Pro hac vice*)
**WEITZ & LUXENBERG, P.C.**
3100 W. Grand Blvd.
24th Floor
Detroit, MI 48202
(313) 315-3151
tellis@weitzlux.com

Melinda Davis Nokes, Bar No. 167787
**WEITZ & LUXENBERG, P.C.**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 247-0921
Facsimile: (310) 786-9927
mnokes@weitzlux.com

Lori E. Andrus, Bar No. 205816
Jennie Lee Anderson, Bar No. 203586
Audrey Siegel, Bar No. 286771
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
audrey.siegel@andrusanderson.com

*Attorneys for Plaintiff J.C., proceeding under pseudonym*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| J.C., an individual,<br><br>     Plaintiff,<br><br>  vs.<br><br>CHOICE HOTELS INTERNATIONAL, INC.;<br>HILTON WORLDWIDE HOLDINGS, INC;<br>MARRIOTT INTERNATIONAL, INC.<br><br>     Defendants. | Case No.: 3:20-cv-00155-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date: September 23, 2020<br>Time: 2:00 p.m.<br>Ctrm.: 2<br>Judge: Hon. William H. Orrick |

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND STATEMENT OF FACTS .................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD ............ 3

   A.   RULE 12(B)(6) – MOTION TO DISMISS.................................................. 3

III. ARGUMENT.................................................................................... 4

   A.   PLAINTIFF'S COMPLAINT SUFFICIENTLY AND PLAUSIBLY PLEADS A CLAIM AGAINST CHOICE FOR DIRECT LIABILITY UNDER 18 U.S.C. § 1595(A).................................... 4

     1.   Choice Knowingly Benefited in Violation of § 1595 ........................ 6

     2.   Choice Participated in the Sex Trafficking Venture of Plaintiff.............. 8

     3.   Choice Knew or Should Have Known that the Venture Engaged in Sex Trafficking........ 11

   B.   PLAINTIFF'S COMPLAINT SUFFICIENTLY AND PLAUSIBLY PLEADS CHOICE IS VICARIOUSLY LIABLE.................................................................... 14

     1.   Secondary Liability is Available Under the TVPRA........................ 15

     2.   Plaintiff Has Plausibly Alleged Agency Under Both Federal Common Law and California's Law of Agency................................................. 16

     3.   Plaintiff Has Adequately Alleged Choice Ratified the Conduct of its Santa Cruz Comfort Inn Hotel ................................................................ 21

IV.  PLAINTIFF'S AMENDED COMPLAINT RELIES ON CASE-SPECIFIC FACTS AND IS NOT AN IMPERMISSIBLE GROUP PLEADING ........................................ 22

V.   CONCLUSION................................................................................. 22

1

### <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*A.B. v. Marriott International, Inc.*, — F.Supp.3d —, 2020 WL 1939678 at \*17 (E.D. Pa April 22,

4

2020) ("Exhibit B")......................................................................................... 1, 9, 12, 15

5

*A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261 (S.D. Ohio, Jun. 16, 2020) ......................................... 9

6

7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ......................................................................... 3

8

*B.M. v. Wyndham Hotels & Resorts, Inc. et. al.*, No. 5:20-cv-00656-BLF, Dkt. 80 at \*7 (N.D. Cal.

9

July 30, 2020) ("Exhibit A")................................................ 1, 6, 7, 8, 9, 10, 14, 15, 19

10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572, (2007) ......................................................... 4

11

*Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) ........................................ 12

12

*Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992) ................................................ 14, 17

13

*Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006).................. 16

14

*Doe 1 v. Red Roof Inns, Inc.*, No. 193840, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020).................. 9

15

*Doe 2 v. Red Roof Inns, Inc.*, NO. 19-3841, 2020 WL 1872337 (N.D. Ga., Apr. 13, 2020)............... 9

16

*Doe 3 v. Red Roof Inns, Inc.*, No. 19-3843, 2020 WL 1872333 (N.D. Ga., Apr. 13, 2020)................ 9

17

*Doe 4 v. Red Roof Inns, Inc.*, No. 19-3845, 2020 W.L. 1872336 (N.D. Ga., Apr. 13, 2020)............... 9

18

*Gilbert v. United States Olympic Committee*, 423 F.Supp.3d 1112, 1137 (D. Colo. 2019) ................ 7

19

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016)..... 16

20

*H.H. v. G6 Hospitality, LLC*, No. 19-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019 ......... 9, 10, 12

21

*Henderson v. U.S. Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019)..................................... 16, 20

22

*Holloway v. United States*, 526 U.S. 1, 6 (1999) ............................................................... 5

23

*Jai Sai Baba, LLC, et al. v. Choice Hotels International, Inc., et al.*, Case 2:20-cv-02823, Dkt. 1

24

(E.D. Pa. June 12, 2020)…………………………………………………………………..19

25

26

27

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

*Jane Doe S.W. vs. Lorain-Elyria Motel, Inc., et al.*, No. 2:19-cv-01194-ALM (S.D. Ohio Mar. 16, 2020) ............................................................................................................................ 1, 7, 9

*Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 289 (D. Conn. 2013) ........................................ 8, 9, 15

*Jones v. Royal Admin. Servs., Inc.*, 888 F.3d 443, 450-451 (9th Cir. 2018).......................... 17, 18, 19

*Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 345 (S.D.N.Y. 2018) ...................................................... 16

*Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 29, 2018).. 13

*Lomeli v. Jackson Hewitt, Inc.*, No. 217CV02899-ODW (KSx), 2018 WL 1010268, at *7 (C.D. Cal. Feb. 20, 2018) ......................................................................................................................... 17

*M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F.Supp.3d 959, 968-971 (S.D. Ohio Oct. 7, 2019) 8, 9, 12, 13, 15, 20

*M.L vs. Craigslist Inc., et al.*, No. 3:19-cv-06153-BHS-TLF (W.D. Wa. Apr. 17, 2020) ("Exhibit D") ........................................................................................................................................... 1, 9

*McCollum v. Friendly Hills Travel Center* (1985) 172 Cal. App. 3d 83, 91 (1985) ........................ 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)................................ 3

*Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-1127-WQH-KSC 2018 WL 325112 (S.D. Cal. Jan. 5, 2018) ................................................................................................................................ 17

*Peyton v. Rowe*, 391 U.S. 54, 65 (1968) ........................................................................................ 5

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)........................................................................... 9

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985) ...................................................... 5

*Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) ............................... 3

*Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) ........................................................... 3

*Sloan v. Gen. Motors, LLC,* 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018)......................................... 14

*Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730 (W.D. Miss. Apr. 28, 2020) ........................................................................................................................................ 17

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002)........................................................ 4

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

*S.Y. and C.S. v. Naples Hotel Company, et al.*, Case 2:20-cv-00118-JES-MRM, Dkt. 294 (M.D. Fla. August 5, 2020)…………………………………………………………………………11

**Statutes**

18 U.S.C. § 1595............................................................................................. 1, 2, 4, 5, 15

18 U.S.C. § 1595(a) ....................................................................................................... 4

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ..................................... 4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 3

Restatement (Third) of Agency § 4.01 ................................................................ 16, 17, 20

Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, title II, § 221(2)

(Dec. 23, 2008), https://www.congress.gov/110/plaws/publ457/PLAW-110publ457.pdf............... 4

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

Plaintiff, J.C. ("Plaintiff"), herein responds in opposition to Defendant, Choice Hotel International, Inc.'s ("Choice") Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion") and affirms that she has sufficiently and plausibly pled her claim against Choice. In support of her opposition, Plaintiff asserts the following:

## I.  INTRODUCTION AND STATEMENT OF FACTS

This action is about a young woman, J.C., who was compelled against her will to serve in sexual servitude for the financial benefit of others, including Choice. Plaintiff was repeatedly raped, tortured, and verbally abused at the Comfort Inn located at 110 Plymouth Street in Santa Cruz, California while open and obvious signs of human trafficking for commercial sex permeated through the front doors of the Comfort Inn, through its lobby, and in the hallways of its rooms, and other properties under the Choice brand. For over a decade, management and staff at Choice hotels witnessed girls and young women, including Plaintiff, being escorted without any luggage by their trafficker(s) to perform sex acts for multiple buyers a day, multiple times per week, in exchange for money. Given these open and obvious signs routinely on display throughout their hotels and its knowledge of the prevalence of sex trafficking in hotels including its own, Marriott knew or, at the very least, should have known, that girls and young women, including Plaintiff, were being trafficked for commercial sex in their Choice brand hotels.

As numerous other federal courts have explained in recent, well-reasoned, opinions and recommendations, Choice's interpretation of the Trafficking Victim Protection Reauthorization Act ("TVPRA") defies the rules of statutory construction. *See* 18 U.S.C. § 1595; *See B.M. v. Wyndham Hotels & Resorts, Inc. et. al.*, No. 5:20-cv-00656-BLF, Dkt. 80 at *7 (N.D. Cal. July 30, 2020) ("Exhibit A"); *A.B. v. Marriott International, Inc.*, 2020 WL 1939678 at *17 ("Exhibit B"); *Jane Doe S.W. vs. Lorain-Elyria Motel, Inc., et al.*, No. 2:19-cv-01194-ALM (S.D. Ohio Mar. 16, 2020) ("Exhibit C"); and *M.L. vs. Craigslist Inc., et al.*, No. 3:19-cv-06153-BHS-TLF (W.D. Wa. Apr. 17, 2020) ("Exhibit D"). Choice asks this Court to convert the well-settled pleading standard of

plausibility into a probability (or even higher) standard at the pleading stage and to draw all reasonable inferences in Choice's favor in support of a dismissal of Plaintiff's claims.  Noticeably lacking from Choice's Motion is any factual support for its assertions.

Section 1595 of the TVPRA provides a private right of civil action against *any* party who knowingly benefits from participation in a venture the party knew, or should have known, has engaged in a violation of the statute, including acts of commercial sex trafficking.  *See* 18 U.S.C. § 1595.  Choice receives room rental profits and franchise royalty fees from its franchisee hotel, where the subject commercial sex trafficking of Plaintiff occurred, in support of its "knowing benefit" under the TVPRA.  Choice further asks this Court to interpret the "participation in a venture" and "knew or should have known" language of the TVPRA in a narrow and limiting fashion when the text of the statute itself is evidence of Congress's intent to expand the notice and participation requirements which form the basis of liability.

The "participation in a venture" requirement under Section 1595 of the TVPRA does not require performance of an overt act in furtherance of the trafficking that advances what Choice knew or should have known to make out a claim as Choice argues in the Motion.  In doing so, Choice asks this Court to apply criminal standards to this civil action.  The notice required under Section 1595 of the TVPRA includes not only actual knowledge, but also constructive knowledge as to what the party "should have known" simply by adopting a plain language reading of Section 1595.[1]  As recent decisions in other federal courts (Exhibit A and B) have aptly analyzed, to adopt Choice's tortured statutory interpretation that the participation requirement of Section 1595 requires an overt act to benefit the actual sex trafficking venture, such an interpretation would ostensibly eliminate the "should have known" language of Section 1595 which the 2008 amendment was intended to broaden.  *See*

---

[1] Choice flouts and conflates "general" knowledge of sex trafficking with constructive knowledge when describing (and admitting) the industry's awareness of sex trafficking. Choice need not even "generally" be aware of sex trafficking at its brand hotels to be on constructive notice.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

Exhibit A.  As the central marketplace for commercial sex trafficking, the hospitality industry, including Choice, has been on notice for over a decade about commercial sex trafficking occurring at its brand hotel properties and has publicly acquiesced to have the knowledge, position, and control to address trafficking victimization at their brand hotels.  Limiting interpretations of Section 1595, such as Choice proposes in the Motion, conflicts with the construction of the statutory language, and the purpose and intent of the statute.

Choice's arguments run counter to the statutory intent of the TVPRA, exceed Plaintiff's burden at the pleading stage, and form the basis to deny this Motion in its entirety.  Plaintiff filed her third amended complaint in light of this Court's recent ruling, Dkt. 79, to clarify support for her assertions that Marriott is liable, both directly, and indirectly, under the TVPRA.  In this complaint Plaintiff clarifies the basis for her allegations under the separate direct and indirect liability theories and has added additional details, based on information and belief and found in the public sphere, supporting these theories.  Plaintiff has also adequately and plausibly pled an indirect theory of liability under both federal common law and California law, as numerous questions of fact exist that are more appropriate to be raised after discovery and inappropriate for adjudication at this stage of the case. *See* Exhibit A.  Accordingly, Choice's Motion should be denied in full.

## II. <u>STATEMENT OF ISSUES TO BE DECIDED/APPLICABLE LEGAL STANDARD</u>

### A. <u>Rule 12(b)(6) – Motion to Dismiss</u>

The Court must decide whether Plaintiff's TAC adequately states a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In considering the motion, the Court must accept the factual allegations in the complaint, and construe the pleadings in the light most favorable to the non-moving party.  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Determining whether a complaint states a plausible claim for relief is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states a claim to relief that is plausible on its face. *See Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Although this standard requires that a claim be plausible on its face, it does not require that a complaint contain "detailed factual allegations." *Id.* (internal quotations omitted).

The Court must decide whether plaintiff has alleged sufficient facts supporting direct and/or vicarious liability of Choice under the TVPRA. Plaintiff has alleged multiple facts supporting both direct liability and vicarious liability and "a judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572, (2007), quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002).

## III.  ARGUMENT

### A.  Plaintiff's Complaint Sufficiently and Plausibly Pleads A Claim Against Choice For Direct Liability Under 18 U.S.C. § 1595(a)

The TVPRA, 18 U.S.C. § 1591, *et. seq.*, criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. Separately, Section 1595 of the TVPRA provides victims of sex trafficking, such as Plaintiff, [2] with a civil remedy against the perpetrators of sex trafficking or the beneficiaries of sex trafficking.  *See* 18 U.S.C. § 1595(a).  Plaintiff's cause of action for violation of Section 1595 explicitly and unequivocally states direct and indirect beneficiary theories of liability against Choice under §1595.[3]

---

[2] Plaintiff is a victim of sex trafficking. *See* Docket. No. 82, Third Amended Complaint ("TAC") at ¶¶ 4-5.
[3] *Id.* at ¶¶ 4-8, 10, 11, 14, 22-29, 41, 48, 66, 74, 95-105, 125, 148-152 and 160-165, 197-204.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

In 2008, 18 U.S.C. 1595(a) was intentionally amended, substantially expanding its language to broaden the category of defendants who could be held civilly liable, *even in the absence of criminal culpability*, to include "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."[4] The 2008 amendment to our country's anti-human trafficking laws necessitated a paradigm shift in the hospitality industry.[5]  Choice has publicly agreed that it has the knowledge, position, and control to address trafficking at its brand hotels; yet it has failed to take the proper action to address trafficking at its brand hotels.

The TVPRA prohibits businesses, including Choice and others in the hospitality industry, from financially benefitting from commercial sex trafficking. *See* 18 U.S.C. § 1595. Choice has the authority and statutory duty to take steps to prevent sex trafficking on its hotel properties as a business which financially benefits from commercial sex trafficking. *See* TAC at ¶¶ 2, 3, 6, 9, 10, 11, 14, 22, 41, 48, 62-66, 68, 69, 75, 94, 104, 105, 125, 148-152 and 187-204.  Choice's duty includes the duty to train, implement, monitor and audit hotel employees and properties for sex trafficking from which Choice receives franchise royalty fees and room rental profits, including Choice-brand hotels. *Id.*

The crucial significance of the 2008 change in the TVPRA's language is supported by well-established principles of statutory interpretation. Generally, when interpreting a statute, one must

---

[4] *See* Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, title II, § 221(2) (Dec. 23, 2008), https://www.congress.gov/110/plaws/publ457/PLAW-110publ457.pdf (last viewed June 3, 2020).

[5] Similarly, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced a broad paradigm shift, requiring change nationally across all business sectors. Employers could no longer discriminate on the basis of race, religion, sex, or national origin. *Id.* Employers were, of course, free to maintain the status quo and continue to discriminate against their employees, but, because of the new law, they were liable for damages going forward for continuing to discriminate after its enactment. Similarly, businesses within the hospitality industry are free to maintain the status quo pre-2008 and do nothing to continue to benefit financially from sex trafficking occurring on their hotel properties, but choosing to maintain this status quo post-2008 following the amendment to § 1595 of the TVPRA exposes businesses in the hospitality industry to liability for their purposeful inaction and noncompliance with the law.

"consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted). It is a canon "that remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985). This canon of statutory construction is especially applicable here because the TVPRA was amended to be even broader and more inclusive in 2008.

Through the 2008 amendment, "Congress gave 'victims a cause of action against those who have profited from their exploitation' and 'create[d] a cause of action for victims…***against anyone who benefits from any such violation***.'" *A.B.*, 2020 WL 1939678 at*7 (internal citations omitted). Under the plain terms of the statute, a violation occurs whether a defendant is a primary offender or simply benefitted financially from participation in a venture with the primary offender. *See Bistline v. Parker*, 918 F. 3d 849, 871 (10th Cir. 2019).  To state a claim under a section 1595(a) beneficiary theory a plaintiff must allege that a defendant "(1) 'knowingly benefit[ted] financially or by receiving anything of value'; (2) from participation in a venture; (3) it 'knew or should have known has engaged in'" sex trafficking." *B.M. v. Wyndham Hotels & Resorts, Inc. et al.*, No. 5:20-cv-00656-BLF, Dkt. 80 at *7 (N.D. Cal. July 30, 2020).  Plaintiff has stated such a claim.

### 1. <u>Choice Knowingly Benefited in Violation of § 1595</u>

Plaintiff plausibly alleges that Choice knowingly benefitted from the venture that trafficked her. *See* TAC at ¶¶ 2, 3, 6, 9, 10, 11, 14, 22, 41, 48, 62-66, 68, 69, 75, 94, 104, 105, 125, 148-152 and 187-204.  Plaintiff pleaded that Choice knowingly benefited from her trafficking as follows: "Choice receives a percentage of the gross room revenue from the money generated by the operations of all Choice hotels, including a percentage of the revenue generated for the rate charged for the rooms in which the Plaintiff was sex trafficked," *Id.* at ¶ 11(e); and "J.C.'s trafficker would harbor her and other victims at the Comfort Inn in Santa Cruz, CA for up to two weeks at a time." *Id.* at ¶ 41.  "Choice accepted the profits from J.C.'s trafficker . . ." *Id.* at ¶ 202. "Choice knew or should have known that

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

such profits were derived from sex trafficker's illegal and tortious activities." *Id.* at ¶ 203. "Choice knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through room rentals J.C. was victimized in." *Id.* at 11(d).

Judge Freeman, in this District, recently found that a "knowing benefit" under § 1595 "'merely requires that Defendant knowingly receive a financial benefit' and the rental of a room (or Wyndham and Choice's receipt of royalties for that rental) constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element." *B.M. v. Wyndham Hotels & Resorts, Inc. et al.*, No. 5:20-cv-00656-BLF, Dkt. 80 at *7 (N.D. Cal. July 30, 2020). Similarly, the District of Colorado has held that a benefit under 1595(a) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach" under Section 1595 of the TVPRA. *Gilbert v. United States Olympic Committee*, 423 F.Supp.3d 1112, 1137 (D. Colo. 2019).[6] The Southern District of Ohio found that Section 1595(a) does not impose a requirement of actual knowledge of the sex trafficking to satisfy the knowing benefit requirement. *See Jane Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020). Here, Plaintiff has sufficiently alleged that Choice received a financial benefit from the rental of a room to Plaintiff's trafficker. Thus, Plaintiff has sufficiently alleged that Choice received a benefit under § 1595 of the TVPRA.

Choice argues it did not knowingly benefit because it did not have reason to suspect that the rooms it rented were used to commit sex trafficking crimes. However, as discussed above, Choice need only have knowingly received a financial benefit from the rental of a room to the trafficker to have satisfied this element. *B.M.*, No. 5:20-cv-00656-BLF, Dkt. 80 at *7. Under the TVPRA Choice is not required to know that the benefit it receive was the result of sex trafficking. *Id.* As Plaintiff

---

[6] In *Gilbert*, Judge Arguello found the United States Olympic Committee received a knowing benefit from a taekwondo coach's trafficking of athletes by receiving "money through sponsorships, licensing, grants, publicity, [&] for medals achieved at competitions." *Id.* at 1139.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

alleges that her trafficker rented rooms from the Comfort Inn in Santa Cruz and Choice received a financial benefit from that rental, Choice knowingly benefitted from Plaintiff's trafficking. TAC at ¶ 11(d).

2.    **Choice Participated in the Sex Trafficking Venture of Plaintiff**

Plaintiff has plausibly alleged that Choice participated in a venture with her trafficker. "[L]iability under §1595 [for non-perpetrator beneficiary claims] can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in sex trafficking." *M.A.*, 425 F.Supp. 3d at 968-70; *see also Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 289 (D. Conn. 2013)(finding defendants participated in a venture where they maintained affiliations with a school where the sex trafficking of minors was taking place); *see also Gilbert*, 423 F.Supp.3d 1112, 1137 (D. Colo. 2019) (holding that entire venture itself does not have to be actively engaged in TVPRA violations, and that the defendant's participation does not need to be an overt act in furtherance of the other members' of the venture TVPA violation.)

In determining whether a defendant participated in a venture under § 1595 of the TVPRA, district courts have split but the vast majority of federal courts have concluded that a plaintiff need not allege an "overt act" to establish civil liability under the TVPRA. The first line of cases—which includes cases from the Southern District Ohio, the Eastern District of Pennsylvania, the Western District of Washington, and the Northern District of California[7]—have applied *Ricchio v. McLean*'s holding that (1) a defendant need not commit an "overt act" to participate in a venture and (2) defendant need not have actual knowledge of participation in sex trafficking itself to participate in a

---

[7] *See* Dkt. 79 at 1-2 n. 1; *B.M*, No. 5:20-cv-00656-BLF, Dkt. 80 (N.D. Cal. July 30, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959 (S.D. Ohio 2019); *A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261 (S.D. Ohio, Jun. 16, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 19-1194, 2020 WL 1244192 (S.D. Ohio, Mar. 16 2020); *H.H. v. G6 Hospitality, LLC*, No. 19-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *M.L. v. Craigslist, Inc.*, No. 19-6153, Dkt. # 62 (W.D. Wash. Apr. 17, 2020) (report and recommendation form magistrate judge recommending denial of hotel defendants motions to dismiss).

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1   venture. 853 F.3d 553 (1st Cir. 2017); *see also A.B.*, 2020 WL 1939678 at *9-11; *M.A. v. Wyndham*

2   *Hotels & Resorts, Inc.,* 425 F.Supp.3d 959, 968-971 (S.D. Ohio Oct. 7, 2019) ("liability under § 1595

3   [for non-perpetrator beneficiary claims] can attach when an individual participates in a venture that is

4   not specifically a sex trafficking venture and participation is not direct participation in sex

5   trafficking."); *Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 289 (D. Conn. 2013) (finding defendants

6   participated in a venture where they maintained affiliations with a school where the sex trafficking of

7   minors was taking place). The second line of cases—including four cases from the Northern District

8   of Georgia[8] all issued by the same Judge— incorrectly interpret section 1595 and apply a criminal

9   standard to the civil liability imposed thereunder. Those cases rely on *Noble v. Weinstein* and *U.S. v.*

10   *Afyare*, to argue that an overt act is required to satisfy the participation in a venture element. *See Doe*

11   *1*, 2020 WL 1872335 at *3.  The Georgia cases are outliers and their rationale should not be followed.

12           This Court and Judge Freeman in the Northern District of California have specifically adopted

13   the statutory construction of "participation in a venture" found in the first line of cases. *See* Dkt. 79 at

14   1-2 n. 1 ("I agree with the statutory construction analysis in *M.A. v. Wyndham Hotels & Resorts, Inc.*");

15   *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 5:20-cv-00656-BLF, Dkt. 80 at *6 (N.D. Cal. July 30,

16   2020) (a plaintiff is "not required to allege an overt act in furtherance of or actual knowledge of a sex

17   trafficking venture in order to sufficiently plead her section 1595 civil liability claim"). Under that

18   construction, a plaintiff need not allege an "overt act" or actual knowledge of a sex trafficking venture

19   to properly plead a claim under § 1595 of the TVPRA. Dkt. 79 at 1-2 n. 1; *B.M.*, No. 5:20-cv-00656-

20   BLF, Dkt. 80 at *6. In *M.A.*, the plaintiff pleaded sufficient facts to show the defendants—hotel

21   franchisors like Choice—participated in a venture with her traffickers "by alleging that Defendants

22

23

24

25

26

27   [8] *See Doe 1 v. Red Roof Inns, Inc.*, No. 193840, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020); *Doe 2 v. Red Roof Inns, Inc.*, NO. 19-3841, 2020 WL 1872337 (N.D. Ga., Apr. 13, 2020); *Doe 3 v. Red Roof Inns, Inc.*, No. 19-3843, 2020 WL 1872333 (N.D. Ga., Apr. 13, 2020); *Doe 4 v. Red Roof Inns, Inc.*, No. 19-3845, 2020 W.L. 1872336 (N.D. Ga., Apr. 13, 2020).

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

rented rooms to people it knew or should have known were engaged in sex trafficking." *M.A.*, 425 F.Supp.3d at 971. The same standard should be applied in the present case.

Despite Choice's insistence that Plaintiff must allege an "overt act" on the part of Choice,[9] Plaintiff has sufficiently alleged that Choice participated in a venture with Plaintiff's traffickers. Plaintiff asserts Choice "actively participated in this illegal endeavor by knowingly or negligently providing lodging to J.C.'s traffickers in which to harbor J.C. while they were trafficking her." *See* TAC at ¶ 237.  Here, Plaintiff's trafficker had a sex trafficking venture and Plaintiff adequately alleges Choice "actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from J.C. in which to harbor J.C. while she was being trafficked." *Id.* at ¶ 238. *See M.A.*, 425 F.Supp.3d at 971; *see also H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *see also Gilbert* 423 F.Supp.3d at 1137. As such, Plaintiff has plausibly alleged facts sufficient for Choice to have participated in the sex trafficking venture of Plaintiff at the Comfort Inn in Santa Cruz.

Choice relies heavily on *Noble v. Weinstein*, a case from the Southern District of New York, but its approach requiring "specific conduct" or an overt act has been rejected by the Northern District of California. *See B.M. v. Wyndham Hotels & Resorts, Inc., et al.*, Case 5:20-cv-00656-BLF, Dkt. 80 at p. 6 (N.D. Cal. July 30, 2020) (a plaintiff is "not required to allege an overt act in furtherance of or actual knowledge of a sex trafficking venture in order to sufficiently plead her section 1595 civil liability claim").  More importantly, the reliance upon *Noble* is misplaced as *Noble* involved a claim brought against a beneficiary of trafficking *who was alleged to have directly violated the criminal statute as well*.  Here, Plaintiff's TVPRA claim against Choice is a standalone beneficiary claim under § 1595, which easily sets it apart from *Noble*.  Choice continues to argue that the criminal standard for

---

[9] Choice writes: "Plaintiff has not alleged any 'overt act' by Choice that furthered the alleged sex trafficking. Without any alleged overt act, Choice cannot have "participated" in any venture with Plaintiff's traffickers."  Choice Motion to Dismiss, Dkt. 86 at p. 7.

venture under § 1591, as applied in *Afyare*, should apply in this civil case under § 1595.  Dkt. 86 at 6-7. This Court already rejected the application of § 1591's definition under § 1595.  *See* Dkt. 79 at 1-2 n. 1.

Choice's arguments have also been rejected in other similar cases where Choice filed similar Motions to Dismiss.  In *S.Y. and C.S. v. Naples Hotel Company, et al.*, Case 2:20-cv-00118-JES-MRM, Dkt. 294 (M.D. Fla. August 5, 2020), Choice argued that the Plaintiffs did not allege Choice committed any "overt act" that furthered the sex trafficking, and without an overt act Choice cannot have "participated" under section 1595.  The *S.Y. and C.S.* court noted that the majority of courts do not follow the *Afyare* and *Noble* approach and concluded that "actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595."  *S.Y. and C.S.*, Case 2:20-cv-00118-JES-MRM, Dkt. 294 at p. 8.  Choice's insistence on applying the criminal definition of "participation in a venture" to the statute's civil remedy runs afoul of the principles of statutory construction, has been rejected in courts elsewhere, and should be rejected here as well.

Finally, Choice argues that it cannot have "participated in a venture" because it does not own and operate the Choice hotel in Santa Cruz;[10] however, Plaintiff's complaint is replete with allegations as to Choice's ownership and operation of this particular hotel, sufficient to survive a motion to dismiss. *See* TAC, Dkt. 82 at ¶¶ 11, 148, 151, 187, 188. Choice made an identical argument in *S.Y. and C.S.*, which the court rejected because the plaintiffs' allegations are presumed to be true, and "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes."  *S.Y. and C.S.*, Case 2:20-cv-00118-JES-MRM, Dkt. 294 at p. 8.

### 3.   Choice Knew or Should Have Known that the Venture Engaged in Sex Trafficking

---

[10] Choice states: "Any such association would be limited to association between Plaintiff, her trafficker(s), and an entirely separate legal entity than Choice—the franchisee who owned/operated the hotel at issue." Dkt. 86 at 7.

-11-

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

Plaintiff brings a standalone financial beneficiary claim "under § 1595(a), which use the words 'should have known,' and, therefore, invokes a negligence standard" for defendant who are not alleged to be perpetrators under § 1591. S*ee M.A.,* 425 F.Supp.3d at 965; and *H.H. v. G6 Hospitality, LLC,* 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019). The phrase "knew or should have known," echoes common language used in describing an objective standard of negligence. *See A.B.*, 2020 WL 1939678 at *10.  Plaintiff "does not need to prove reckless disregard under Section 1595(a), only that the Defendants 'should have known' about the nature of the venture under a negligence standard [and] this does not require evidence of actual knowledge or conspiracy between the Defendants and the trafficker." *M.A*., 425 F.Supp.3d at 966; *See also Gilbert*, 432 F.Supp.3d. at 1134 (affirming that for non-perpetrator liability under Section 1595(a) the standard is "knew or should have known").

 Federal Courts have found the failure to implement policies sufficient to combat a known problem in one's operation can rise to the level of willful blindness or negligence. *See M.A.,* 425 F.Supp.3d at 968; *citing Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) (finding that the complaint provided sufficient allegations under section 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped an employee, sexual harassment at the facility was not an isolated incident, and defendants failed to implement and effectuate the appropriate policies to remedy and/or prevent the discriminatory conduct, sexual harassment, and rape). Plaintiff's complaint alleges Choice knew of the problem of sex trafficking at its brand hotels. TAC ¶ 96-97. Plaintiff alleges Choice knew of the warning signs of human trafficking at its brand hotels. TAC ¶ 98. Plaintiff alleges that Choice knew of the Polaris Project survey that found that 75% of trafficking victims came into contact with a hotel during their trafficking. TAC ¶¶ 71-72.  Plaintiff alleges that Choice failed to implement policies to combat the known problem of sex trafficking at its brand hotels. TAC ¶ 149.

Choice has been aware of the problem of sex trafficking in its hotels, but has failed to implement or enforce effective policies to combat these terrible crimes.  Choice adopted a Human

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

Rights Policy in 2008 (*see* Exhibit E) and requires employees in its franchised property to complete an online training module related to sex trafficking.  TAC at ¶¶ 98, 99.  It even boasts that the sex trafficking training "has been completed nearly 30,000 times", yet its failure to address the rampant sex trafficking that occurs in its hotels across the country facilitated the sex trafficking of Plaintiff.  TAC at ¶¶ 98, 99.  In addition, as a signatory to ECPAT-USA, Choice has publicly committed to monitor and inhibit access to sites like Backpage.com and Craigslist Erotic services on its hotel premises and WiFi networks.  TAC at ¶ 121.  Thus, Choice controlled the terms of service for internet use at its properties.  Had Choice fulfilled its obligation under TVPRA and its own commitment under ECPAT to do so, it might have known of positing Plaintiff's traffickers were making on these websites to further their venture under Choice's roof.  The failures at this Choice hotel are only an incidence of a larger systemic failure across the entire Choice brand. *See* TAC at ¶¶ 95-105.

Moreover, Choice's knowledge of the problem of trafficking at its hotels and the signs of trafficking show that Choice should have known that Plaintiff was trafficked when those same signs were evident at the Comfort Inn in Santa Cruz.  Plaintiff alleges that she and other victims were housed at the Comfort Inn in Santa Cruz, CA for up to two weeks at a time. *Id.* at ¶ 41.  She alleges a physical altercation occurred of a nature that should have alerted Choice's staff to the nature of the trafficking activity. *Id.*  Plaintiff even describes how she approached security at the Comfort Inn in Santa Cruz asking for help, and help was denied.  *Id.*  Plaintiff further alleges that, during the time that she was housed at the Comfort Inn in Santa Cruz, "a steady stream of men, who were not registered hotel guests, would enter and leave her room through the hotel."  *Id.*  These allegations, and those in the paragraph above[11], demonstrate that Choice knew of the signs of trafficking, that Plaintiff and her

---

[11] Plaintiff alleges: "J.C. stayed at [Choice hotel in Santa Cruz] over extended periods of time, her trafficker always renting the room for a number of weeks, paying in smaller increments, and requesting an inordinate amount of towels. For weeks J.C. was held up in the room, unable to leave and visibly deteriorating. Then her trafficker would up and leave and the same would happen at another of the hotels. J.C's trafficker returned to each of these hotels numerous times."  TAC at ¶ 40.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

traffickers exhibited those signs while at the Comfort Inn in Santa Cruz, and therefore Choice *knew or should have known* that Plaintiff was being trafficked at its hotel. *See M.A.,* 425 F.Supp.3d at 968. Similar allegations have been found sufficient to infer that Choice knew or should have known of the sex trafficking venture involving Plaintiff.  *See S.Y. and C.S.*, Case 2:20-cv-00118-JES-MRM, Dkt. 294 at p. 10.

Plaintiff's Complaint includes specific facts to show that Choice knew or should have known of *her* trafficking, not simply allegations about the hospitality industry's complicity in sex trafficking. Choice relies on *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 29, 2018), to argue that Plaintiff's references to reports of sex trafficking at Choice brand hotels are insufficient to show its knowledge of J.C.'s trafficking.  Choice misunderstands the significance of those references.  Public reports of trafficking arrests at Choice brand hotels are alleged to show that (1) Choice failed to implement policies so that its staff might recognize and prevent trafficking at its brand hotels; and (2) that, when combined with the other allegations in Plaintiff's complaint, Choice knew that sex trafficking occurred at Choice's brand hotels.  As discussed above, Choice's general knowledge of sex trafficking at its brand hotels and the signs thereof, show that when Plaintiff, her traffickers' other victims, and her traffickers exhibited those signs Choice—through its staff and local partners under its control -- knew or should have known of Plaintiff's trafficking.

**B.    Plaintiff's Complaint Sufficiently And Plausibly Pleads Choice Is Vicariously Liable**

Choice is directly liable under Section 1595 of the TVPRA and responsible for its own failures and inaction.  Choice is also indirectly liable under Section 1595 of the TVPRA.  The question of whether the franchisee is an agent is ordinarily one of fact, and can be determined as a matter of law "[o]nly when the essential facts are not in conflict."  *Cislaw, supra,* 4 Cal. App. 4th at 1288 (citations omitted).  Allegations against a principal may survive a motion to dismiss where "the complaint includes allegations from which an agency relationship may plausibly be inferred."  *Sloan v. Gen.*

1
2
3

*Motors, LLC,* 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018), order clarified, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. 2018).  Under both the federal common law and California's law of agency, Plaintiff's allegations are sufficient to survive a motion to dismiss.

4

        1.   **Secondary Liability is Available Under the TVPRA**

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

      As an initial matter, Choice's argument that the TVPRA does not provide for secondary liability is wrong, and has been rejected by courts in cases similar to this one.  In *B.M. v. Wyndham Hotels & Resorts, Inc., et al.*, the court explicitly rejected the same argument Choice makes here. *B.M. v. Wyndham Hotels & Resorts, Inc., et al.*, Case No. 20-cv-00656-BLF, Dkt. 80, p. 12 (N.D. Ca. July 30, 2020).  Judge Freeman of the Northern District of California recognized the lack of authority for this position: "Neither Wyndham nor Choice has provided any authority to support the assertion or explain why the well-established agency liability is inapplicable to TVPRA claims."  *B.M. v. Wyndham Hotels & Resorts, Inc., et al.*, Case No. 20-cv-00656-BLF, Dkt. 80, p. 12 (N.D. Cal. July 30, 2020).  To the contrary, Choice's insistence that secondary liability cannot apply under the TVPRA is wholly at odds with the multiple decisions across the country allowing agency claims to proceed against these very same defendants in similar cases.  *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959 (S.D. Ohio 2019) (finding plaintiff sufficiently pled an agency relationship, with no mention of the non-availability of secondary liability under the TVPRA); *A.B. v. Marriott International, Inc.*, 2020 WL 1939678, at *19-20 (E.D. Pa. April 22, 2020) (allowing plaintiff to pursue vicarious liability claim against hotel chain, with no suggestion that secondary liability is not available under the TVPRA).  Choice's cite to *Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) is also inapplicable as the court was considering whether aiding and abetting liability exists under 18 U.S.C. § 1595, not whether agency liability may be established for the purposes of the

26
27
28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

statute.[12]  Plaintiff has not located, and Defendant has not cited, a single case in which the court held that secondary liability is unavailable under the TVPRA in circumstances such as these.[13]

When a federal statute is silent on vicarious liability, it is assumed that Congress intended to incorporate "ordinary tort-related vicarious liability rules" into the statute.  *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (finding that ordinary principles of vicarious liability applied to liability under the Federal Housing Act).  Thus, "[a]bsent a clear expression of Congressional intent to apply another standard, the court must presume that Congress intended to apply the traditional standards of vicarious liability…"  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd,* 136 S. Ct. 663 (2016), 768 F.3d at 878 (permitting vicarious liability under the Telephone Consumer Protection Act ("TCPA")); *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("general principles of agency" form the basis of vicarious liability under the Fair Debt Collection Practices Act); *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (vicarious liability under Digital Millennium Copyright Act).

### 2.  Plaintiff Has Plausibly Alleged Agency Under Both Federal Common Law and California's Law of Agency

Federal courts in the Ninth Circuit rely on the Restatement (Third) of Agency for common law agency principles.  *See, e.g.*, *Mavrix*, 873 F. 3d at 1054; *Henderson v. U.S. Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019).  "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another

---

[12] While in *Jean-Charles* the district court did address vicarious liability, it was under Connecticut law (which rejects the Restatement of Agency), and under a theory of apparent, versus actual, agency.  *Jean-Charles*, 937 F. Supp. 2d at 286.
[13] The *Jean Charles* court itself relied on *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, which was limited to aiding and abetting liability.  *See also St. Louis v. Perlitz*, No. 3:13-CV-1132 (RNC), 2016 WL 1408076, at *1 (D. Conn. Apr. 8, 2016) (Recognizing the existence of secondary liability under §1595: "This is true regardless of whether the claim is one of direct or secondary liability").

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."   *Id*. (citing Restatement (Third) of Agency § 1.01 (2006)).

Under the Restatement approach, it is the right to control, rather than the actual exercise of control, which is determinative: "[a] principal's failure to exercise the right of control does not eliminate it."   *Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 345 (S.D.N.Y. 2018) (citing Restatement (Third) of Agency § 1.01 cmt.c.)   "It is well-established that it is not essential that the principal make use of the right to control," or even that a principal's "efforts to control be effective."   *Id*.   The concept of control "embraces a wide spectrum of meanings," including "what the agent shall and shall not do, in specific or general terms."   Restatement (Third) of Agency § 1.01 cmt. f.

The Ninth Circuit considers ten non-exhaustive factors to determine whether "a principal has sufficient authority to control the actions of its agent such that the principal may be held liable to the same extent as an employer may be held liable for the conduct of its employee."   *Jones v. Royal Admin. Servs., Inc.*, 888 F.3d 443, 450-451 (9th Cir. 2018) (citing Restatement (Third) of Agency § 7.07(1)).

> 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

*Id*.   In analyzing control, courts consider whether the defendant retained or exercised control over the particular act complained of.   *Id*. at 451 (finding no agency under the TCPA where there the principal "never specifically controlled any of the calls at issue in this case"); *see also Lomeli v. Jackson Hewitt, Inc.*, No. 217CV02899-ODW (KSx), 2018 WL 1010268, at *7 (C.D. Cal. Feb. 20, 2018) (finding that franchisor could be found vicariously liable where it controlled the training of employees, which was the instrumentality of the alleged harm); *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-1127-

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1
2
3
4

WQH-KSC 2018 WL 325112 (S.D. Cal. Jan. 5, 2018) (denying motion to dismiss vicarious liability under TCPA); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730 (W.D. Miss. Apr. 28, 2020) (denying motion for summary judgment where the evidence demonstrated that the principal controlled the manner and means of the harm).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

California law follows a similar approach to the Restatement regarding control: It is the ***right to control*** the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists. *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992) (citations and quotations omitted) (emphasis added). The test of an agency relationship is the principal's ***right*** to control the activities of the agent. "It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent." *Id.* at 1288 (citing *McCollum v. Friendly Hills Travel Center* (1985) 172 Cal. App. 3d 83, 91 (1985)). And, in California, "[t]he law is clear that a franchisee may be deemed to be the agent of the franchisor." *Kuchta v. Allied Builders Corp.,* 21 Cal. App. 3d 541, 547 (1971) (citations omitted). Even if the franchise agreement declares that no agency relationship exists, court will still apply vicarious liability finding that an agency relationship does, in fact exist. *Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 548, 98 Cal. Rptr. 588, 591 (Ct. App. 1971) ("[T]he declarations of the parties in the agreement respecting the nature of the relationship are not controlling."). Under either the Restatement approach followed by federal common law or California law, Plaintiff has adequately alleged agency liability against Choice.

21
22
23
24
25
26
27
28

Here, the majority of *Jones* factors weigh heavily in favor of finding vicarious liability. Plaintiff's complaint alleges Choice owns, supervises, and/or operates Santa Cruz Comfort Inn where Plaintiff was sex trafficked, and that the local hotel is Choice's agent. *See* TAC ¶¶ 187, 195. Plaintiff alleges that Choice retains and exercises its control through its strict enforcement of brand standards, which permit periodic inspections and the right to terminate the agreement without providing an option to cure. *Id.* ¶¶ 151, 165. Such control extends to virtually all aspects of the day to day operations of the hotel. *See* TAC at ¶¶ 187-204. Choice requires each hotel to offer free internet services. *Id.* ¶¶ 128-

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

130.  Choice even mandates its local hotels to provide a free continental breakfast to guests *every day*, along with specific food and drinks that must be provided.  TAC at ¶193.  Plaintiff alleges how Choice exercises control over member hotels as identified in the above references to the franchise agreements, including:

> Standardized or strict rule of operation; Building and maintaining the facility in a manner specified by Choice; Making employment decisions; Insisting upon standardized training methods for employees; Hours of operation for shops and restaurants within the property; Setting parameters on employee wages; Hosting online bookings on the Choice domain.

*See Id.* at ¶195.[14][15]  Many of these same allegations were deemed sufficient to plead an agency relationship between Choice and its local branded property in *S.Y. and C.S.  See S.Y. and C.S.*, Case 2:20-cv-00118-JES-MRM, Dkt. 249 at pp. 12-13.

The remaining factors considered in *Jones,* similarly support vicarious liability.  As to factor two, the Comfort Inn in Santa Cruz is engaged in the same or similar occupation as it performs for Choice: the management of hotel(s).  As to factor three, creating and implementing policies and procedures for identifying and reducing sex trafficking is typically done under the supervision of an employer: Choice currently requires all on-staff employees of its brand hotels to undergo training.  As to factor four, the management of a hotel property requires a significant degree of skill.  As to factor five, Choice already supplies tools and instrumentalities for the training of employees of the Comfort Inn in Santa Cruz.  As to factor six, franchise agreements typically are intended to last for a long duration as rebranding and remodeling require significant resources.  Admittedly as to factor seven, Plaintiff acknowledges that the payment between Choice and the Santa Cruz Comfort Inn does not

---

[14] References to Westin in Plaintiff's complaint are typos.

[15] A RICO complaint recently filed against Choice details how franchisees are forced to "exclusively use vendors of Choice's choosing for the purchase of goods and services necessary to the running of a hotel."  *See Jai Sai Baba, LLC, et al. v. Choice Hotels International, Inc., et al.*, Case 2:20-cv-02823, Dkt. 1 (E.D. Pa. June 12, 2020).  This suggests control greater than necessary to maintain brand standards.

1   follow the ordinary structure of an employer/employee relationship.  However, as to factor eight,

2   Choice is in the same business as its Santa Cruz Comfort Inn: the management of hotel(s).  As to factor

3   nine, Plaintiff suspects that Choice's true intent was to create an agency relationship with independent

4   contractor liabilities.  Lastly, Choice is a business, which suggests a greater level of control.

5        Several courts have specifically found Choice exhibited control over its membership hotels

6   sufficient to find the possibility of agency liability.  *See B.M. v. Wyndham Hotels & Resorts, Inc., et*

7   *al.*, Case 5:20-cv-00656-BLF, Dkt. 80, p. 10 (N.D. Cal. July 30, 2020) (holding that plaintiff had

8   adequately alleged Choice exercised "ongoing and systematic right of control" over its franchise hotels

9   by a variety of actions including "setting employee wages," "making employee decisions," and

10  "standardized training methods for employees."); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425

11  F.Supp.3d 959 (S.D. Ohio 2019) (plaintiff's allegations were sufficient to plead Choice liability on an

12  agency theory).  The question of control must be considered in relation to the instrumentality that

13  allegedly caused a plaintiff's injury.  *Licari v. Best Western*, 2013 WL 3716523, at *10 (D. Utah July

14  12, 2013).  The TAC alleges that Choice controlled the means and method (or instrumentality) of

15  Plaintiff's harm.  Choice exerts dominion and control over its member hotels, and has control over the

16  day-to-day operations in a number of areas, and specifically with respect to developing and

17  implementing policies to combat sex trafficking in its hotels and training staff members in such.  TAC

18  ¶ 194.[16]

19

20       A Court's assessment of the degree of control necessary to impose vicarious liability on a

21  franchisor for the conduct of the franchisee is most properly determined at the summary judgment

22  stage of the case—after fact discovery has been conducted.  Similarly, in the instant action, genuine

23  issues of material fact exist here as to whether an agency relationship existed(s) between Choice and

24  its brand hotels. Plaintiff has plausibly alleged an agency relationship by and among Choice and its

---

[16] References to Westin in this paragraph of the TAC are typos.

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1  franchised hotel and should be permitted to discover what level of control Choice exerts over the

2  manner in which brand standards are complied with by Choice.  As such, Choice's Motion should be

3  denied in full.

4          3.   **Plaintiff Has Adequately Alleged Choice Ratified the Conduct of its Santa Cruz Comfort Inn Hotel**

5

6       "Ratification is the affirmance of a prior act done by another, whereby the act is given effect

7  as if done by an agent acting with actual authority."  *Henderson*, 918 F.3d 1068, 1073 (9th Cir. 2019)

8  (citing Restatement (Third) of Agency § 4.01).  It "may create an agency relationship when none

9  existed before if the acts are done by an actor ...who is not an agent but pretends to be."  *Id.* (citation

10  and quotations omitted).  There are two ways to ratify a third party's acts: by a "knowing acceptance

11  of the benefit" or through "willful ignorance."  *Id.* (citing Restatement (Third) Agency § 4.01 cmt. d.).

12  To establish knowing acceptance, there must be an "objectively or externally observable

13  indication ... that the principal has exercised choice and has consented" to the acts of the purported

14  agent.  *Id.* (citations and quotations omitted).  Consenting to the act requires the principal to have

15  "knowledge of material facts" or "actual knowledge."  *Id.*  The second way a principal can ratify the

16  acts of a third party is through "willful ignorance."  *Id.*

17

18

19       Under the "willful ignorance" theory, the principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking."  In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—*even if it does not know all the material facts*, but it must be aware that it does not know the material facts and ratify anyway.

20

21

22  *Id.* (citations omitted) (emphasis added).  Choice ratified the Santa Cruz Comfort Inn's conduct by

23  accepting a financial benefit.  While Choice may claim that it did not have actual knowledge, given

24  Choice's knowledge about sex trafficking and publicly stated policies to combat the issue, Choice was

25  at the least aware that its knowledge ***was lacking*** yet failed, perhaps purposefully, to do anything about

26  it.

27

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

**IV.**  **PLAINTIFF'S AMENDED COMPLAINT RELIES ON CASE-SPECIFIC FACTS AND IS NOT AN IMPERMISSIBLE GROUP PLEADING**

It is accurate that this matter is one of several like it around the country seeking to hold hotel chains accountable for rampant violations of the TVPRA.  That fact does not render this case an impermissible group pleading.  Choice argues because Plaintiffs make substantially similar allegations against all Defendants in their Complaint, including brand owners, franchisors and franchisees, this deprives Defendant Choice of the requisite notice. S*ee* Dkt. 86 at pp. 4-5. Plaintiff's Third Amended Complaint was filed to cure any alleged deficiencies in the pleadings.  Here, the Third Amended Complaint contains allegations specific to Plaintiff and the sex trafficking of Plaintiff at the Choice hotels, as cited above.  It also contains allegations specific to Choice's corporate practices, notice, authority, and the agency relationship created by the degree of control Choice has over its brand properties.  The amendment Plaintiff made to the initial pleadings were intended to cure any alleged deficiencies in the pleadings by Choice; in doing so, Plaintiff asserts one claim against Choice under the TVPRA. *See* Dkt. No. 82 at ¶¶ 247-251.  Additionally, Plaintiff asserts numerous allegations specific to the conduct and notice of Choice. *Id.* at ¶¶ 2, 3, 6, 9, 10, 11, 14, 22, 41, 48, 62-66, 68, 69, 75, 94, 104, 105, 125, 148-152 and 187-204.  Plaintiff's Complaint it is not an impermissible shotgun pleading and provides sufficient notice to Choice as to the claims asserted against it, Plaintiff respectfully submits that Defendants' motion to dismiss in this regard should be denied.

**V.**  **CONCLUSION**

Choice asks this Court to overlook the significant financial benefit it knowingly receives from room rentals and royalties of Choice-branded hotels where sex trafficking is obviously occurring, including the Comfort Inn in Santa Cruz.  Choice additionally asks this Court to interpret the "participation in a venture" and "knew or should have known" language of the TVPRA in a narrow and limiting fashion, when Congress clearly intended to encompass such conduct as a basis of liability.

1   Last, on the question of the existence of an agency relationship, Choice seeks to skip past the pleading

2   stage to the summary stage.

3        For all the reasons explained herein, J.C. has adequately and plausibly pled a claim under the

4   TVPRA asserting that Choice is liable, both directly and indirectly, under the statute.  Choice's Motion

5   should be denied in full.

6

7   Dated: August 10, 2020                    Respectfully Submitted,

8                                             By:      */s/ Tiffany R. Ellis*

9                                             Tiffany R. Ellis (*Pro hac vice*)
10                                            **WEITZ & LUXENBERG, P.C.**
                                              3100 W. Grand Blvd.
11                                            24th Floor
                                              Detroit, MI 48202
12                                            (313) 315-3151
                                              tellis@weitzlux.com
13
14                                            Melinda Davis Nokes, Bar No. 167787
                                              mnokes@weitzlux.com
15                                            **WEITZ & LUXENBERG, P.C.**
                                              1880 Century Park East, Suite 700
16                                            Los Angeles, CA 90067
                                              Telephone: (310) 247-0921
17                                            Facsimile: (310) 786-9927

18                                            Lori E. Andrus, Bar No. 205816
19                                            lori@andrusanderson.com
                                              Jennie Lee Anderson, Bar No. 203586
20                                            jennie@andrusanderson.com
                                              Audrey Siegel, Bar No. 286771
21                                            audrey.siegel@andrusanderson.com
22                                            **ANDRUS ANDERSON LLP**
                                              155 Montgomery Street, Suite 900
23                                            San Francisco, CA 94104
                                              Telephone: (415) 986-1400
24                                            Facsimile:  (415) 986-1474

25                                            *Attorneys for Plaintiff J.C., proceeding under*
26                                            *pseudonym*

27

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on August 10, 2020, I electronically filed the foregoing Response to

3

Choice's Motion to Dismiss the Third Amended Complaint with the Clerk of the Court using the

4

CM/ECF system.

5

                                           */s/   Tiffany R. Ellis*_____

6

                                           Tiffany R. Ellis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPP. TO CHOICE'S MOTION TO DISMISS**