MICHAEL P. O'DAY (admitted *pro hac vice*)
michael.oday@us.dlapiper.com
ELLEN E. DEW (admitted *pro hac vice*)
ellen.dew@us.dlapiper.com
**DLA PIPER LLP (US)**
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Tel:    410.580.3000
Fax:    410.580.3001

AMANDA L. MORGAN (Bar No. 246277)
amanda.morgan@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:    415.836.2500
Fax:    415.836.2501

Attorneys for Defendant
Marriott International, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO

| | |
|---|---|
| J.C., AN INDIVIDUAL,<br><br>    Plaintiff,<br><br>    v.<br><br>CHOICE HOTELS INTERNATIONAL, INC.;<br>HILTON WORLDWIDE HOLDINGS, INC;<br>MARRIOTT INTERNATIONAL, INC;<br><br>    Defendants. | CASE NO. 3:20-CV-00155-WHO<br><br>**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date:    September 23, 2020<br>Time:    2:00 p.m.<br>Ctrm.:   2 - 17th Floor<br>Judge:   Hon. William H. Orrick<br><br>Action Filed: January 7, 2020<br>FAC Filed:    March 19, 2020<br>Trial Date:   TBD |

## I. INTRODUCTION

Plaintiff's opposition (ECF No. 89; "Opposition" or "Opp.") fails for four principal reasons.[1] *First*, Plaintiff relies on a construction of the TVPRA that turns that statute on its head, advocating liability for those who fail to affirmatively prevent criminal sex trafficking, instead of those who knowingly participate in such trafficking ventures. Opp. at 1-5. Even the "recent, well-reasoned, opinions" cited in the Opposition reject Plaintiff's untenable construction.

*Second*, Plaintiff's reliance on Marriott International's supposed "constructive knowledge" of sex trafficking is equally flawed. The "split" in authority (Opp. at 7) over construing the TVPRA is immaterial to Plaintiff's claim. Whether civil liability turns on the commission of an overt act, or on mere proof that a defendant "should have known" of J.C.'s trafficking, the Third Amended Complaint ("TAC") fails. Recently, a federal court adopting the latter position explained that Plaintiff's reading of the TVPRA "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J. v. Choice Hotels, Int'l Inc.*, No. 19-6071, ECF No. 66, at *8 (E.D.N.Y. July 20, 2020) (hereinafter, "*S.J.*"). In other words, even if "constructive knowledge" suffices, the TVPRA requires knowledge of "the particular sex trafficking venture" that exploited J.C., not merely "an abstract awareness of sex trafficking in general." *S.J.* at *8; *see also B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (hereinafter "*B.M.*") ("Plaintiff must allege facts showing these Defendants knew or should have known of *her* trafficking") (emphasis added); *J.B. v. G6 Hospitality, et al.*, 19-cv-07848-HSG, ECF No. 132, at 16 (N.D. Cal. Aug. 20, 2020) (dismissing TVPRA claim because "while Plaintiff's allegations suggest that Economy Inn quite possibly should have been aware of some nefarious conduct, they do not suggest that Economy Inn should have known that the venture constituted sex trafficking"). A TVPRA claim in a similar complaint was recently dismissed where plaintiff's counsel conceded that the complaint failed to state a direct claim against the franchisors.

---

[1] The opposition does not address the CTVPA claim, thereby conceding the issue. *Roy v. Contra Costa Cty.*, 2015 WL 5698743, at *3 n.7 (N.D. Cal. Sept. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail.").

-1-
REPLY IN SUPPORT OF MOT. TO DISMISS PLAINTIFF'S THIRD AMEND. COMPL.
CASE NO. 3:20-CV-00155-WHO

*C.K. v. Wyndham Hotels & Resorts, Inc., et al.*, Case No: 3:19-cv-1412-j-34-MCR (M.D. Fla.), ECF No. 125 (July 7, 2020).

*Third*, Plaintiff's theory of secondary liability fares no better. The Opposition wrongly asserts federal common law and California law are coterminous. Based on this erroneous assertion, the TAC fails to allege facts that Marriott International exercised control required for an agency relationship. Even under California's broader standard, the vicarious liability claim still fails. The Opposition cites no allegations of day-to-day control over the instrumentality of J.C.'s harm or the management of the Fremont Marriott Silicon Valley ("Fremont Hotel").

*Fourth*, without citing a single allegation in the TAC, the Opposition argues Marriott International ratified the Fremont Hotel's conduct and is "directly liable" for the acts of the Fremont Hotel. But the TAC alleges nothing of the sort, and the Opposition cannot create allegations. These theories are also legally untenable. After four deficient complaints, the Court should now dismiss that claims against Marriott International, with prejudice.

## II. MARRIOTT INTERNATIONAL IS NOT DIRECTLY LIABLE TO J.C.

### A. Marriott International Did Not Knowingly Participate In A Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code.

The crux of the Opposition is that Congress intended, by amending the TVPRA, to effect a radical "paradigm shift in the hospitality industry." Opp. at 4-5. Plaintiff alleges this "paradigm shift" requires businesses like Marriott International to "take steps to prevent sex trafficking on their hotel properties . . . ." Opp. at 5. Citing no supporting authority or statutory history, the Opposition invokes, as an ostensible analog, Title VII—a statute which prohibits discrimination on the basis of race, religion, sex, or national origin, which has nothing to do with this case. Opp. at 4 n. 6. The Opposition relies on this strained construction because Plaintiff has alleged no plausible facts to support a TVPRA claim against Marriott International.

Plaintiff's sweeping construction of the TVPRA is plainly incompatible with the statute's text. Section 1595(a) imposes civil liability on "whoever *knowingly* benefits, financially or by receiving anything of value from *participation* in a *venture which* that person knew or should have

known *has engaged in an act in violation of this chapter*)." (emphases added).[2] Thus, civil liability under Section 1595(a) requires *knowingly* (1) benefitting from and (2) *participating* in (3) a sex trafficking *venture*. The Opposition, however, effectively deletes the words "participation in a venture" from the statute. As other courts have held, this reading makes no sense; to give these words meaning and effect, nonfeasance cannot give rise to civil liability under the TVPRA.[3]

Plaintiff does not deny that her claim must be dismissed under this standard. Instead, she misplaces reliance on another line of cases, purportedly standing for the proposition that "a defendant need not commit an 'overt act' to participate in a venture and [ ] defendant need not have actual knowledge of participation in sex trafficking itself to participate in a venture." Opp. at 7-9. In fact, these cases undermine Plaintiff's reading of TVPRA.

For example, in *A.B. v. Marriott International, Inc.*, No. 19-5770 (E.D. Pa. April 22, 2020), ECF No. 21-1 (hereinafter, "*A.B.*"), the court explained:

> We disagree with [plaintiff] to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We do not read the Act as requiring hotels …to affirmatively stop the trafficking.

*Id*. at 11; *see also B.M.*, at *7 ("To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking"). Moreover, the *A.B.* court explained that "only general conduct in the hotel industry" is not enough:

> [The complaint] inartfully includes numerous allegations regarding the problem of sex trafficking generally, the use of hotel and motel rooms as a venue for trafficking, efforts by private organizations and the Department of Homeland Security to combat human trafficking, and news reports on sex trafficking incidents involving other victims and other hotels. If A.B. made only these allegations, we may agree with Marriott. *Id*. at 26.

---

[2] The "chapter" referred to is Chapter 77 of Title 18 of the United States Code, i.e., 18 U.S.C. §§ 1581 et seq., including sex trafficking.

[3] Further, the Opposition incorrect states that *Shuvalova* "is misplaced as the plaintiffs in that case asserted claims under section 1589 of the TVPRA." Opp. at 9. But those plaintiffs *also* asserted claims under section 1595 – thus its analysis is directly on point. *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770, at *2, 3 n.3 ("[a]lthough the TVPRA is a criminal statute, section 1595 provides a private right of action under the Act.").

The court went on to describe allegations pertinent to A.B.'s trafficking. *See A.B.*, at 11.

In stark contrast, the TAC here relies precisely on "inartfully" pleaded allegations regarding general conduct in the hotel industry: statistics, news articles, and policy reports on human sex trafficking (TAC ¶¶ 46-71), allegations concerning Marriott's general knowledge of sex trafficking within the hospitality industry (TAC ¶¶ 72-89), and alleged awareness of largely different crimes committed in other states (TAC ¶¶ 90). None of these general allegations relates to the alleged wrongdoing carried out against J.C. by her trafficker. Under these circumstances, even under the construction Plaintiff proposes, the allegations fails to state a claim. *See B.M.*, at *6 ("The Complaint fails to allege facts as to how [the franchisors] knew or should have known Plaintiff was being trafficked. To support her direct liability theory, Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking[.]"); *S.Y. and C.S. v. Naples Hotel Co., et al.*, 20-cv-00118-JES-MRM, ECF No. 294, Opinion and Order, at 15 (M.D Fla. Aug. 5, 2020) (holding that allegations "regarding sex trafficking in general and its relationship with the hospitality industry should be stricken as irrelevant").

### B. Even If Constructive Knowledge Suffices, the TAC Does Not Plead Allegations Suggesting Marriott International Should Have Known of J.C.'s Trafficking.

Plaintiff is similarly mistaken in asserting that the authorities cited in her Opposition hold that a defendant may be liable without knowledge of the particular sex trafficking venture which harmed the plaintiff. Opp. at 7-9. Under any accepted reading of the TVPRA, the courts have required, at a bare minimum, actual or constructive knowledge of the sex trafficking of the *specific* plaintiff. Indeed, just a month ago, in dismissing a TVPRA claim against hotel franchisors, one federal court explained:

> [T]o conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between "should have known" and "might have been able to guess." Indeed, under plaintiff's theory, the liability of franchisors – which are further removed from the sex trafficking than the actual hotels are – would be much easier proven than the liability of the hotels themselves. This would make no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under that same statute for having only an abstract awareness of sex trafficking in general.

> The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture. The statutory text speaks in singular terms – "participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter." 18 U.S.C. § 1595(a) (emphases added). Therefore, knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA. Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA.

*S.J.* at *8 (emphases in original). Similarly, plaintiff's counsel, in another case with TVPRA claims nearly identical to the TAC here, conceded that the complaint did not state a direct TVPRA claim against Marriott International and other hotel franchisors. *See C.K. v. Wyndham Hotels & Res., Inc., et al.*, 19-cv-01412-MMH-MCR, ECF No. 125, Order (M.D. Fla. Jul. 7, 2020). While the Opposition falsely avers that Marriott International asks the Court to "convert the well-settled pleading standard of plausibility into a probability" (Opp. at 1), it is actually Plaintiff who asks the Court to go well beyond even the most generous possible reading of the TVPRA by converting the "should have known" standard into a conceivably "might have been able to guess" standard. As the *S.J.* Court pointed out, this reading makes no sense and leads to perverse results, making it more difficult to prove claims against the actual hotels where the alleged trafficking occurred than against distant, attenuated franchisors.

Consistent with this rationale, and contrary to the Opposition's suggestion, the authorities cited by Plaintiff found potential liability only where the defendant had actual or constructive knowledge of the "particular sex trafficking venture" that victimized the plaintiff. *See, e.g., Bistline v. Parker,* 918 F.3d 849, 874 (10th Cir. 2019) (co-conspirators' scheme for the express purpose of concealing the "forced labor and ritual rape of young girls"); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (co-conspirators exchanged "high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances" showing they were aware of the "abusive treatment" of the plaintiff as a "sex slave"); *H.H. v. G6 Hosp., LLC*, 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019) (a "member of the hotel housekeeping staff … discovered the Plaintiff chained up in the bathroom of the hotel room out of which she was being trafficked and despite the Plaintiff's desperate pleas for help, the staff person ignored her"); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019) (enterprise intended to conceal their co-

conspirators' rape of the plaintiffs, including by "making false and corrupting statements to Congress."). Plaintiff's cases are distinguishable on the "participation" and scienter elements, regardless of which construction of the TVPRA this Court applies.

Thus, it is false that Marriott International requires this Court to apply a "criminal standard to [ ] civil liability" in order to obtain a dismissal of Plaintiff's TVPRA claim. Opp. at 8. Instead, the Court need only apply the well-settled pleading standards and the plain language of the TVPRA to the TAC. And the TAC fails this test. The Opposition points only to Marriott International's general knowledge of sex trafficking, unrelated to J.C. (*see* Opp. at 9-10 (citing TAC ¶¶ 67, 71-72, 85-94, 169-170)); and that J.C.'s trafficking occurred at the Fremont Hotel (*see* Opp. at 10 (citing TAC ¶ 42)). But the Opposition overlooks a crucial missing element – there is no allegation any *Marriott International* employee witnessed any signs of sex trafficking related to J.C., nor that Marriott International should have discovered her trafficking through other means. Instead, as this Court previously recognized, Plaintiff is "confus[ing]" direct and vicarious liability. *See* ECF No. 79 at 1.[4]

### C.   Marriott International Did Not Knowingly Benefit From The Venture.

Lastly, Marriott International did not "knowingly" benefit from the illegal venture. The TAC alleges that Marriott International received a royalty calculated as a portion of overall revenues from the Fremont Hotel where J.C. was allegedly trafficked. Opp. at 6-7. As discussed above, however, Marriott International did not know, nor should it have known, that any portion of that revenue was derived from criminals who were trafficking J.C. *See supra* Part II.B. The Opposition relies on cases that find the "knowingly benefits" element "merely requires that Defendant knowingly receives a

---

[4] The Motion adequately explained why TAC ¶ 179 should not be considered. Mot. at 6-7. Plaintiff's authority on this point *supports* disregarding this allegation made on information and belief. *See* Opp. at 11 n. 10 (citing *Mendez v. AstraZeneca Pharmaceuticals LP*, 2012 WL 1911382 at *2 (E.D. Cal. May 25, 2012)). In *Mendez*, plaintiff explained the underlying basis for its "information and belief" through interrogatory responses. *Mendez*, 2012 WL 1911382 at *2. This supports that the law requires some explanation for Plaintiff's belief. *See Silicon Labs Integration, Inc. v. Melman*, 2010 WL 1838945, at *3 n. 1 (N.D. Cal. May 4, 2010); *Medrano v. Great Mercantile Agency, Inc.*, 2019 WL 3366108, at *4 (E.D. Cal. June 17, 2019). But Plaintiff does not allege the underlying basis for ¶ 179, nor does the Opposition attempt to explain this basis. The allegation must therefore be disregarded.

financial benefit" and nothing more. Opp. at 6 (internal citation omitted). As discussed above (*supra* Part II.A), that reading of Section 1595(a) is incompatible with the text of the statute, effectively nullifying key words (here, "knowingly"). The better construction of this element is that it requires "knowledge as to the benefit received *from trafficking*," and allegations supporting that element (properly construed) are absent. *Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (Dkt. No. 275 at 8) (emphasis added).

### III. MARRIOTT INTERNATIONAL IS NOT INDIRECTLY LIABLE TO J.C.

#### A. The TAC Does Not Sufficiently Allege the Fremont Hotel Is The Agent Of Marriott International

The Parties agree that federal common law determines whether Marriott International can be vicariously liable for the acts of its franchisee at the Fremont Hotel, if the TVPRA even allows for such secondary liability.[5] Nonetheless, Plaintiff failed to plead factual allegations of Marriott International's actual control of the Fremont Marriott necessary to satisfy the federal standard. Federal common law "emphasizes actual exercise of control, not right to exercise control." *Ambrose v. Avis Rent a Car Sys. Inc.*, 2014 WL 6976114, at *10 (C.D. Cal. Dec. 8, 2014); Mot. at 13. Indeed, the cases Plaintiff cites which apply the federal standard confirm that: "In determining whether vicarious liability may be imposed, the 'extent of the control exercised by the principal' is the 'essential ingredient.'" *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (quoting *U.S. v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)); *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) ("Whether an agency relationship exists [ ] depends on the level of control a principal exerts over the agent."). Despite this, Plaintiff wrongly asserts that the federal common law of agency is coterminous with California law by citing a case that applied *New York* common law. Opp. at 15 (citing *Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 342

---

[5] The Opposition's attempt to distinguish *Jean Charles v. Perlitz*, 937 F. Supp. 2d 276 (D. Conn. 2013) is unavailing. Without providing a cite, the Opposition states: "The *Jean Charles* court itself relied on *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, which was limited to aiding and abetting liability." Opp. 14 n. 14. But *Central Bank* does not so limit its holding, and even the dissent recognized: "the majority's approach to aiding and abetting at the very least casts serious doubt . . . on other forms of secondary liability" and that case law "based upon *respondeat superior* and other common-law agency principles . . . appear unlikely to survive the Court's decision." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 201 (1994) (Stevens, J., dissenting).

(S.D.N.Y. 2018)); *cf. Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th Circ. 2019) (noting "vicarious liability and agency principles under California law...[are] distinct from principles articulated in the Restatement and from federal common law.").

Just as the federal common law agency standard requires a plaintiff to demonstrate that the principal controls the "manner and means" of the agent's activities (*see Thomas v. Taco Bell Corp.* 582 F. App'x 678, 679 (9th Cir. 2014)), determining agency in the franchisor-franchisee context depends on the franchisor's actual exercise of day-to-day control over the particular instrumentality of the harm. Mot. at 13. And the TAC fails to make these allegations. Apart from conclusory statements and legal conclusions (TAC ¶¶ 13(f); 143; 166; 167; 176), the TAC does not include a single factual allegation demonstrating that Marriott International controls the day-to-day operations of the front desk, housekeeping, security, or any other instrumentality of the hotel's operations implicated in Plaintiff's alleged harm. Rather, without citing the TAC, the Opposition posits that the instrumentality of Plaintiff's harm was Marriott International's "control over" the Fremont Hotel's training policies and its "monitoring (or ability to monitor) and control of guest internet usage and access." Opp. at 17.

This attempt fails. *First*, control over employee training alone is insufficient for agency liability.[6] And the TAC acknowledges Marriott International *did not* exercise control regarding "training sessions on human trafficking." TAC ¶ 146. Thus, it is not plausible that the instrumentality of Plaintiff's harm derived from Marriott International's purported control over training. *Second*, Marriott International's (current[7]) internet Terms of Use and Privacy Notice do not demonstrate control over the

---

[6] Plaintiff cannot meaningfully distinguish the cases Marriott International relies on in finding general agency allegations insufficient: *N.T. v. Taco Bell Corp.*, 411 F. Supp. 3d 1192, 1197 (D. Kan. 2019); *Acedo v. DMAX, Ltd.*, No. CV 15-02443, 2015 WL 12696176, at *29 (C.D. Cal. 2015); *Cha v. Hooters of Am.*, LLC, No. 12-cv-4523 (DLI), 2013 WL 5532745 (E.D.N.Y. 2013); *Temple v. McDonald's Corp.*, No. 11-7516, 2012 WL 848284 (E.D. Pa. March 13, 2012). As the Opposition admits (Opp. 18 n. 16), these cases show that allegations of day-to-day control are required. The TAC has only alleged day-to-day control in conclusory fashion and through speculation – and even a modest scrutiny of these allegations reveal they are misleading. *See* Mot. at 14 (Plaintiff's counsel admitting that "setting employee wages" means only that Marriott International requires employees are paid the legal minimum wage).

[7] The Opposition attempts to justify its reliance on current Terms of Use by stating: "That the policy cited in Plaintiff's TAC is current is of no consequence as Plaintiff has plausibly alleged that any similar

Fremont Hotel. Mot. at 14-15. Marriott International does not control or monitor that service. *See id.* Moreover, it is likewise implausible that a routine internet Terms of Use policy could be the instrumentality of Plaintiff's harm – indeed, there is no allegation that her traffickers ever used the Fremont Hotel's internet for any purpose, including as part of her trafficking.

### B. The TAC Has No Allegations Of Ratification Or "Direct Liability" For The Acts Of The Fremont Hotel

The Opposition concludes with two newly-manufactured legal theories lacking any connection to the TAC: that Marriott International ratified the conduct of the Fremont Hotel, and that Marriott International is "directly liable" for the acts of the Fremont Hotel. Opp. 18-20. Both arguments should be disregarded because the TAC does not bring claims based on these theories and the Opposition fails to cite a single factual allegation in support. *See Cupp v. Harris*, No. 216CV00523TLNKJN, 2018 WL 4584202, at *3 (E.D. Cal. Sept. 21, 2018) ("It is simply not the Court's job to sift through voluminous allegations to attempt to determine whether there may be a possible hidden cause of action."). Regardless, the TAC does not allege facts in support of either theory.

To establish agency based on a theory of ratification, "there must be 'an objectively or externally observable indication [ ] that the principal has exercised choice and has consented' to the acts of the purported agent." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (quoting *Restatement (Third) of Agency* § 4.01). "That means that the principal must have 'knowledge of the material facts,' also described as 'actual knowledge.'" *Id.* (quoting *Restatement (Third) of Agency* § 4.01). No such theory is plausibly alleged in the TAC. *First*, the allegations do not support a theory of ratification through "actual knowledge" or "willful blindness." There are no allegations Marriott International had "actual knowledge" of "the acts of the purported agent" – indeed, as explained in Section II.B., it is not plausible Marriott International even *should have known* of J.C.'s trafficking, let alone consented to the involvement, if any, of the Fremont

---

policy existed at all relevant times in the complaint." Opp. at 12 n. 11. But the Opposition fails to cite the paragraph where the TAC makes this allegation – because it does not exist.

Hotel. And Marriott International was not "willfully blind" to J.C.'s trafficking. Plaintiff again relies only on "Marriott's knowledge about sex trafficking and publicly stated polices" *in general* to divert from the lack of allegations of Marriott International's knowledge of, or willful blindness to, *J.C.*'s trafficking. Opp. at 19. This is insufficient. *Cf. S.J.*, at 8.

*Second*, there are no allegations, nor a cognizable legal theory, to hold Marriott International "directly liable" for the actions of the Fremont Hotel. As an initial matter, direct liability under the TVPRA is governed by the language of the statute itself, not case law analogizing to claims brought under different statutes and based on different theories of liability. Even so, none of the cases Plaintiff cites are applicable here. Opp. at 19. Three of these cases are products liability cases under different state laws, where the franchisor exercised control through, among other things, "selecting, approving, testing, recommending, and maintaining quality control" over the harmful products. *Miller v. D.F. Zee's* involved negligence claims brought by a franchisee's employee based on negligent training, not the TVPRA, and the court did not even analyze the merits of those claims. 31 F. Supp. 2d 792, 808 (D. Or. 1998). Finally, *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (D.C. Cir. 1985), has no bearing on this case whatsoever. *Good Humor* involved the doctrine of inherently dangerous activities, and the court expressly limited its holding to the "somewhat unusual circumstances" at issue in that case. *Id.* at 1307. Plaintiff fails to provide any supporting authority for the suggestion that operating a hotel is an "inherently dangerous activity" such that a franchisor can be held vicariously liable for the acts of a franchisee of a franchised hotel. To be sure, if operating a hotel was "inherently dangerous," then a franchisor would *always* be liable for injuries occurring at a hotel and the doctrine of vicarious liability would be entirely unnecessary.

**IV.    CONCLUSION**

For the foregoing reasons, Marriott International respectfully requests that this Court dismiss the Plaintiff's claims against Marriott International with prejudice and grant such other and further relief as the Court deems just and proper.

///

///

///

| | | |
|---|---|---|
| 1 | Dated: August 24, 2020 | DLA PIPER LLP (US) |
| 2 | | |
| 3 | | By: _____ |
| 4 | | MICHAEL P. O'DAY (admitted *pro hac vice*) |
| 5 | | ELLEN E. DEW (admitted *pro hac vice*) AMANDA L. MORGAN |
| 6 | | Attorneys for Defendant Marriott International, Inc. |