1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J.C.,

                    Plaintiff,

          v.

CHOICE HOTELS INTERNATIONAL,
INC., et al.,

                    Defendants.

Case No.  20-cv-00155-WHO

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS THE THIRD AMENDED
COMPLAINT**

Re: Dkt. Nos. 84, 85, 86

Over the past year, sex trafficking victims have filed numerous civil suits around the country against hotel chains alleging violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.[1]  In this suit, plaintiff J.C. sues defendants Choice Hotels International, Inc. ("Choice"), Hilton Worldwide Holdings, Inc. ("Hilton") and Marriott International, Inc. ("Marriott") for claims arising out of five brand hotels within California and Virginia where she was trafficked.  Defendants move to dismiss her TVPRA claim, under both direct and indirect liability theories, as well as her claim under the California Trafficking Victims Protection Act ("CTVPA"), California Civil Code section 52.5.  Hilton additionally moves to dismiss for improper joinder and lack of personal jurisdiction.

Defendants' motions to dismiss the CTVPA claim are GRANTED with prejudice because

---

[1] On December 9, 2019, plaintiffs in similar actions sought to centralize twenty-one cases pending in twelve district courts, including six in the Southern District of Ohio, five in the Northern District of Georgia, and the remaining cases in the District of Massachusetts, the Eastern District of Michigan, District of New Hampshire, Eastern District of New York, Northern District of New York, District of Oregon, Eastern District of Pennsylvania, Southern District of Texas, Eastern District of Virginia, and Western District of Washington.  On February 5, 2020, the Judicial Panel on Multidistrict Litigation denied centralization in the Southern District of Ohio.  *In re Hotel Indus. Sex Trafficking Litig.*, No. MDL 2928, 2020 WL 581882 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020).

1    J.C. fails to allege the intent element of her claim.  But, drawing reasonable inferences in her

2    favor, she plausibly pleads all three elements of her TVPRA claim – that each defendant (i)

3    knowingly benefitted from (ii) participation in a venture (iii) which it knew or should have known

4    was engaged in trafficking her.  She provides plausible links to support her direct liability theory

5    and sufficient allegations to support finding an agency relationship between the local hotels and

6    defendants for her indirect liability theory.  For these reasons, defendants' motions to dismiss the

7    TVPRA claim are DENIED.

8         The allegations also establish personal jurisdiction over Hilton for claims arising out of the

9    identified California and Virginia hotels.  Although Hilton claims that J.C. improperly named it as

10   the franchisor entity, that is not an appropriate reason for dismissal at this stage.  Hilton's motion

11   on these grounds is DENIED.

12                                  **BACKGROUND**

13   **I.      FACTUAL BACKGROUND**

14        In 2008, J.C. was kidnapped by her trafficker at a gas station near Kaplan College in

15   Sacramento, California, where she was a student.  Third Amended Complaint ("TAC") [Dkt. No.

16   82] ¶ 5.  Between 2008 and early 2019, her trafficker routinely harbored her at hotels throughout

17   California and Virginia, including: (i) the Comfort Inn in Santa Cruz, California; (ii) Embassy

18   Suites by Hilton in Alexandria, Virginia; (iii) DoubleTree by Hilton in Sacramento, California;

19   (iv) Hilton Arden West in Sacramento, California; and (v) the Fremont Marriott in Fremont,

20   California.  *Id.* ¶¶ 10, 39.

21        J.C. was kept at these hotels over extended periods of time, "unable to leave and visibly

22   deteriorating"; "her trafficker always renting the room for a number of weeks, paying in smaller

23   increments, and requesting an inordinate amount of towels."  *Id.* ¶ 40.  A steady stream of men,

24   who were not registered guests of the hotels, would enter and exit her room.  *Id.* ¶¶ 39, 41–43.

25   J.C. and her trafficker would visit the hotels frequently and returned to each of the hotels

26   numerous times.  *Id.* ¶¶ 40–43.  She also recalls altercations in the Santa Cruz Comfort Inn,

27   Fremont Marriott, and Alexandria Embassy Suites that should have alerted hotel staff of her

28   situation.  *Id.* ¶¶ 41–43.  She alleges that defendants had actual and/or constructive knowledge of

United States District Court
Northern District of California

2

her victimization given many "apparent red flags." *Id.* ¶ 45.

She claims that defendants knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture by leasing rooms to her trafficker when they knew, or should have known, the rooms were being used for sex trafficking. *Id.* ¶¶ 225–238. She further alleges that, despite their public statements to the contrary, defendants did not take reasonable measures to prevent trafficking at their hotels and instead maintained an ongoing reputation for discretion that allowed them to financially benefitted from her trafficking and the steady stream of income that sex traffickers brought to their hotels. *Id.* ¶¶ 234, 239.

## II.    PROCEDURAL BACKGROUND

On June 5, 2020, I granted defendants' motions to dismiss the Second Amended Complaint ("SAC") with leave to amend. *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. Jun. 5, 2020). I asked J.C. to file an amended complaint "that parses out her direct and indirect liability theories and articulates factual allegations that support those theories [and] would clarify [her] claims." *Id.* She filed her TAC on July 6, 2020. Before me are defendants' second round of motions to dismiss, for which I heard oral argument on September 23, 2020. Defendant Hilton Worldwide Holdings Inc.'s Motion to Dismiss the Third Amended Complaint Under Rules 12(b)(2), 12(b)(6), and 21 ("Hilton MTD") [Dkt. No. 84]; Defendant Marriott International, Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Third Amended Complaint ("Marriott MTD") [Dkt. No. 85]; Defendant Choice Hotels International, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint ("Choice MTD") [Dkt. No. 86].

## LEGAL STANDARD

## I.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

United States District Court
Northern District of California

544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In the absence of a federal statute guiding personal jurisdiction, the district court applies the law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Id.* For the exercise of personal jurisdiction over a defendant, due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Where a defendant seeks dismissal for lack of personal jurisdiction, the plaintiff has the burden to demonstrate that personal jurisdiction exists. *In re W. States Wholesale Natural Gas Antitrust Litig.,* 715 F.3d 716, 741 (9th Cir. 2013). "However, the plaintiff must make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (internal quotation marks omitted). "[U]ncontroverted allegations in the complaint must be taken as true,"

and "[c]onflicts between parties over statements contained in affidavits must be resolved in the

plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004)

(internal quotation marks omitted).

## DISCUSSION

## I.     MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.     Civil Liability under Section 1595 of the TVPRA

In 2000, Congress passed the Trafficking Victims Protection Act, creating criminal

offenses for forced labor and sex trafficking.  Three years later, Congress passed the TVPRA,

adding a civil right of action by victims of trafficking against their traffickers.  In 2008, Congress

expanded victims' remedies to not only traffickers, but also those who facilitate trafficking

ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added).  Section 1595 "opened the door for liability against

facilitators who did not directly traffic the victim, but benefitted from what the facilitator should

have known was a trafficking venture."  *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181

(E.D. Pa. 2020) (quoting *Gallant Fish, No Rest for the Wicked: Civil Liability Against Hotels in

Cases of Sex Trafficking*, 23 Buff. Hum. RTS. L. Rev. 119, 138 (2011)).

To state a claim under a section 1595(a) beneficiary theory, J.C. must allege facts from

which it can reasonably inferred that Choice, Hilton and Marriott (1) "knowingly benefit[ted]

financially or by receiving anything of value"; (2) from participation in a venture; (3) they "knew

or should have known has engaged in" sex trafficking.  *A.B.*, 455 F. Supp. 3d at 181 (citation

omitted).  J.C. asserts her TVPRA claim under both direct liability and indirect liability theories.

#### 1.     Direct Liability

##### a.     Knowingly Benefit

"To satisfy the first element, [J.C.] must plausibly allege the [defendants] 'knowingly

benefit[ted] financially or by receiving anything of value' from the trafficking venture. *A.B.*, 455 F. Supp. 3d at 190. J.C. alleges that defendants "directly benefitted from the trafficking of [her] on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels." TAC ¶ 250; *see id.* ¶¶ 11(d)–(e), 202–03 ("Choice receives a percentage of the gross room revenue from the money generated by operations of all Comfort Inn hotels, including a percentage of the rate charged for the rooms in which J.C. was trafficked."); *id.* ¶¶ 13(d)–(e), 183–84 (same as to Marriott); ¶¶ 12(d)–(e), 221–22 (same as to Hilton).

Defendants argue that this allegation is insufficient because J.C. does not explain how they were aware that any funds paid as part of the normal course of business were in any way connected to the alleged acts. Choice MTD 10–11; Marriott MTD 7–8; Hilton MTD 8–9. As the Hon. Judge Beth L. Freeman recently found, this "interpretation of the statute reads a requirement for 'actual knowledge' of criminal sex trafficking into the civil statute, reading out the 'should have known' language." *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. Jul. 30, 2020). The "knowingly benefit" element of section 1595 "merely requires that Defendant knowingly receive a financial benefit" and the rental of a room (or defendants' receipt of royalties for that rental) constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element." *Id.* (citation omitted).

Several other courts have also found similar allegations sufficient. *See, e.g., M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019) ("T]he rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the [section] 1595(a) standard."); *A.B.*, 455 F. Supp. 3d at 191 (same); *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (same); *A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *4 (S.D. Ohio Jun. 16, 2020) (same); *S. Y. v. Naples Hotel Co.*, 2020 WL 4504976, at *3 (M.D. Fla. Aug. 5, 2020) (same); *A.B. v. Hilton Worldwide Holdings Inc.*, 2020 WL 5371459, at *7 (D. Or. Sept. 8, 2020) (same).

J.C.'s allegations are sufficient to meet the "knowingly benefitted" element at the motion to dismiss stage.

**b.      Knew or Should Have Known the Venture Was Engaged in Trafficking**

While J.C. need not allege that defendants had actual knowledge of her sex trafficking, she must allege facts to support that defendants, at the very least, rented rooms to people they should have known were engaging in her sex trafficking.  She previously failed to do that in her SAC because she "relie[d] on an agency theory to prove [this] element of her TVPRA claim, that the local hotel staff 'knew or should have known' J.C. was being trafficked given the allegedly obvious signs, and that this actual or constructive knowledge is imputed to the hotel chains."  *J.C.*, 2020 WL 3035794, at *1.  The TAC now parses out her direct and indirect liability theories and includes plausible allegations as to both.

J.C. claims that between 2008 and early 2019, her traffickers routinely harbored her at hotels throughout California and Virginia, including the five particular brand hotel locations at issue in this case.  TAC ¶ 39.  She sufficiently alleges details about the "apparent red flags" that she and her traffickers exhibited at each of these hotels, including: (i) long periods of stay over multiple days or weeks; (ii) frequently returning to same location numerous times, often with different guests and without any luggage; (iii) traffickers checking J.C. in and then not proceeding to the room; (iv) paying for the room in cash and paying in smaller increments; (v) a steady stream of men, who were not registered hotel guests, entering and exiting J.C.'s room; (vi) requesting inordinate amount of indicative items like towels; and (vii), J.C.'s visibly deteriorating appearance, often avoiding all eye contact and displaying prominent bruising all over her person while in the constant presence of her trafficker.  *Id.* ¶¶ 40–44, 245, 299.

In addition to the above allegations, she recalls specific situations that should have alerted hotel staff of her situation.  *Id.* ¶ 41 ("J.C. was attacked by another victim" at the Santa Cruz Comfort Inn and "suffered a bloody lip"; "[she] went to hotel security staff for help but the police were never called"); *id.* ¶ 42 ("[T]here were altercation between victims in the public areas of the [Fremont Marriott] that should have altered hotel staff to the nature of their activity"); *id.* ¶ 43 ("J.C. and her traffickers were asked to leave the [Embassy Suited by Hilton in Alexandria, Virginia] on multiple occasions because of the traffic into the room, but police were apparently never called.").  She further alleges:

Obvious signs of sex trafficking at a hotel, including Defendants' brand hotels, including the franchise locations at issue in this case, may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.

*Id.* ¶ 66.

These allegations are more than sufficient to state a claim that the local hotels knew or should have known J.C. was a sex trafficking victim.  *Id.* ¶ 45.[2]  The question is, however, whether the TAC alleges facts to show that Choice, Marriott, and Hilton (the franchisors or the ultimate parent company of the franchisor) knew or should have known J.C. was being trafficked to support a direct liability theory.

I agree with defendants that general allegations about sex trafficking problems throughout the hospitality industry is not enough to put them on notice about the sex trafficking of this plaintiff.  *See B.M.*, 2020 WL 4368214, at *6 (finding similar allegations stated above "support a theory that the staff at the franchisee hotels where Plaintiff was trafficked knew or should have known about her trafficking," but fail to show how the franchisor or parent of ultimate parent of franchisor "knew or should have known [she] was being trafficked"); *see also A.B. v. Hilton*

---

[2] These allegations match the type of allegations found sufficient in other cases for a local hotel's actual and/or constructive knowledge.  *See, e.g.*, *B.M.*, 2020 WL 4368214, at *6; *M.A.*, 425 F. Supp. 3d at 962; *A.B.*, 455 F. Supp. 3d at 193.

It is unlike the allegations the Hon. Judge Haywood S. Gilliam found insufficient in *J. B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020).  In that case, plaintiff described instances when she was either in a car in the parking lot or in rented rooms to conclude that Economy Inn employees and managers should have been aware that she was being trafficked.  *Id.* at *10.  Judge Gilliam found these allegations insufficient because plaintiffs specifically noted that the car windows were covered up and that she never sought help from Economy Inn staff.  Although she left belongings like shoes, clothing, and make up in the hotel room, she did not return for over eight months.  *Id.*  Judge Gilliam made clear that he "does not suggest that the alleged facts must be [as] egregious [as other cases] to state a claim."  *Id.* at *11 (citing *M.A.*, 425 F. Supp. 3d at 962 and *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017)).  Rather, the other cases "highlight that allegations that the victim sought help and was seen by employees with physical injuries or other facts suggesting coercion allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

*Worldwide Holdings Inc.*, 2020 WL 5371459, at \*9 (D. Or. Sept. 8, 2020) ("To support her direct liability theory, Plaintiff must allege facts showing how Hilton, Wyndham, Marriott, and Red Lion received notice that Plaintiff A.B. was trafficked at their respective properties and she has not done so.").   But unlike *B.M.* and *A.B.*, J.C. provides plausible allegations to show that these defendants had actual and/or constructive knowledge about *her* sex trafficking as opposed to just sex trafficking problems in the hospitality industry in general.

She alleges, upon information and belief, that defendants "monitored criminal activity occurring at hotels under its brand," "regularly review[ed] and monitor[ed] customer reviews of its properties," and "discussed, developed, and implemented uniform policies and procedures to identify, prevent and mitigate the risk of human trafficking occurring at [their] properties, including [the hotels where J.C. was trafficked]."  TAC ¶¶ 86, 91–92, 97, 104, 107, 114–15; *see also id.* ¶¶ 85, 95, 106.  She further alleges that employees at these hotels "were aware of [her] trafficking and pursuant to corporate-wide policies, reported such activity directly to [defendants], including illegal website use, booking and reservation history; payment by cash for several rooms at a time and visits from multiple men throughout the day."  *Id.* ¶¶ 179, 198.[3]

Defendants take issue with these allegations based on "information and belief".  The Ninth Circuit has held that the *Iqbal/Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief.  *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Arista Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)).  An allegation made on information and belief is sufficient "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."  *Id.*

J.C. adequately explains the basis for her "information and belief" allegations.  Elsewhere

[3] I note that the TAC does not include this exact paragraph in the section discussing Hilton's actions, but J.C. refers to it in her opposition as if it was there but inadvertently omitted.  *See* Plaintiff's Opposition to Defendant Hilton Worldwide Holdings, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint [Dkt. No. 91] 1 ("By failing to act, and by failing to train hotel staff how to respond (including reporting to Hilton) when someone is being trafficked, Hilton became a participant in J.C.'s exploitation."); *see* TAC ¶ 156 ("Hilton failed to train, implement and enforce any of its own anti-trafficking policy or policies to protect Plaintiff from being sex trafficked.").

1   in the TAC, she points to the publicly-disclosed human trafficking policies and trainings

2   implemented by each of the defendants that make it plausible that local hotel staff, pursuant to the

3   guidance provided in such policies and trainings, reported to them incidents involving J.C.

4         Choice's human right policy includes an online training program to "educate management

5   and staff at . . . franchised hotels," and which has been completed nearly 30,000 times.  TAC ¶ 99

6   (quoting Choice "Human Rights Policy" webpage); *see also id.* ¶¶ 100–102 (Choice is in "ongoing

7   communication with its local hotels by including articles about human trafficking in newsletters,

8   announcements at annual conferences, and alerts to hotels in high risk areas or in proximity to

9   high-risk events" and brags that is has "field-based associates" who visit hotels specifically to

10  discuss human and sex trafficking issues) (quoting Choice "Human Rights Policy" webpage).

11        Marriott's human right policy "'provides associate training on human trafficking

12  awareness and prevention'" and "in a partnership with ECPAT (End Child Prostitution,

13  Pornography and Trafficking of Children for Sexual Purposes), developed a training module in

14  2010 or 2011 for hotel management and staff."  *Id.* ¶¶ 86–90 (quoting Marriott "Human Rights

15  Commitment" webpage); *see also id.* ¶ 168 ("At Marriott, our commitment to human rights is

16  governed by Marriott's Human Rights Council.  Marriott implements a human rights due diligence

17  and risk management process to identify, prevent and mitigate relevant risks.") (quoting Marriot

18  "Human Rights Statement" webpage); *id.* ¶ 67 ("[E]xamples of the visible and hidden warning

19  signs that Marriott shares with its hotel staff" include "[m]inimal luggage and clothing,"

20  "[m]ultiple men seen being escorted one at a time to a guest room," and "[i]ndividuals who can't

21  speak freely or seem disoriented") (quoting January 2019 Marriott press release titled "Marriott

22  International Has Trained 500,000 Hotel Workers to Recognize the Signs of Human Trafficking").

23        Hilton also signed the ECPAT Code of Conduct and publicly stated that it has been

24  "providing training on human trafficking risks to all our hotels," with a commitment to "never

25  allow any Hilton properties, products, or services to be used in any manner that supports or

26  enables any form of abuse and exploitation."  *Id.* ¶¶ 107–111 (quoting Hilton "Human Rights

27  Policy Statement" webpage); *see also id.* ¶ 118 n.93 (Hilton "announced in December 2017 that

28  anti-trafficking training would be mandatory for all hotels globally as part of our required Brand

United States District Court
Northern District of California

1    Training") (citing Hilton "Slavery and Human Trafficking Statement" webpage).

2        At this stage, there need only be a reasonable inference connecting these defendants for a

3    direct liability claim.  J.C. sufficiently alleges that local hotel staff knew or should have known

4    J.C. was a victim of sex trafficking given the red flags that she exhibited.  Pursuant to the policies

5    Choice, Marriott, and Hilton have publicly disclosed, which includes training local hotel staff on

6    sex trafficking issues, it is plausible that the local hotel staff reported incidents involving J.C. up

7    the chain, such that each defendant knew or should have known that J.C. was being trafficked.

8                    c.        **Participation in a Venture**

9        Defendants argue that J.C. is required to specifically allege their participation in a sex-

10   trafficking venture, not just any venture.  I have already considered and rejected this argument.  As

11   I stated before, "I agree with the statutory construction analysis in *M.A. v. Wyndham Hotels &*

12   *Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019), where the court concluded that applying

13   the 'participation in a venture' definition from the criminal liability section of the TVPRA, section

14   1591(e)(4), to the civil liability section of the TVPRA, section 1595, would void the 'should have

15   known' language in the civil remedy." *J.C.*, 2020 WL 3035794, at *1 n.1.  This violates the

16   "cardinal principle of statutory construction that a statute ought, upon the whole, to be construed

17   so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or

18   insignificant." *Id.* (citing *M.A.*, 425 F. Supp. 3d at 969).

19       Numerous other courts have followed this reasoning since I issued my previous order,

20   including Judge Freeman in this District.  *See, e.g.*, *B.M.*, 2020 WL 4368214, at *3; *A.C.*, 2020

21   WL 3256261, at *6; *A.B.*, 2020 WL 5371459, at *7.  Accordingly, J.C. is not required to allege an

22   overt act in furtherance of a sex trafficking venture in order to sufficiently plead her section 1595

23   civil liability claim.

24       With that understanding, I analyze whether J.C. has sufficiently pleaded defendants'

25   "participation in a venture".  She alleges that defendants "actively participated in this illegal

26   endeavor by knowingly or negligently providing lodging to" not only "[her] traffickers in which to

27   harbor [her] while he was trafficking her," but also "to those who purchased sex from [her]."

28   TAC ¶ 237–38.

United States District Court
Northern District of California

Unlike *B.M.*, where Judge Freeman found that the "direct liability theory against Wyndham and Choice [was] insufficiently [pleaded] as to the 'participation in venture' element because the Complaint fail[ed] to connect the dots between Plaintiff's alleged sex trafficking and these Defendants," J.C. has plausibly connected the dots here.  2020 WL 4368214, at *5.  As discussed above, she does not simply rely on Choice, Marriott and Hilton's actual or constructive knowledge about general sex trafficking problems at their hotels.  Rather, she sufficiently alleges that they knew or should have known that *she* was being trafficked at specific hotel locations given purported policies that hotel staff who observe "obvious signs", like the ones J.C. exhibited, report such incidents up the chain to the corporate defendants named in this suit.  She therefore plausibly pleads that defendants directly "participated in a venture" by providing lodging to people it knew or should have known were engaged in *her* sex trafficking.  *See M.A.*, 425 F. Supp. 3d at 971 (plaintiff sufficiently pleaded that defendants "'participated in a venture' under [section] 1595 by alleging that [d]efendants rented rooms to people it knew or should have known were [sic] engaged in sex trafficking"); *H.H.*, 2019 WL 6682152, at *4 (allegation the defendant "repeatedly rented rooms and thereby 'participated in trafficking'" was sufficient);

Because J.C. has plausibly pleaded all three elements of her direct liability TVPRA claim, defendants' motions to dismiss are DENIED.

### 2.    Indirect Liability

J.C. also seeks to hold defendants vicariously liable under both actual and apparent agency theories.  TAC ¶¶ 177–78 (Marriott); *id.* ¶¶ 195–96 (Choice); *id.* ¶¶ 217–18 (Hilton).  Her apparent agency theory fails, but her actual agency theory is plausibly pleaded.[4]

---

[4] "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question."  *Lushe v. Verengo Inc.*, No. CV 13-07632, 2015 WL 500158, at *4 (C.D. Cal. Feb. 2, 2015).  J.C. alleges that each defendant held out its respective branded hotel to the public as possessing authority to act on its behalf.  TAC ¶¶ 177, 196, 218.  But she fails to allege that any representation was made to her by defendants or that she herself reasonably relied on any such representation.  *See A.B.*, 455 F. Supp. 3d at 197 (finding plaintiff does not plead an apparent agency theory because "given the facts as alleged, we do not see how she relied on any representation (which is not alleged) by Marriott regarding its franchisee hotels somehow caused her injury"); *see also A.B.*, 2020 WL 5371459, at *12 ("[A]n apparent agency theory of liability does not comport with the underlying facts of this case," where plaintiff's "claim is premised on the notion that she was taken to the hotels against her will to be sex trafficked").  J.C. also raises

United States District Court
Northern District of California

United States District Court
Northern District of California

1   As an initial matter, Choice and Marriott argue that the TVPRA does not provide for

2   agency liability.  Choice MTD 13–14; Marriott MTD 12.  Judge Freeman and numerous other

3   judges outside this District have rejected this argument, as do I.  *B.M.*, 2020 WL 4368214, at *7

4   ("Neither Wyndham nor Choice has provided any authority to support the assertion or explain

5   why the well-established agency liability is inapplicable to TVPRA claims."); *M.A.*, 425 F. Supp.

6   3d at 972 (denying motion to dismiss allegations of vicarious liability under agency theory for a

7   TVPRA civil claim).

8   In my previous order, I noted that "the TVPRA is silent on the issue of indirect liability,

9   which suggests that the federal common law of agency should apply."  *J.C.*, 2020 WL 3035794, at

10   *1.  Ninth Circuit courts apply common law agency principles from the Restatement (Third) of

11   Agency.  *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018).  "In determining

12   whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is

13   the 'essential ingredient.'"  *Id.* (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir.

14   2010)); *see also* Restatement (Third) of Agency § 7.07 cmt. f (identifying these same factors as

15   useful in evaluating whether a principal exercises sufficient control over an agent's work to

16   establish vicarious liability to the same extent as if an employer-employee relationship existed).

17   Defendants argue that J.C. fails to sufficiently allege an actual agency relationship because

18   the allegations in the TAC merely illustrate a typical franchisor-franchisee relationship.  They

19   agree that the franchisor-franchisee relationship is not a principal-agent relationship unless the

20   franchisor exercises control over the day-to-day operations of the franchisee such that it controls

21   the instrumentality that caused the plaintiff's harm.  Hilton MTD 13; Choice MTD 15; Marriott

22   MTD 13. [5]

23   J.C. has met her burden of alleging a plausible claim for an actual agency relationship

---

ratification and joint employer theories in her opposition briefs, but those theories are not pleaded
in the TAC.

[5] Defendants note that the primary difference between federal and California agency law is that
"the federal common law agency approach [] emphasizes actual exercise of control, not right to
exercise control."  *Ambrose v. Avis Rent a Car Sys. Inc.*, 2014 WL 6976114, at *10 (C.D. Cal.
Dec. 8, 2014).  The analysis I conduct here focuses on the exercise of control.

1    between each of the defendants and the corresponding local hotels.  For example, she alleges that

2    an agency relationship was created through "Marriott's exercise of an ongoing and systematic

3    right of control over its hotels, beyond that which is necessary to maintain brand standards,"

4    including "hosting online bookings," "setting employee wages," "making employee decisions,"

5    and "standardized training methods for employees."  TAC ¶ 176; *id.* ¶ 195 (same as to Choice); *id.*

6    ¶ 217 (same as to Hilton).

7         These allegations, if proven, support her agency theory and are enough to get her past the

8    pleadings stage.  *See B.M.*, 2020 WL 4368214, at *6 (finding similar allegations sufficient to plead

9    an agency relationship under California law); *A.B.*, 2020 WL 5371459, at *10 (finding similar

10   allegations sufficient to plead an agency relationship under federal common law, where plaintiff

11   alleged facts to support her theory that defendants had authority to control aspects of the hotel

12   operations connected to her claim, including "hosting online bookings," "making employment

13   decisions," and "controlling training and policies"; dismissing indirect liability claim on other

14   grounds); *S.Y.*, 2020 WL 4504976, at *4 ("Plaintiffs correctly respond that they do not need to

15   prove an agency relationship at this stage, but simply set forth plausible allegations that one exists.

16   [citation omitted].  Having reviewed the allegations at issue, the Court finds them sufficient to

17   satisfy the motion to dismiss standard.").[6]

18        At the hearing, Choice pointed out that the Federal Trade Commission and the Lanham

19   Act, 15 U.S.C § 1127, require it to do the alleged "controlling" acts with respect to maintaining its

20   position as a franchisor.  Therefore, it argued, under J.C.'s indirect liability theory, hotel brands

21   would be inherently liable under the TVPRA for simply doing the things they are required to do in

22   order to meet the definition of franchisor.  This argument mischaracterizes J.C.'s indirect liability

23   theory.  She is not seeking to hold Choice, or any of the other defendants, indirectly liable for

24   simply doing the things it usually does as a franchisor.  Rather, she is seeking to hold them

25   ――――――――――――――――

26   [6] J.C. also alleges that defendants controlled the terms of service for internet access at the brand
     hotels and thereby retained control and ability to monitor internet use at the hotels to block
27   websites like Backpage.com. TAC ¶¶ 119–41.  The significance of this allegation is unclear
     because J.C. does not clearly say that her traffickers ever used the internet for any purpose,
28   including as part of her trafficking.  Regardless, J.C. has sufficiently alleged an actual agency
     relationship based on the allegations discussed above.

14

United States District Court
Northern District of California

1  indirectly liable because they exercised control over local hotels as it relates to the means and

2  methods (or instrumentality) of her harm.  This includes day-to-day operations in a number of

3  areas, and specifically with respect to "the control it assumed in educating, implementing, and

4  directing its hotels" about human trafficking, "including the hotels where J.C. was trafficked."

5  TAC ¶ 219; *id.* ¶ 200 (same as to Choice); *id.* ¶ 181 (same as to Marriott); *see Lomeli v. Jackson*

6  *Hewitt, Inc.*, No. 217CV02899-ODW (KSx), 2018 WL 1010268, at *7 (C.D. Cal. Feb. 20, 2018)

7  (finding that franchisor could be found vicariously liable where it controlled the training of

8  employees, which was the instrumentality of the alleged harm).

9       In addition to the "standardized training" allegation mentioned above, J.C also alleges that

10  defendants developed specific training for local hotel staff to address human trafficking problems.

11  *See id.* ¶ 87 (Marriott "'provides associate training on human trafficking awareness and

12  prevention'") (quoting Marriott website); *id.* ¶ 99 (Choice "launched an online training module

13  entitled 'Combatting Human Trafficking In Your Hotel' for its management and staff," which is

14  directed to local hotels in order to "'educate management staff at . . . franchised hotels.'") (quoting

15  Choice website); *id.* ¶ 111 (Hilton claims it has been "'providing training on human trafficking

16  risks to all our hotels'") (quoting Hilton website).  Defendants made public agreements with

17  organizations like ECPAT, committing themselves to such efforts.  *See id.* ¶¶ 89, 93–94, 111,

18  116–18, 120.

19       J.C.'s vicarious liability TVPRA claim is therefore plausibly alleged.  To be clear, this

20  does not mean that section 1595 of TVPRA requires "hotels or their franchisors to affirmatively

21  stop sex trafficking."  *B.M.*, 2020 WL 4368214, at *7.  But, like *B.M.*, J.C "has alleged sufficient

22  facts to support a plausible claim that [defendants] received financial benefits from a venture they

23  vicariously participate in (through their franchisees) that the franchisees should have known was

24  engaged in sex trafficking of [J.C.] in violation of section 1595."  *Id.*  Defendants' motions to

25  dismiss the indirect liability TVPRA claim are DENIED.

26            **3.**       **Group Pleading/Shotgun Pleading**

27       Choice moves to dismiss the TAC as an impermissible shotgun pleading violating Rule

28  8(a).  Choice MTD 4.  "Shotgun pleadings are pleadings that overwhelm defendants with an

unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec.*, LLC, No. SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). Although the TAC contains many allegations that relate to the hospitality industry in general, it also includes numerous allegations specific to J.C's trafficking at defendants' identified hotel locations. *See* supra. To the extent that she includes allegations "upon information and belief", I find that those allegations are plausible when the TAC is read as a whole with reasonable inferences drawn in J.C.'s favor.

Hilton contends that J.C. has failed to plead specific facts about its California hotel locations, the DoubleTree Sacramento and Hilton Arden West. Hilton MTD 10. J.C. has alleged specific details regarding the frequency of her visits at Hilton's Virginia location (TAC ¶ 43), Marriott's Fremont location (*id.* ¶ 42), and Choice's Santa Cruz location (*id.* ¶ 41), as well as a timeline of when she was there and particular altercations that could have alerted staff at those locations about her situation. Hilton notes that the TAC is devoid of similar details in connection to its California locations.[7]

But these separate paragraphs about Hilton's Virginia location, Choice, and Marriot only add to J.C's already sufficiently pleaded allegations about the obvious signs exhibited at all the hotels at issue here, such as checking in with little or no luggage, renting rooms for multiple weeks, the "steady stream" of men entering and leaving her rooms, cash payments for the rooms and paying in smaller increments, her "visibly deteriorating appearance," and the "inordinate amount" of indicative items like towels. TAC ¶¶ 40, 229. That she has not alleged similar additional facts about Hilton's California hotels as she does for other hotel locations does not necessarily doom her claims against Hilton.

For example, the plaintiff in *B.M.* alleged facts as to all hotel locations (*e.g.*, procession of

---

[7] Hilton points out that the SAC included a paragraph that referenced the years of J.C.'s alleged trafficking at its California locations, but the paragraph no longer appears in the TAC. *See* Second Amended Complaint [Dkt. No. 67] ¶ 122 ("J.C.'s trafficker would also force them into sexual exchanges at the DoubleTree® Sacramento, and Hilton Arden West several times from 2009 to early 2010. While J.C. was housed at the DoubleTree® Sacramento, and Hilton Arden West [sic], a steady stream of men, who were not registered hotel guests, would enter and leave the hotel.").

men entering and exiting the room, renting two adjoining rooms, and other signs like large amounts of condoms, cash payments, and plaintiff's physical appearance). *B.M.*, 2020 WL 4368214, at *5–6. She also alleged some specific examples as to some of the hotel locations at issue (*e.g.*, employees at one hotel threatened to eject her and her traffickers). *Id.* at *7. Judge Freeman acknowledged similar practical issues raised by one of the defendants in that case, for which plaintiff failed to allege "when she visited each location at issue, how frequently she visited, and for what period of time." *Id.* at *8. But I, like Judge Freeman am "not persuaded that these concerns warrant a dismissal of the entire Complaint as a 'shotgun pleading'"; instead these concerns "can be resolved through case management conferences and discovery motions." *Id.*

Although Judge Freeman ultimately instructed that plaintiff to add as many details as possible about her stays at each location because she was already granting leave to amend on other issues, I find that the TAC contains sufficient facts to meet the Rule 8 notice requirement for purposes of surviving a motion to dismiss. While the TAC is not a model for specificity, it does include factual allegations to each defendant and "identifies the specific hotel locations where she was allegedly trafficked and ties those locations to each [d]efendant." *B.M.*, 2020 WL 4368214, at *7. Defendants' motions to dismiss the TVPRA claim on this basis are DENIED.

### B.    California Civil Code Section 52.5

The CTVPA allows victims to seek damages for violations of California Penal Code section 236.1, which in turn provides: "Any person who deprives or violates the personal liberty of another *with the intent* to . . . obtain forced labor or services, is guilty of human trafficking." Cal. Penal Code § 236.1(a). The CTVPA does not include negligent "should have known" language as in the TVPRA; cases interpreting the CTVPA have required plaintiffs to plausibly allege intent at the pleading stage.

I previously found that J.C. did not sufficiently allege the intent element under the CTVPA. *J.C.*, 2020 WL 3035794, at *2. She has not fixed the deficiency in her TAC and none of her opposition briefs address the CTVPA claim. *See Roy v. Contra Costa Cty.*, No. 15-CV-02672-TEH, 2015 WL 5698743, at **3 n.7 (N.D. Cal. Sept. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain

claims, the non-moving party has conceded that those claims fail.").  Because the TAC fails to correct the deficiencies I previously noted, defendants' motions to dismiss the CTVPA claim is GRANTED with prejudice.

## II.        MOTION TO DISMISS FOR IMPROPER JOINDER

Hilton moves to be dismiss itself from this action as an improper party under Federal Rule of Civil Procedure 21.  Hilton MTD 18.  Under Rule 21, "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  Rule 21 does not define misjoinder, but "federal courts have uniformly held that misjoinder [under Rule 21] occurs when a single party or multiple parties fail to satisfy the conditions for permissive joinder set forth in Federal Rule of Civil Procedure 20(a)."  *A.B.*, 2020 WL 5371459, at *14 (citation omitted).  Rule 21 applies only if the claims asserted against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact.  *Id.*; *Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.*, 916 F. Supp. 1024, 1029 (D. Nev. 1996) (internal quotation omitted).  District courts have broad discretion under Rule 21 to dismiss an improper party.  *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977).

Hilton argues that it is an improper defendant in this case because it is far removed in the corporate structure from the hotels identified by J.C.  Hilton MTD 19.  It contends that it is not the franchisor but the parent company of the franchisor; a holding company that only manages and issues stock and conducts no substantive operative activities.  *Id.*  It therefore asks to be dismissed from this case because J.C.'s vicarious liability claims are made out against the franchisors and she has failed to name the actual Hilton franchisor subsidiary here.

Failure to name the correct Hilton franchisor entity is not sufficient reason for dismissal under Rule 21.  *A.B.*, 2020 WL 5371459, at *14 (denying similar Rule 21 motion by the same Hilton entity, finding "[t]his is an improper use of Rule 21"); *Braun v. Primary Distrib. Doe No. 1*, No. 12-3690 YGR (JSC), 2012 WL 12921307, at *2 (N.D. Cal. Dec. 18, 2012), *report and recommendation adopted sub nom. Braun v. Primary Distrib. Doe No. 1 & Does 2 Through 69*, No. 12-CV-3690 YGR, 2013 WL 12174688 (N.D. Cal. Feb. 14, 2013) ("[I]mproper joinder is not a basis for dismissing an action, but rather is a ground to sever the claims and/or the parties.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    To the extent that Rule 21 can be used as a basis for dismissal, I decline to exercise my

2    discretion to dismiss Hilton from this case at this stage.  Hilton's motion is DENIED.

3    **III.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

4    Hilton moves for dismissal for lack of personal jurisdiction.  It argues that there is no

5    specific jurisdiction over J.C.'s claims based on the alleged California hotels ("California

6    Claims"), and no pendent jurisdiction for her claims based on the alleged Virginia location

7    ("Virginia Claims").  Hilton MTD 21–24.

8    I previously found its personal jurisdiction arguments unpersuasive.  *J.C.*, 2020 WL

9    3035794, at *2.  I was not convinced that Hilton could successfully dismiss the California Claims

10   simply based on the argument that it is a "holding company" in light of J.C.'s sufficiently pleaded

11   agency allegations.  *Id.*  I was also not convinced that there was a lack of jurisdiction over the

12   Virginia Claims given that J.C. alleged that the circumstances underlying her California Claims

13   continued through a common course of conduct which led to the Hilton brand hotel in Virginia.

14   *Id.*

15   Hilton raises the same issues again, and its argument remains unconvincing.  Hilton MTD

16   22–25.  Taking the allegations in the TAC as true, J.C. has sufficiently pleaded an agency

17   relationship between the alleged brand hotels and the specific Hilton entity named here.  *See*

18   *supra*.

19   Specific personal jurisdiction over the alleged Hilton entity is sufficiently pleaded.  The

20   Ninth Circuit applies a three-part test to determine the applicability of specific jurisdiction: (i)

21   whether the defendant has "purposefully direct[ed] his activities" or has "purposefully avail[ed]

22   himself of the privileges of conducting activities in the forum; (ii) whether the claim "arises out of

23   or results from the defendant's forum-related activities"; and (iii) whether the exercise of

24   jurisdiction is reasonable.  *Schwarzenegger*, 374 F.3d at 802.

25   Construing the allegations in the light most favorable to J.C., there are sufficient

26   allegations to indicate that Hilton has minimum contacts with the forum state.  She alleges that

27   Hilton has purposefully availed itself of the privileges of conducting business in California by

28   owning, operating, and franchising hundreds of hotel properties throughout the state of California,

1    including the two Sacramento locations where she was trafficked.  TAC ¶¶ 12, 154–55, 206–07;

2    *see Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *3 (S.D. Ohio Mar. 16, 2020)

3    (finding similar allegations "constitute purposeful availment, and cannot be characterized as

4    random, fortuitous, or attenuated") (internal quotation marks and citation omitted).  Her claims

5    arise out of and relate to these forum-related activities.  *See id.* ("Plaintiff has alleged a causal

6    connection between Best Western's activities managing hotels in the state of Ohio and the harm to

7    plaintiff as a result of her sex trafficking in these hotel locations.")

8        With the first two prongs of due process met, the burden shifts to Hilton to "present a

9    compelling case that the exercise of jurisdiction would not be reasonable."  *Schwarzenegger*, 374

10   F.3d at 802.  J.C.'s alleged trafficking occurred in California and any inconvenience to Hilton of

11   litigating in California does not override the other factors suggesting that personal jurisdiction in

12   California is reasonable.  Specific jurisdiction over the California Claims against Hilton is

13   sufficiently pleaded.

14       The Virginia Claims are also properly before me as pendent to the California Claims.

15   Hilton argues that the Virginia Claims do not share a common nucleus of operative facts with the

16   California Claims, which occurred two years prior and at a different hotel with different facts,

17   witnesses and franchise relationships.  Hilton MTD 24.  But J.C. alleges that she was trafficked at

18   the Hilton brand hotels in California and trafficked by the same traffickers at the Hilton brand

19   hotel in Virginia.  TAC ¶¶ 30–45.  She contends that the same transactions and occurrences that

20   began in California flowed to Virginia and that it would be unreasonable for her to bring her

21   Virginia Claims against Hilton in a separate court based on these same facts and law.

22       Given that J.C. alleges that she was trafficked for over ten years, TAC ¶ 30, these

23   allegations are sufficient to show that the Virginia Claims arise out of a common nucleus of

24   operative fact with the California Claims.  Pendent jurisdiction over the Virginia Claims is

25   therefore appropriate.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181

26   (9th Cir. 2004) ("[A]ctual exercise of personal pendent jurisdiction in a particular case is within

27   the discretion of the district court.")  Hilton's motion to dismiss for lack of personal jurisdiction is

28   DENIED.

United States District Court
Northern District of California

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss the CTVPA claim are GRANTED with prejudice. Defendants' motions to dismiss the TVPRA claim based on both direct liability and indirect liability are DENIED. Hilton's motion to dismiss for lack of personal jurisdiction and its motion to dismiss for improper joinder are also DENIED.

A Case Management Conference is set for December 1, 2020 at 2 p.m. At the previous motion to dismiss hearing on June 3, 2020, the parties indicated that they may be able to agree to a stipulated protective order that addresses both J.C.'s request for anonymity and defendants' discovery concerns. No stipulated protective order has been filed to date. The parties shall address this issue in their joint case management statement, due November 24, 2020.

**IT IS SO ORDERED.**

Dated: October 28, 2020

William H. Orrick
United States District Judge