Tiffany R. Ellis, *Pro Hac Vice*
WEITZ AND LUXENBERG, P.C.
3011 W. Grand Boulevard, Suite 2150
Detroit, MI 48202
Telephone: +1.313.800.4170
Email: tellis@weitzlux.com

Ellen Relkin, *Pro Hac Vice*
WEITZ AND LUXENBERG, P.C.
700 Broadway
New York, NY 10003
Telephone: +1.212.558.5715
Email: erelkin@weitzlux.com

Melinda Davis Nokes (SBN: 167787)
WEITZ AND LUXENBERG, P.C.
1880 Century Park East, Suite 700 Los
Angeles, CA 90067
Telephone: +1.310.247.0921
Email: mnokes@weitzlux.com

*Attorneys for Plaintiff J.C.*


Kai Peters (SBN: 198516)
kpeters@grsm.com
GORDON REES SCULLY MANSUKHANI,
LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Sara M. Turner, *Pro Hac Vice*
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
420 20th Street North, Suite 1400
Birmingham, Alabama  35203-5202
Telephone: (205) 328-0480
Facsimile: (205) 322-8007
smturner@bakerdonelson.com

*Attorneys for Defendant,*
*CHOICE HOTELS INTERNATIONAL, INC.*

Nicole M. Perry, *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Email: nmperry@jonesday.com

Bethany K. Biesenthal, *Pro Hac Vice*
Email: bbiesenthal@jonesday.com
Allison L. McQueen, *Pro Hac Vice*
Email: amcqueen@jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939

Vincent A. Doctor (SBN: 319408)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Email: vdoctor@jonesday.com

*Attorneys for Defendant*
*HILTON WORLDWIDE HOLDINGS INC.*

Michael P. O'Day, *Pro Hac Vice*
Email: michael.oday@us.dlapiper.com
Ellen E. Dew, *Pro Hac Vice*
Email: ellen.dew@us.dlapiper.com
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: +1.410.580.3000

Amanda L. Morgan (SBN: 246277)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone: +1.415.836.2500
Email: amanda.morgan@us.dlapiper.com

*Attorneys for Defendant*
*MARRIOTT INTERNATIONAL, INC.*

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| J.C., an individual, | Case No.: 3:20-cv-00155-WHO |
| Plaintiff, | |
| vs. | **JOINT STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| CHOICE HOTELS INTERNATIONAL, INC.; HILTON WORLDWIDE HOLDINGS, INC; MARRIOTT INTERNATIONAL, INC. | |
| Defendants. | |

The parties to the above-captioned Action (the "Parties," and each, a "Party") stipulate and agree that the following specifications shall govern discovery of all physical documents, electronically stored information, and any other materials and information, if any, produced by the parties during discovery in the above-captioned action.

## I.    DEFINITIONS

The following definitions apply to this Stipulation, regardless of whether the particular word is or is not capitalized:

A.    "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

B.    "Custodian" means the individual or originating source from which Documents or ESI will be collected and reviewed.

C.    "Document" and "Electronically Stored Information" ("ESI") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

D.      "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

E.      "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

F.      "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as OCR or Extracted Text, should such data be available.

G.      "OCR" means optical character recognition technology which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

H.      "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available.  A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

I.      "Media" means an object or device, including but not limited to, a disc, tape, computer,

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

or other device, on which data is or was stored.

J.      "Parties" collectively shall mean all named parties to any action in these Proceedings, including any Party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action. The "Producing Party" is one of the Parties that is making a Production.

K.      "Production" or "Produced" includes any exchange of Documents or Electronically Stored Information between the Parties, whether voluntarily or in response to a formal or informal request.

L.      "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

M.      "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image. "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

N.      "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

O.      "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email, and image files.

## II.    **GENERAL**

A.      The Parties shall take reasonable steps to comply with the procedures laid out in this Stipulation.  The Parties agree to promptly alert all other Parties concerning any technical problems

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

associated in complying with this Stipulation. If compliance with this Stipulation imposes an undue burden regarding any protocol, source, or search term listed herein, the Parties shall promptly confer in good faith in an effort to resolve or narrow the issue.

B.      The purpose of this Order is to facilitate the exchange of physical documents and ESI in an efficient manner and in accordance with the Federal Rules of Civil Procedure ("Federal Rules"). By stipulating to this Order and agreeing to produce documents, generally, in a particular form or form, except as specifically set forth herein, this Order does not:

1.      Alter or affect the applicability of the Federal Rules or any Local Rules of this U.S. District Court ("Local Rules"), as applicable;

2.      Enlarge, reduce, or otherwise affect the scope of discovery in this litigation, as imposed by this Court's orders;

3.      Address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced;

4.      Imply that discovery produced under the terms of this Stipulation is properly relevant, discoverable, or admissible in this or in any other litigation;

5.      Prevent any Party from complying with the requirements of a foreign country's data privacy laws if applicable, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679; or

6.      Alter or affect the objections to discovery available under the Federal Rules, and no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

C.      If reasonably possible, the production of physical documents and ESI shall be conducted to maximize efficient and quick access, and minimize related discovery costs. The terms of

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

this Stipulation shall be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules, the Local Rules, and any orders that have been entered by this Court in this case.

D.      Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to the Protective entered in this case ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" and subject to the protocols provided herein, shall be produced in the manner provided herein. Nothing in this Stipulation shall be interpreted to require disclosure of physical documents, ESI or other materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain physical documents or ESI, or to move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost, or on the ground that there is no good cause for the documents' production.  Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

E.      Consistent with their obligations under the applicable Federal Rules and Local Rules, the Parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good-faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

### III.     FORM OF PRODUCTION - PHYSICAL HARD-COPY DOCUMENTS

Documents that exist solely in physical hard-copy format shall be scanned and produced as either (a) single-page, Group IV, 300 DPI TIFF images or (b) single-page JPEG images, with an Opticon image Load File using ANSI/Western European encoding ("OPT file") and a delimited

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

database Load File ("DAT file"). The DAT file must contain the BegDoc and EndDoc, and my contain the fields listed in Appendix A to the extent available (with the understanding that there is no obligation for a party to create any of this information), and each document image must be Bates numbered consistent with Section IV.A.3, but at a minimum, each should including Beginning and Ending Bates numbers and Custodian information. For the purposes of Hard Copy Custodian information, the Custodian would be the person or location where the document was collected for this litigation and not where it originally resided historically, or the person or department that originally authored the documents, unless that is where the document was retrieved from for this litigation. Hard copy documents should be logically unitized. In scanning paper documents, the Producing Party shall take steps to ensure that distinct documents are not merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Producing Party will make their best efforts to unitize the documents correctly. If the Producing Party performs optical character recognition ("OCR") on a document for its own benefit, the document-level OCR text should be produced as an accompanying plain text file named after the bates number in the "BEGNO" field of the DAT. To the extent OCR plain text files are produced, the Producing Party is not certifying that the accompanying text file is accurate or reliable for searching purposes beyond the application of the underlying OCR technology.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

## IV.   FORM OF PRODUCTION - ESI

A.   **Format Generally**.  The Parties agree to produce electronic documents in accordance with this ESI Protocol and in the following format(s) and manner:

1.   **Database Load Files**. Documents shall be provided with: (a) a delimited data file (.dat, .csv or .txt) [Unicode]; and (b) an image load file (. lfp, .opt or. dii), as detailed in Appendix A.

2.   **Metadata Fields and Processing**. Each of the metadata and coding fields set forth in Appendix A that exist and are reasonably available for a document shall be produced for that document.

3.   **Bates Numbering**.  Images must be assigned a Bates/control number that shall always: (1) be unique across the entire document production; (2) maintain a constant length (zero/0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

4.   **TIFFs**.  Single-page Group IV TIFF black and white images shall be provided using at least a 300 dots per inch ("DPP") print setting. Each image shall have a unique file name, which is the Bates number of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape) where reasonably possible. If particular documents warrant a

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

different format (e.g., "native"), the Parties will cooperate to arrange for the mutually acceptable production of such documents. Upon the requesting party's reasonable request, as set out below, a document containing color will be provided in color in JPG format if color is necessary to understand the meaning or content of the document. An accompanying OPT file should also be provided for all TIFF images.

5.    **Text Files**. For each document, a single Unicode text file will be provided along with the image files and metadata.  The text file name will be the same as the page Bates/control number of the first page of the document. File names will not have any special characters or embedded spaces. Electronic text will be extracted from the native electronic file to the extent reasonably available unless the document is an image file or contains redactions.  In these instances, a text file created using OCR after the redactions have been applied will be produced in lieu of extracted text.

6.    **File Size Limitation/Non-Standard Files**. The format of production of unusually large files or large oversized documents (e.g., blueprints, etc.), will be discussed before production to determine a reasonable optimal production format.

B.    **Native Production:** Relevant Documents and ESI that cannot be provided in meaningful TIFF format will be produced in native format with a TIFF slipsheet. Notwithstanding Section IV.A., the following file types shall be produced in native format unless they require redaction: (i) audio, (ii) video, (iii) spreadsheet-type files (*e.g.* Microsoft Excel, Corel Quattro, *etc.*), and (iv) multimedia files.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

1.  **Naming**.  Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Native documents should be linked directly to their corresponding records in the DAT file using the NATIVELINK field.

2.  **Slip-Sheets**.  Single-page Bates-stamped TIFF image slip-sheets will be included for each document produced in native format.  The slip-sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating "File Produced Natively."

3.  **Redactions**.  If documents requested in native format require redactions, the parties should ensure that proper formatting and usability are maintained. All native files that require redaction shall first be processed to show and reveal all color, comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application, all of which shall be evident in the generated TIFF image(s). The Requesting Party will identify to the Producing Party redacted documents whose formatting or usability has been unreasonably degraded, and the parties will meet and confer to agree on reasonable modifications to the production format.

4.  **Large Spreadsheets**.  If a spreadsheet-type file must be redacted, the Producing Party may: (a) redact the spreadsheet in native form; (b) image the spreadsheet and redact the image; or (c) if the image file exceeded 15 pages, only the first 15 pages of that spreadsheet need to be redacted and the remainder may be slipsheeted with a TIFF image slip-sheet noting that "Additional Pages Exceeding Redaction Threshold".

C.  **Redactions**: As set forth in the Confidentiality Agreement, the Producing Party may

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity.  The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the Document if space allows (e.g. Privilege, etc.).

    D. **Technical Issues:** If a document which would otherwise be produced in TIFF format cannot be imaged for technical reasons, it may also be produced in native format as described above, in which case the slip-sheets will display the Bates number of the native file and an endorsement stating "Document Unable To Be Imaged."

    E. **Color**.  Documents containing color need not be produced in color in the first instance, provided that the Producing Party shall retain a copy of produced documents in color. However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

    F. **Production Media:** Unless otherwise agreed, Documents will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

    G. **Metadata:** All ESI should be produced with a DAT file that contains the metadata fields listed in **Appendix A** annexed hereto, to the extent captured at the time of the collection.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1.  **Reasonably Available Metadata**. To the extent that metadata does not exist has become corrupt or inaccessible or otherwise unavailable for any documents produced, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such metadata.

2.  **Available Information.**  TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of email messages should include the BCC line, and TIFF images of MS Word documents should show all tracked changes and comments.

3.  **Text Files**. For all ESI produced, an accompanying document level text file containing either the Extracted Text or OCR text from the document should be produced. The file path and file name of the plain text file should be included in the "TEXTLINK" field of the DAT file.

H.  **Attachments – Parent-Child Relationships.**  Responsive non-privileged electronic documents attached to an e-mail will be produced sequentially immediately after the parent document to preserve the parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document. The child-document should be consecutively produced immediately after the parent-document. If a parent or child is omitted from production as privileged or otherwise, the Producing Party shall produce in place of the document a placeholder image indicating the withholding of the document and the reason for the withholding.

I.  **Non-Responsive Attachments**.  In an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to a responsive document may be produced as a single-page Bates-stamped TIFF image slip-sheet containing an endorsement stating "Withheld as Non-Responsive." For purposes of this action, "non-responsive documents" are defined

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

to include documents that have no arguable relation to the issues in dispute in this matter. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data Load File and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

   J. **Structured Data**. The Producing Party may opt to produce relevant and responsive information from databases by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (*e.g.*, in Microsoft Excel™ or .csv format). For information that has yet to be produced, the parties will meet and confer prior to production to discuss the most appropriate data extraction and cost-effective production format for specific information contained in particular databases. If the Parties cannot reach agreement, the issue can be brought to the Court's attention.

   V. <u>**PROCESSING SPECIFICATIONS**</u>

   A. Time Zone.  All provided metadata pertaining to dates and times will be standardized to Eastern Time (GMT-5).

   B. Deduplication.  To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, de-duplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

1. **Generally.** To the extent a Party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by use of MD5, SHA-1, or SHA256 hash values. Where any such documents have attachments, hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

2. **Horizontal Deduplication.** A Producing Party shall de-duplicate documents across custodians and populate a field of data that identifies each custodian who had a copy of the produced document (the "Duplicate Custodian" or "Other Custodian" field) in addition to a separate field of data identifying the custodian whose document is produced. A Producing Party shall use a uniform description of a particular custodian across productions.  Multiple custodians in the "Duplicate Custodian"/"Other Custodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

3. **Manual Deduplication.** No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5, SHA-1 or SHA256 hash values outlined above.  Hard-Copy Documents shall not be eliminated as duplicates of ESI.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

4. **Supplemental Productions.** If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the receiving Party to update the "Duplicate Custodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

C. **System Files.** Each Party will "de-NIST" system and application files, unless they are determined by the Producing Party to be responsive.

### VI.   IDENTIFICATION AND COLLECTION OF DOCUMENTS

Except as otherwise agreed upon in this Stipulation, the Parties will meet and confer periodically regarding the scope of discovery, prioritizing collection and production efforts, methods of ESI collection, including agreements on (i) custodians and business records, (ii) data sources, (iii) search terms, (iv) email addresses or domains, (v) database extraction methods and reporting capabilities, and (vi) date restrictions by matter or custodian. The Parties will memorialize in writing any agreements reached.

The Parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules to conduct a reasonable search and produce relevant and responsive documents of which it is aware.

Prior to implementing search terms, if the Producing Party elects to use search terms to limit the scope of review for production, the Producing Party will provide a list of proposed search terms to the Requesting Party and the parties will meet and confer regarding any additional terms proposed by the Requesting Party. Once an initial list of terms is agreed upon, the Producing Party will provide a

**JOINT STIPULATION AND** ~~[PROPOSED]~~ **ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

search term hit list to assist in reaching agreement on search terms. Over the Defendants' objection, the Court has ordered (ECF No. 179) that the list or report should include the number of documents after deduplication that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families). The parties will use the report to modify terms, if necessary.

If the Parties are unable to resolve disputes over search terms through the meet and confer process, the Parties will submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the search terms in dispute.

Over the Defendants' objection, the Court has ordered (ECF No. 179) that the Producing Party agrees to quality check the data that does not hit on any terms (the Null Set) by selecting a statistically random sample of documents from the Null Set. The size of the statistically random sample shall be calculated using a confidence level of 95% and a margin error of 2%. If responsive documents are found during the Null Set review, the Producing Party agrees to produce the responsive documents separate and apart from the regular production. The parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

A.     **Predictive Coding.**  Prior to using Predictive Coding, the Producing Party will notify the opposing party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such Predictive Coding technologies.  This discussion may include:

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1.      Whether any culling measures were taken prior to the application of Predictive Coding. If key terms are used, then the protocol above would apply to the part of the process;

2.      The vendor being used to manage the application of the technology;

3.      The method(s) used to derive the seed or exemplar set, if any;

4.      The method for validating the technology assisted review process; and

5.      The measures taken to check the quality of the computer decisions.

The party employing Predictive Coding agrees to a goal of 85% stabilization rate for its process, meaning that of one hundred random documents sampled from the reviewable set, 85% would be accurately coded by the computer. If the 85% stabilization rate is not reasonably achievable, the Parties agree to meet and confer to adjust this number.

## VII.   EXCLUDED FILE TYPES

A.      Absent a particularized need and good cause showing, the Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI from the sources noted below because they are either not reasonably accessible or they anticipate that enough relevant information can be yielded from accessible sources and, as necessary and appropriate, supplemented with deposition discovery. The Parties agree that the following ESI does not require preservation, collection, review or production:

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by specialized computer forensics tools and methods.

2.      Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

3.      Data stored on photocopiers, scanners, and fax machines.

4.      Data in metadata fields that are frequently updated automatically, such as last-accessed dates, last-printed dates, and last-saved dates.

5.      Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

6.      Email, calendars, and contact data sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

B.      Over Plaintiff's objection, the Court has ordered (ECF No. 179) that the preservation, collection, review, or production of ESI from the sources noted below is also not required, absent a particularized need and good cause showing:

1.      On-line access data such as temporary Internet files, history, cache, cookies, and the like.

2.      Server, system, or network logs.

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

3.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

C.      Nothing herein shall prevent a Party from subsequently requesting that ESI or other Documents identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval.

## VIII.   PRIVILEGE AND PRIVILEGE LOGS

A.      **Privilege Log**. A Party that withholds documents, ESI, and any other materials and information on the grounds of attorney-client privilege, attorney work product, and/or any other applicable privilege, immunity or protection from discovery, shall produce a privilege log. The privilege log shall list the privilege or privileges asserted regarding each withheld document and describe the document with sufficient particularity to allow the receiving Party to assess the claim of privilege but without revealing privileged information and which may, at the Producing Party's discretion, include the subject matter of the email or document if such information itself is not privileged or protected. The privilege log shall also include the date the document was prepared, the person or persons who prepared the document, and the person or persons to whom the document was addressed, directly and by carbon copy or blind copy.

1.      **Format**. Privilege logs shall be produced in Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the receiving parties.

2.      **Materials Not Requested to be Logged**.   The following documents presumptively need not be included on a privilege log: (a) privileged

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

communications exclusively between a Party and its outside counsel on or after the date of the lawsuit's commencement, and work product performed by a Party at the direction of its outside counsel on or after January 7, 2020; (b) privileged communications exclusively involving outside counsel on or after January 7, 2020; (c) work product created by in-house or outside counsel, or by an agent of in-house or undersigned counsel on or after January 7, 2020; and (d) non-substantive embedded files in privileged documents (i.e., images, logos, etc.).

3.     **Logging Email Threads**. For purposes of creation of a privilege log, a Party need include only one entry on the log to identify withheld privileged emails that constitute an uninterrupted dialogue between or among individuals; provided, however, that disclosure must be made that the emails are part of an uninterrupted privileged dialogue. Moreover, the beginning and ending dates and times (as noted on the emails) of the dialogue and the number of emails within the dialogue must be disclosed, in addition to other requisite privilege log disclosure referenced above, including the names of all of the recipients of the communications.

4.     **Time for Serving Privilege Log**. Privilege logs shall be produced in accordance with the Federal Rules of Civil Procedure and any applicable local rules and procedures.

5.     **Disputes**. In the event of a dispute, the disputing party shall provide written notification of its dispute(s) and identify the log entries it disputes. The parties shall then meet and confer within seven (7) days of the dispute, or later if by agreement, in a good faith attempt to narrow or eliminate the dispute. In the

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

event dispute(s) remain, the disputing party may submit its privilege-related challenge to the Court at the next regularly scheduled status conference call. If no such call is scheduled, the disputing party may submit a non-argumentative written request to the Court to hear the dispute under such procedures (for briefing, hearing the dispute, and so on) as the Court deems appropriate.

B.     **Time**. The Parties reserve their rights to revisit the date after which documents need not be included on a privilege log and may modify the agreed upon date(s) by mutual agreement. The Parties further agree to meet-and-confer regarding any proposed additional categories of documents that presumptively need not be logged.

## IX.     PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

A.     The inadvertent production of ESI protected by any privilege, right, immunity, or protection, including without limitation the attorney-client privilege and the attorney work-product doctrine, shall be governed by the Protective Order entered in this case. For clarity and avoidance of doubt, pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding. Moreover, the mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

B.     Nothing contained in this Stipulation is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## X.     THIRD PARTY DOCUMENTS

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third parties

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

produce documents in accordance with the specifications set forth herein. Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

**XI.    GOOD FAITH**

A.    The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within 15 days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the Action.

B.    The Parties agree to identify the documents by including the Bates number of the first page of the document at issue so long as the document was produced by the parties in this litigation through discovery obtained in this litigation.  Nothing in this paragraph is meant to preclude the parties from otherwise using documents which were not necessarily produced as a result of discovery in this litigation.

**IT IS SO STIPULATED.**

Dated: July 21, 2022

By: */s/ Kai Peters*
Kai Peters (SBN: 198516)
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 941111
Telephone: (415) 986-5900
Email: kpeters@grsm.com

Sara M. Turner, *Pro Hac Vice*
BAKER DONELSON
420 20th Street North, Suite 1400
Birmingham, AL 35203
Telephone: (205) 250-8316
Email: smturner@bakerdonelson.com

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

*Attorneys for Defendant Choice Hotels International, Inc.*

Dated: July 21, 2022

By: */s/Melinda Nokes*
Melinda Davis Nokes (SBN: 167787)
mnokes@weitzlux.com
WEITZ & LUXENBERG, P.C.
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 247-0921
Facsimile: (310) 786-9927

Ellen Relkin, *Pro Hac Vice*
WEITZ AND LUXENBERG, P.C.
700 Broadway
New York, NY 10003
Telephone: +1.212.558.5715
Email: erelkin@weitzlux.com

Tiffany R. Ellis, *Pro Hac Vice*
tellis@weitzlux.com
WEITZ & LUXENBERG, P.C.
3011 W. Grand Blvd., 24th Floor
Detroit, MI 48202
Telephone: (313) 800-4170
Facsimile: (646) 293-7992

*Attorneys for Plaintiff J.C.*

Dated: July 21, 2022

By: */s/ Ellen Dew*
Michael P. O'Day, *Pro Hac Vice*
Email: michael.oday@us.dlapiper.com
Ellen E. Dew, *Pro Hac Vice*
Email: ellen.dew@us.dlapiper.com
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209
Telephone: (215) 656-2431
Facsimile: (215) 606-2046

Amanda L. Morgan (SBN: 246277)
Email: amanda.morgan@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

Telephone: (415) 836-2500
Facsimile: (415) 836-2501

*Attorneys for Defendant Marriott International, Inc.*

Dated: July 21, 2022

By: */s/ Nicole Perry*
Nicole M. Perry, *Pro Hac Vice*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Email: nmperry@jonesday.com

Bethany K. Biesenthal, *Pro Hac Vice*
Email: bbiesenthal@jonesday.com
Allison L. McQueen, *Pro Hac Vice*
Email: amcqueen@jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939

Vincent A. Doctor (SBN: 319408)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Email: vdoctor@jonesday.com

*Attorneys for Defendant Hilton Worldwide Holdings Inc.*

**IT IS ORDERED** that the forgoing Stipulation is approved.

Dated: July 22, 2022

**WILLIAM H. ORRICK**
**UNITED STATES DISTRICT JUDGE**

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**APPENDIX A**

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| DupCustodian | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| DateSent | Date (mm/dd/yyyy) | | | Date message sent |
| TimeSent | Time (hh:mm:ss) | | | Time message sent |
| DateReceived | Date (mm/dd/yyyy) | | | Date message received |
| TimeRecv | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| DateCreated | Date/Time (mm/dd/yyyy) | | Date file was created | |
| DateModified | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| FileHash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |

Case No. 3:20-cv-00155-WHO

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
|---|---|---|---|---|
| Confidentiality | Single choice | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document |
| Type of Redaction | Text multiple choices (attorney/client; work product etc) | | | |

**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**